# EXHIBIT E

womblebonddickinson.com



December 15, 2025

*Via Email* ([jesse.camacho@practus.com](mailto:jesse.camacho@practus.com))

Jesse J. Camacho
Practus, LLP
1840 Century Park East, Ste 1900
Los Angeles, CA 90067

Re: *STX, LLC v. StringKing, Inc.*, No. 25-cv-1359-JLH

Womble Bond Dickinson (US) LLP

100 Light Street
26th Floor
Baltimore, MD 21202

t:  410.545.5800
f:  410.545.5801

Barry J. Herman, Partner
Direct Dial: 410-545-5830
Direct Fax: 443-769-1530
E-mail: Barry.Herman@wbd-us.com

Dear Jesse:

I write regarding your October 9, 2025 letter ("Letter") asserting that your partner, Scott Lloyd, had only "limited" involvement in the prosecution of U.S. Patent App. No. 17/681,152 (the "'152 Application"), which issued as U.S. Patent No. 12,274,930 (the "'930 Patent"), and is the subject of the litigation between STX and StringKing. Your assertion that Mr. Lloyd has "limited" involvement is demonstrably incorrect and the record demonstrates otherwise. The USPTO file history, STX's communications with Mr. Lloyd, and detailed billing records from Mr. Lloyd's prior firm, Gordon Feinblatt LLC, show that Mr. Lloyd actively and substantively prosecuted the '152 Application through allowance, including amending claims, arguing patentability, conducting interviews with the Examiner, authorizing an examiner's amendment, submitting replacement drawings, and filing post-final papers. This prior representation is substantially related to, and directly adverse to, your current representation of StringKing in this litigation. Under the District of Delaware's ethical rules and controlling authority, this creates a non-waivable former-client conflict that is imputed to Practus, requiring withdrawal. We therefore request that you (i) promptly withdraw as counsel of record and (ii) withdraw the counterclaims you filed.

## I.    Mr. Lloyd's Substantive Participation in the Prosecution of the '930 Patent

The premise of your letter—that Mr. Lloyd's involvement was minimal—cannot be reconciled with the public record. Among other items from the file history:

Womble Bond Dickinson (US) LLP is a member of Womble Bond Dickinson (International) Limited, which consists of independent and autonomous law firms providing services in the US, the UK, and elsewhere around the world. Each Womble Bond Dickinson entity is a separate legal entity and is not responsible for the acts or omissions of, nor can bind or obligate, another Womble Bond Dickinson entity. Womble Bond Dickinson (International) Limited does not practice law. Please see www.womblebonddickinson.com/us/legal-notice for further details.

December 15, 2025
Page 2



- On June 3, 2024, Mr. Lloyd filed a Power of Attorney. *See* Ex. A, '930 Patent File History, at 177-180.



- On June 24, 2024, Mr. Lloyd filed an amendment and response to the March 28, 2024 Office Action, amending multiple claims (including independent claim 1), providing detailed argument distinguishing Leary, Contant, and Berlese, and restructuring dependent claims in view of § 112 objections. He signed as "Attorney for Applicant," listing his USPTO Reg. No. 56,650. *See id.* at 181-219.





December 15, 2025
Page 3



- On October 23, 2024, Mr. Lloyd filed an Internet Communications Authorization, authorizing direct examiner communications, which he then used. *See id.* at 256.



- In response to a Final Office Action rejecting claims 1 and 3-17, Mr. Lloyd submitted an After Final Consideration Program 2.0 (AFCP 2.0) request and a substantive Response After Final on November 7, 2024, again amending claims and arguing allowance. He personally signed both submissions. *See id.* at 257-315.





December 15, 2025
Page 4







- The Notice of Allowability issued on November 12, 2024 reflects an examiner's amendment "authorized in an interview with Scott Lloyd on November 15, 2024," after which Mr. Lloyd submitted a Rule 312 replacement drawing (Figure 9) on December 9, 2024 to implement the amendment. *See id.* at 377-379.



- Power of Attorney and correspondence address actions in June 2024 and October 2024 – February 2025 reflect Mr. Lloyd's control of prosecution logistics, including authorizing filings, coordinating post-allowance activity, and addressing maintenance correspondence. Even after new prosecution counsel was appointed in late February 2025, Mr. Lloyd's work had already carried the application through allowance.

