IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| STX, LLC,<br><br>   Plaintiff,<br><br>v.<br><br>STRINGKING, INC.,<br><br>   Defendant. | C.A. No. 25-1359-JLH |

**STIPULATION AND ORDER REGARDING DISCOVERY, INCLUDING
ELECTRONICALLY STORED INFORMATION ("ESI")**

Pursuant to Federal Rule of Civil Procedure 26(c), the parties hereby agree to be bound by the following provisions regarding Discovery including Electronically Stored Information ("ESI"), and agree to these provisions in lieu of the Delaware Default Standard for Discovery, subject to the approval of the Court:

1. **General Provisions.**

   a. **Cooperation**. Parties are expected to reach agreements cooperatively on how to conduct discovery under Fed. R. Civ. P. Rules 26-36.

   b. **Proportionality**. Parties are expected to use reasonable, good faith and proportional efforts to preserve, identify, and produce relevant information. This includes identifying appropriate limits to discovery, including limits on custodians, identification of relevant subject matter, time periods for discovery and other parameters to limit and guide preservation and discovery issues.

   c. **Preservation of Discoverable Information**. A party has a common law obligation to take reasonable and proportional steps to preserve discoverable information in the party's possession, custody or control.

    i. Absent a showing of good cause by the requesting party, the parties shall not be required to modify, on a going-forward basis, the procedures used by them in the ordinary course of business to back up and archive data; provided, however, that the parties shall preserve the non-duplicative discoverable information currently in their possession, custody or control.

    ii. Absent a showing of good cause by the requesting party, the categories of ESI identified in Schedule A (attached) need not be preserved, collected, searched, reviewed, or produced.

d. **Privilege Claims**. The following provisions shall apply to privileged materials and claims of privilege.

    i. The parties are encouraged to confer on the nature and scope of privilege logs for the case, including whether categories of information may be excluded from any logging requirements and whether alternatives to document-by-document logs can be exchanged.

    ii. The Parties are not obligated to log communications or documents created on or after September 25, 2025 (the filing date of the Maryland Complaint).

    iii. Activities undertaken in compliance with the duty to preserve information are protected from disclosure and discovery under Fed. R. Civ. P. 26(b)(3)(A) and (B).

    iv. The parties may use meta-data privilege logs. Privilege logs need include only the privilege claimed and the following metadata fields (to the extent they contain information and the information is not privileged or protected): Author, From, To, CC, BCC, Date, Email Subject, File Name, and File

        Extension. Legal personnel shall be identified as such by adding an asterisk before or after their names in the privilege log.

   v. If a receiving Party has a good-faith reason to believe that an entry on the privilege log represents a responsive document that is not privileged, the receiving Party may request that the producing Party generate a description for that privilege log entry, and the producing Party shall respond reasonably to such requests.

   vi. When there is a chain of privileged emails, the producing Party need include only one entry on the privilege log for the entire email chain, provided the log entry identifies all recipients.

   vii. The Parties need not log privileged communications to or from outside counsel, work product created by outside counsel, or documents with redactions provided the reason for the redaction appears on the redaction label of a produced document.

   viii. Until a Protective Order with non-waiver provisions is entered, information that contains privileged matter or attorney work product shall be immediately returned within thirty (30) calendar days of receipt of notice of the assertion of privilege or protection over the produced documents or ESI is provided.

2. **Early Disclosures**. Within fourteen (14) calendar days after the Court's entry of this ESI Order, if not already provided as part of a party's Initial Disclosures served consistent with the Scheduling Order in this case, each party shall disclose:

    a. Custodians. The 10 (ten) custodians most likely to have discoverable information in their possession, custody or control, from the most likely to the least likely. The custodians shall be identified by name, title, role in the instant dispute, and the subject matter of the information.

    b. Non-custodial data sources. Subject to Schedule A, a list of the non-custodial data sources that are most likely to contain non-duplicative discoverable information for preservation and production consideration, from the most likely to the least likely.

    c. Notice. The parties shall identify any issues relating to:

        i. Subject to Schedule A, any other ESI (by type, date, custodian, electronic system or other criteria) that a party asserts is not reasonably accessible under Fed. R. Civ. P. 26(b)(2)(C)(i).

        ii. Third-party discovery under Fed. R. Civ. P. 45 and otherwise, including the timing and sequencing of such discovery.

        iii. Production of information subject to privacy protections, including information that may need to be produced from outside of the United States and subject to foreign laws.

Lack of proper notice of such issues may result in a party losing the ability to pursue or to protect such information.

3. **Specific E-Discovery Issues**. The following specific E-Discovery Issues shall apply:

    a. **No on-site inspection of electronic media**. Such an inspection shall not be permitted absent a demonstration by the requesting party of specific need and good cause or upon agreement of the parties.