- On January 7, 2025, Mr. Lloyd updated the address of record to Rockville, MD (*id.* at 383-84), the same city listed for Mr. Lloyd on the Practus website.

This is not "limited" ministerial involvement; these actions reflect substantive claim drafting, argumentation, and advocacy on issues of validity and scope that bear directly on enforceability

December 15, 2025
Page 5



and infringement in this litigation. The USPTO record is corroborated by STX/Wm. T. Burnett IP's contemporaneous communications with Mr. Lloyd and by Mr. Lloyd's prior-firm billing records, which reflect time entries for claim amendments, Office Action strategy, examiner communications, AFCP submissions, and allowance-stage coordination.

Indeed, Mr. Lloyd continued his involvement, even after joining Practus. *See id.* at 383-384 (updating address of record for Mr. Lloyd to Practus). This is conceded in your letter. *See* Letter at 2 ("Scott helped provide continuity to STX into the early part of 2025 until STX soon selected different counsel[.]").

## II.    The Resulting Conflict of Interest

Under the District of Delaware's adoption of the ABA Model Rules of Professional Conduct, an attorney may not represent a client adverse to a former client in the same or a substantially related matter without informed written consent. Model Rules of Pro. Conduct r 1.9(a) (ABA 2025); D. Del. L.R. 83.6(d). The Rule 1.9 prohibition is imputed to all lawyers "associated in a firm." Model Rules of Pro. Conduct r 1.10(a).

The conflict here is clear:

- There was an attorney-client relationship: Mr. Lloyd represented STX's affiliate, Wm. T. Burnett IP, in the prosecution of the application that became the asserted '930 Patent.

- This litigation is the same or, at minimum, "substantially related" to that engagement. The patent that Mr. Lloyd prosecuted is the subject of the litigation. Courts in this District assess substantial relatedness by considering the nature and scope of the prior representation, the nature of the current matter, and whether confidential information could be used to the former client's detriment. The substantial relationship is established where counsel's prior work involved the very patent family or technology later at issue in litigation, even if the roles or precise claim language differ.

- The interests are materially adverse: you now represent StringKing in a suit where STX asserts the very patent Mr. Lloyd helped to shepherd to allowance.

Your assertion that Mr. Lloyd "does not regard the STX Litigation as the same or a substantially related matter" (Letter at 2) is immaterial (and disingenuous). A lawyer's subjective view cannot override the governing legal standard. The question is an objective one: whether the matters are substantially related such that information obtained in the former representation would be used to the detriment of the former client. "[I]n attempting to determine whether a 'substantial relationship' exists, 'disqualification is proper when the similarity in the two representations is enough to raise a common-sense inference that what the lawyer learned from his former client will prove useful in his representation of another client whose interests are adverse to those of the former client.'" *EON Corp. IP Holdings LLC v. Flo TV Inc.*, No. 10-cv-812-RGA, 2012 WL 4364244, at *3 (D. Del. Sept. 24, 2012) (quoting *Cardona v. General Motors Corp.*, 942 F. Supp. 968, 973 (D.N.J. 1996)).

December 15, 2025
Page 6



Courts in this District have repeatedly disqualified counsel where a lawyer previously prosecuted, defended, or otherwise substantively advised on patents or technology later central to litigation against the former client. In *Veeva Sys. Inc. v. Tact.ai Techs., Inc.*, the court disqualified both an individual lawyer and her firm where her prior defense of the patentee and involvement in a related cross-license made the present case substantially related; the court rejected arguments that precise claim scope or public discovery access could negate the conflict, emphasizing that the technical overlap and strategy knowledge were disqualifying. No. 23-cv-1032, 2024 WL 3291727, *4-*10 (D. Del. 2024). In *EON Corp. IP Holdings LLC*, the court disqualified a firm based on prior representation involving closely related technology, despite the passage of time and the use of an ethical wall. 2012 WL 4364244, at *4-*6. And in *TQ Delta, LLC v. 2Wire, Inc.*, the court found a substantial relationship where prior prosecution work overlapped with the accused chips in suit; while the court fashioned a limited remedy for third-party discovery there, the substantial-relationship analysis is directly instructive. No. CV 13-cv-1835-RGA, 2016 WL 5402180, at *1 (D. Del. Sept. 26, 2016). The circumstances here, where Mr. Lloyd participated in the prosecution of the exact patent at issue in the litigation, far exceed the facts in each of the cases mentioned above.