4

b. **Metadata Fields**: The parties are obligated to provide only the following metadata for all ESI produced, to the extent such metadata exists: Custodian, Email Subject, From, To, CC, BCC, Date Sent, Time Sent, Date Received, Time Received, Filename, Author, Date Created, Date Last Modified, MD5 Hash, File Size, File Extension, Page Count, Bates Number Begin, Bates Number End, Attachment Range, Attachment Begin, and Attachment End (or the equivalent thereof).

c. **Search Methodology**. Each party shall be required to search the ESI (e.g., emails, non-custodial data sources) of up to 10 custodians, which may or may not be the same custodians identified in ¶ 2(a) (above).

   i. The custodians are to be determined as follows: (1) the producing Party shall identify an initial set of custodians based on a good-faith determination that the initial set of custodians are those most likely to possess ESI relevant to the issues in this case; (2) the producing Party shall disclose the initial set of custodians to the receiving Party; and (3) within one calendar week, the receiving Party may modify the initial set of custodians to arrive at a proposed set of custodians. Absent a showing of good cause by the producing Party, the receiving Party's proposed set of custodians will be the final set of custodians. If the receiving Party does not modify the initial set of custodians within the calendar week, then the producing Party's initial set of custodians will be deemed the final set of custodian.

   ii. As to email production & ESI searching, the receiving party will propose 10 initial search terms to the producing party. Focused terms, rather than over-broad terms (e.g., product names alone, company names alone), shall

      be employed. Terms set forth in the disjunctive count as multiple terms (e.g., "apple or orange" is two search terms) except if they are synonyms (including contextually synonymous) or are used to address spelling variants (e.g., "non-vocal" and "nonvocal" shall be counted as one term). A set of words, phrases, and Boolean operators e.g., ("OR," "AND," "NOT") will be considered as a single search "term."

iii. The parties shall confer in good faith to reach agreement on the proposed search terms. Such conferring will include the producing party providing input to help locate potentially responsive information. Examples of such input include the producing party 1) proposing search terms; 2) proposing modifications to the receiving party's proposed search terms; and 3) correcting clear mistakes.

iv. The parties will then use the search terms to run initial search queries on the custodians and non-custodial (i.e., a system or container that stores ESI, but over which an individual custodian does not organize, manage, or maintain the ESI (e.g, enterprise system or database)) mailboxes to obtain initial search results. If those initial search results are believed to have returned overly burdensome results, the producing party may raise an objection. But the producing party should be prepared to support its object with actual counts of emails returned, examples or non-relevant emails returned, and the like.

v. If the receiving party, in good faith, believes the search results to be insufficient, then the receiving party shall explain in writing its bases to the

        producing party, whereby the parties shall further confer on additional or modified terms or custodians for subsequent searches to be run.

    vi. The parties agree and acknowledge that ESI Custodian's non-email electronic files (e.g., computer desktop files, C: drives) need not be searched if the relevant contents therein are duplicative of the contents within other non-custodial data sources being searched by the producing party.

    vii. No party has a duty to collect and process all data from certain sources and run search terms if such collection, processing, and searching if the parties agree or the Court concludes that it creates an undue burden or is not proportional to the needs of the case.

    viii. No Responsiveness Presumption. The fact that a document is captured by a search pursuant to this protocol does not mean that such document is responsive to a discovery request, relevant to this litigation, or will be produced. Discovery requests and the Parties' responses thereto shall govern the scope of documents to be produced, subject to the Parties' objections and any agreements reached in the parties' meet-and-confer process.

d. **Format**. ESI and non-ESI shall be produced to the requesting party as text searchable image files (e.g., PDF or TIFF). When a text-searchable image file is produced, the producing party must preserve the integrity of the underlying ESI , i.e., the original formatting , the metadata (as noted below) and, where applicable, the revision history. The parties shall produce their information in the following format: single page TIFF images and associated multi-page text files containing

extracted text or OCR with Concordance and Opticon load files containing all requisite information including the metadata mentioned above. If producing TIFFs is impracticable under the circumstances, text-searchable PDFs would be allowed.

a. **Natives**. The only files that should be produced in native format are files not easily converted to image format, such as Excel and Access files. The parties will name each native file with the unique Bates number of the corresponding TIFF images, followed by the appropriate extension. Spreadsheets that require redactions will be converted to TIFF images. A party that receives other document types produced in TIFF format may make a reasonable request to receive the document in its native format, and upon receipt of such a request, the producing party shall produce the document in its native format.

b. **Compressed Files**. Compressed file types (i.e., .CAB, .GZ, .TAR. .Z, .ZIP) need not be decompressed if that is how they were collected.

c. **Encryption of Production Media**. To maximize the security of information in transit, any media on which documents or electronic files are produced may be encrypted by the producing party.

d. **Deduplication Permitted**. A party is only required to produce a single copy of a responsive document that it produces. A party may de-duplicate responsive ESI, including across custodians. The parties will use the industry standard MD5Hash values to de-duplicate documents. The parties will apply deduplication on a family basis. A party may also de-duplicate "near-duplicate" email threads as follows: in an email thread, only the final-in-time email needs to be produced, assuming that all previous emails in the thread are contained within the final message. Where a

    prior email contains a unique attachment, that email and attachment are not considered a "near-duplicate." Duplicate email attachments having the same metadata need not be separately produced as long as at least one copy of the attachment has been produced

    e. **Redactions**. Prior to production, parties may redact from ESI all responsive, (1) privileged information, including information protected by the attorney-client and work product privileges; (2) sensitive personally identifiable information (e.g., credit card numbers, account passwords, SSNs). Such redactions should clearly indicate that the material is being redacted because it is privileged, consistent with the requirements of the Stipulated Protective Order.

    f. **Foreign Language Documents**. All responsive, non-privileged documents shall be produced in their original language. Where a responsive, non-privileged document exists in a foreign language and the producing party also has an English-language version of that document the producing party shall produce both the original document and all English-language versions.