Courts outside Delaware have reached the same conclusion in materially similar circumstances. In *Nasdaq, Inc. v. Miami Int'l Holdings, Inc.*, the court disqualified the accused infringer's firm that had previously prosecuted the asserted patents for the patentee—even though the firm tried to "carve up" the case and delegate patent issues to "conflicts counsel." No. 17-6664 (BRM) (DEA), 2018 WL 4258154, *3-*5 (D.N.J. Sept. 6, 2018), *aff'd*, No. 17-6664 (BRM) (DEA), 2018 WL 6171819, *3-*6 (D.N.J. Nov. 26, 2018). The court refused to compartmentalize claims and emphasized that litigation must be treated as a whole for conflict purposes. *Id.* Likewise, in *Audio MPEG, Inc. v. Dell Inc.*, the court disqualified a firm that had hired a partner who previously represented the patentee in litigation and PTO reexaminations involving the asserted patents, stressing the "appearance of impropriety," the irrebuttable presumption of shared confidences in an attorney-client relationship, and the inadequacy of screening to remedy the conflict. 219 F. Supp. 3d 563, 575-77 (E.D. Va. 2016). And in *Malico, Inc. v. Cooler Master, Inc.*, the court disqualified the accused infringer's trial counsel for a conflict of interest where that firm had represented the patentee in prosecution matters, and while not representing the patentee with regard to the asserted patent, had represented the patentee in prosecution matters for other technologically related patents that involved the same named inventor and in the litigation was attacking the inventorship of the asserted patent. No. C 11-4537 RS, 2013 WL 12172992, at *4 (N.D. Cal. June 4, 2013).

These authorities are on all fours here. Mr. Lloyd's prior representation encompassed core prosecution tasks—amending claims, shaping the written record on patentability, conducting examiner interviews, and locking in amendments and drawings that issued—while conferring with STX about those very issues. Those acts go to the heart of claim construction, validity, enforceability (including prosecution disclaimer), and infringement in this case, particularly where StringKing has asserted counterclaims for inequitable conduct. The contention that Mr. Lloyd's "limited transactional dealings before an administrative agency are not the same of substantially related matter as the STX Litigation" (Letter at 4) is untenable. Courts have disqualified counsel and entire law firms where prior counsel represented the patentee not on the patent at issue, but on "substantially similar" patents. *Malico, Inc.*, 2013 WL 12172992, at *4; *see also e.g., Veeva Sys. Inc.*, 2024 WL 3291727 at *6. The conflict here is more acute: Mr. Lloyd helped prosecute the exact patent now being litigated—"a classic case of side-switching: the successive representation of one client followed by another adverse to the first client's



interests." *Malico, Inc.*, 2013 WL 12172992, at *4. Nor does the fact that some of Mr. Lloyd's work product was filed publicly with the Patent Office negate his receipt of confidential STX information. The law is to the contrary. *See Veeva Sys. Inc.*, 2024 WL 3291727 at *6 (stating that "technological similarity is an important ingredient for substantial relationship in technology-driven cases, because key client confidences and concerns—as well as advocated positions—flow from the technology involved"); *see also Innovative Memory Sols., Inc. v. Micron Tech., Inc.*, No. CV 14-1480-RGA, 2015 WL 2345657, at *5 (D. Del. May 15, 2015) ("The fact that there was a lengthy public trial does not mean that all confidences became public. . . . The weaknesses in the case are what would be kept back, and those are precisely the points that would be detrimental to Micron."). The same principle applies here: public filings do not sanitize the underlying privileged strategy, disclosures, and client confidences Mr. Lloyd necessarily obtained in prosecuting the '930 Patent.