4. **Depositions**. During the course of a deposition, all objections except as to form or privilege are preserved. When a privilege is claimed, the witness will nevertheless answer questions relevant to the existence, extent, or waiver of the privilege, such as the date of a communication, who made the statement, to whom, in whose presence the statement was made, other persons to whom the contents of the statement have been disclosed, and the general subject matter of the statement. From when a deposition opens until it closes, private conferences between deponents and their attorneys should not occur and are not privileged unless they are for the sole purpose of determining whether a privilege should

9

be asserted. Objections should be concise, such as "Objection, form" or "Objection, privileged." Speaking objections are prohibited. The Court authorizes (but does not require) depositions to be taken by telephone or other remote means and that officers under Rule 28 may administer oaths and perform their duties under Rule 30 remotely (e.g., if they are not physically located with the witness). Such officers may be credentialed federally, by the jurisdiction where they reside, or by a national court reporting organization. As authorized by Rule 30(b)(3), testimony may be recorded by audio, audiovisual, or stenographic means. To preserve objections to the manner in which a deposition is to be or was conducted, they must be made at the time of the deposition or will be deemed waived. Such objections, however, will not be grounds to prevent the deposition from proceeding.

5. **Miscellaneous**. Nothing in this Order discharges a party's responsibility to produce responsive information it is aware of. Each party may make requests, for good cause and subject to the proportionality standard, for production of specifically identified items. Any Party may move to modify or supplement this Order supported by a showing of cause to do so.

| | |
|---|---|
| */s/ Stephanie S. Riley* <br> Stephanie S. Riley (#5803) <br> WOMBLE BOND DICKINSON (US) LLP <br> 1313 North Market Street, Suite 1200 <br> Wilmington, DE 19801 <br> Telephone: (302) 252-4320 <br> Stephanie.Riley@wbd-us.com <br><br> *Of Counsel:* <br><br> James K. Archibald <br> Special Counsel <br> STX, LLC <br> 1500 Bush Street <br> Baltimore, MD 21230 <br> Telephone: (443) 253-8833 <br> jima@wmtburnett.com <br><br> Barry J. Herman <br> Julie C. Giardina <br> WOMBLE BOND DICKINSON (US) LLP <br> 100 Light Street, 26th Floor <br> Baltimore, MD 21202 <br> Telephone: (410) 545-5830 <br> Barry.Herman@wbd-us.com <br> Julie.Giardina@wbd-us.com <br><br> *Attorneys for Plaintiff STX, LLC* | */s/ Andrew E. Russell* <br> Andrew E. Russell (#5382) <br> Virginia K. Lynch (No. 7423) <br> SHAW KELLER LLP <br> I.M. Pei Building <br> 1105 North Market Street, 12th Floor <br> Wilmington, DE 19801 <br> Telephone: (302) 298-0700 <br> arussell@shawkeller.com <br> glynch@shawkeller.com <br><br> *Of Counsel:* <br><br> Jesse J. Camacho <br> PRACTUS, LLP <br> 3810 NE 95th Street <br> Kansas City, MO 64156 <br> (816) 343-4301 <br> jesse.camacho@practus.com <br><br> *Attorneys for Defendant StringKing, Inc.* |

**IT IS SO ORDERED** this  20th  day of    January    , 2026.

_____
THE HONORABLE JENNIFER L. HALL
UNITED STATES DISTRICT JUDGE

11

## SCHEDULE A

1. Backup data files that are maintained in the normal course of business for purposes of disaster recovery, including (but not limited to) backup tapes, disks, SAN, and other forms of media, and that are substantially duplicative of data more accessible elsewhere.

2. Deleted, slack, fragmented, or other data only accessible by forensics.

3. Random access memory (RAM), temporary files, or other ephemeral data that are difficult to preserve without disabling the operating system.

4. On-line access data such as temporary internet files, history, cache, cookies, and the like.

5. Data in metadata fields that are frequently updated automatically, such as last-opened dates.

6. Voice messages, including Microsoft CoPilot voice message recordings.

7. Instant messages that are not ordinarily printed or maintained in a server dedicated to instant messaging.

8. Electronic mail or pin-to-pin messages sent to or from mobile devices (e.g., iPhone and Blackberry devices), provided that a copy of such mail is routinely saved elsewhere.

9. Other electronic data stored on a mobile device, such as calendar or contact data or notes, provided that a copy of such information is routinely saved elsewhere.

10. Logs of calls made from mobile devices.

11. Server, system, or network logs.

12. Electronic data temporarily stored by laboratory equipment or attached electronic equipment, provided that such data is not ordinarily preserved as part of a laboratory report.

13. Data remaining from systems no longer in use that is unintelligible on the systems in use.