Under Model Rules 1.9 and 1.10, this conflict is imputed to Practus. Screening cannot cure it. Courts in this Circuit consistently hold that ethical walls do not salvage representation when the same dispute or substantially related patent family is at issue, particularly where the conflict involves substantive prosecution of the asserted patent and litigation strategy knowledge. *See, e.g., EON Corp. IP Holdings LLC*, 2012 WL 4364244, at *5 ("There are a number of factors that I have considered, and, on balance, they suggest that an ethics wall is not the appropriate cure."); *see also Sun Studs, Inc. v. Applied Theory Assocs., Inc.*, 772 F.2d 1557, 1566 (Fed. Cir. 1985) ("[W]e do not believe any court would hold that it is within the bounds of propriety to permit a law firm to assist a client in obtaining a patent which was equitably owned by another and then to lead the attack against the patent's validity once it is transferred to its rightful owner.").

As noted above, nor does it matter that Mr. Lloyd might contend that his work was limited to "public" filings. The substantial-relationship inquiry focuses on the nature of the prior engagement and the reasonable probability that confidences relevant to the present matter were shared—not on whether some information later became discoverable. As the District of Delaware has emphasized, the rule is prophylactic, designed to protect client confidences and public confidence in the bar and to prevent the use—even the potential use—of the former client's strategic information against it.

Further, and perhaps most importantly, this is not an "ordinary" patent infringement case. StringKing's counterclaims are full of vitriol and unfounded allegations against STX and its prosecution counsel, and include claims related to inequitable conduct, invalidity, false marking, and unfair competition—all based on supposed fraudulent actions taken by STX and its patent counsel at the USPTO. Putting aside that these claims are completely without merit, the fact that you believe it was appropriate to act as counsel for StringKing when your partner, Mr. Lloyd, finished prosecuting the patent-in-suit while you were partners together at Practus, is unfathomable. STX reserves all rights to seek attorneys' fees and sanctions, and if it comes to light that Mr. Lloyd helped you draft the counterclaims or gave you confidential information he learned while representing STX in patent prosecution, we intend to report both of you to your respective state bars.

In addition, the attorney-client privilege constrains any factual investigation of the allegations by consulting with Mr. Lloyd. As your current partner at Practus, Mr. Lloyd is aligned with StringKing's counsel for purposes of privilege and confidentiality. Communications by STX or its counsel to Mr. Lloyd would be disclosures to an adversary's firm, not to an independent third

December 15, 2025
Page 8



party assisting counsel, and would therefore destroy confidentiality and risk subject-matter waiver of attorney-client privilege. Where a lawyer's current firm is adverse to a former client in a substantially related matter, the lawyer's role and firm affiliation preclude confidential engagement by the former client without informed consent and appropriate safeguards; screening measures on the opposing side do not convert communications with that firm into privileged discussions. *See* Ethics Opinion 349, *Conflicts of Interest for Lawyers Associated with Screened Layers Who Participated in a Joint Defense Group*, DC Bar, available at https://dcbar.org/for-lawyers/legal-ethics/ethics-opinions-210-present/ethics-opinion-349.

Because any direct contact with Mr. Lloyd would be tantamount to revealing privileged strategy and mental impressions to opposing counsel, we cannot ethically or prudently investigate the allegations through him without jeopardizing privilege protections and work-product immunity.

## III.    Conclusion

For these reasons, STX demands:

1. That you and Practus, LLP promptly and voluntarily withdraw from representing StringKing in this matter; and

2. That you withdraw the counterclaims you filed, which were asserted while you labored under an incurable conflict.

Please confirm no later than close of business on December 17, 2025 that you will take the foregoing steps and provide the anticipated timing of your withdrawal. Absent confirmation, STX will file a motion to disqualify you, and Practus, LLP, and will seek appropriate relief, including fees and costs associated with addressing this issue. In support, we will submit the USPTO file history excerpts cited above (including Mr. Lloyd's signed responses, AFCP request, Internet communications authorization, and the Examiner's explicit notation of his interview authorization), as well as communications and the detailed billing records evidencing Mr. Lloyd's intimate involvement in the prosecution that led to issuance of the '930 Patent.

Respectfully,

Barry J. Herman

cc. Counsel of record