IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| STX, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 25-1359-JLH-EGT |
| | ) | |
| STRINGKING, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**STRINGKING'S OPENING BRIEF IN SUPPORT OF ITS
MOTION FOR PARTIAL SUMMARY JUDGMENT ON PRIORITY DATE**

OF COUNSEL:
Jesse J. Camacho
PRACTUS LLP
3810 NE 95th ST
Kansas City, MO 65156
(816) 343-4301

Dated: April 9, 2026

Andrew E. Russell (No. 5382)
Virginia K. Lynch (No. 7423)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
arussell@shawkeller.com
glynch@shawkeller.com
*Attorneys for Defendant StringKing, Inc.*

**Table of Contents**

I.    INTRODUCTION .......................................................................................................... 1

II.   NATURE AND STAGE OF THE PROCEEDINGS ................................................... 1

III.  SUMMARY OF THE ARGUMENT ......................................................................... 1

IV.   STATEMENT OF THE FACTS ............................................................................... 2

V.    APPLICABLE AUTHORITY .................................................................................... 4

VI.   ARGUMENT ............................................................................................................. 4

      A.    Acquiescence estoppel prevents any earlier priority date. ............................... 4

      B.    Judicial estoppel also prevents STX from seeking an earlier priority date. ..................... 6

      C.    The '454 application does not support claims 1-19 of the '930 patent. ........................... 8

            C(1).   The '454 application fails to disclose a border flange "protruding
            outward at an acute bevel angle relative to said zero-elevation surface." ...................... 10

            C(2).   The '454 patent fails to provide an adequate written-description to
            support the full scope claims 1-18 that extend to a multi-sectioned border flange
            that protrudes at an acute bevel angle around "at least four of said adjacent
            finger sections" but not elsewhere. ................................................................. 14

            C(3).   Claim 19 lacks written-description support in the '454 application. .................. 16

VII.  CONCLUSION .......................................................................................................... 16

## Table of Authorities

**Cases**                                                                                                                          **Page(s)**

*B&S Plastics Inc. v. Hydro Air Indus. Inc.*,
   No. SA CV 95-492AHS(EEX), 1995 WL 811901 (C.D. Cal. Oct. 10, 1995) ........................ 4, 5

*Bonzel v. Pfizer, Inc.*,
   439 F.3d 1358 (Fed. Cir. 2006) ................................................................................................ 7

*Centocor Ortho Biotech, Inc. v. Abbott, Lab'ys*,
   662 F. Supp. 2d 584 (E.D. Tex. 2009)...................................................................................... 5

*Cozy, Inc. v. Dorel Juv. Grp., Inc.*,
   678 F. Supp. 3d 225 (D. Mass. 2023)...................................................................................... 12

*Depaul v. Toshiba Corp.*,
   No. 91CIV.4481(LAP)(THK), 1995 WL 489567 (S.D.N.Y. Aug. 15, 1995)............................ 5

*ICU Med., Inc. v. Alaris Med. Sys., Inc.*,
   558 F.3d 1368 (Fed. Cir. 2009) .............................................................................................. 14

*Lipocine Inc. v. Clarus Therapeutics, Inc.*,
   541 F. Supp. 3d 435 (D. Del. 2021) ....................................................................................... 14

*Litton Sys., Inc. v. Whirlpool Corp.*,
   728 F.2d 1423 (Fed. Cir. 1984) ........................................................................................... 5, 6

*Medtronic CoreValve, LLC v. Edwards Lifesciences Corp.*,
   741 F.3d 1359 (Fed. Cir. 2014) ................................................................................................ 4

*MobileMedia Ideas, LLC v. Apple Inc.*,
   907 F. Supp. 2d 570 (D. Del. 2012) ......................................................................................... 7

*Moll v. N. Telecom, Inc.*,
   No. CIV.A. 94-5451, 1995 WL 676420 (E.D. Pa. Nov. 7, 1995) ...................................... 4, 5, 6

*Mondis Tech. Ltd. v. LG Elecs. Inc.*,
   149 F.4th 1291 (Fed. Cir. 2025) ............................................................................................. 16

*Pennwalt Corp. v. Akzona Inc.*,
   740 F.2d 1573 (Fed. Cir. 1984) ................................................................................................ 7

*Philip A. Hunt Co. v. Mallinckrodt Chem. Works*,
   177 F.2d 583 (2d Cir. 1949) ..................................................................................................... 6

*PowerOasis, Inc. v. T-Mobile USA, Inc.*,
   522 F.3d 1299 (Fed. Cir. 2008) ............................................................................................ 4, 9

*Ralston Purina Co. v. Far-Mar-Co, Inc.*,
   586 F. Supp. 1176 (D. Kan. 1984)..................................................................................9

*Salomon S.A. v. Rossignol Ski Co.*,
   715 F. Supp. 1274 (D. Del. 1989) ..................................................................................7

*Seagen Inc. v. Daiichi Sankyo Co., Ltd.*,
   160 F.4th 1322 (Fed. Cir. 2025) .....................................................................................8

*Tech. Licensing Corp. v. Videotek, Inc.*,
   545 F.3d 1316 (Fed. Cir. 2008) ......................................................................................9

*Two Pesos Inc. v. Taco Cabana*,
   505 U.S. 763 (1992) .......................................................................................................5

*Waldemar Link v. Osteonics Corp.*,
   32 F.3d 556 (Fed. Cir. 1994) ..........................................................................................5


Statutes

35 U.S.C. 112(a) ...................................................................................................................5

35 U.S.C. § 112........................................................................................................... 1, 5, 6


Rules

Fed. R. Civ. P. Rule 37 .......................................................................................................10

## I.      INTRODUCTION

Defendant moves for summary judgment that the claims of the asserted patent are entitled to a priority date no earlier than the February 25, 2022 date stated by the USPTO. Plaintiff's claims to the contrary are barred by a straightforward application of the doctrine of acquiescence estoppel as well as judicial estoppel. Plus, Plaintiff cannot meet its burden to show that its parent application adequately supports the claims. Acquiescence estoppel applies when, as here, an applicant opts to file a continuation-in-part ("CIP") application rather than contest a final rejection that is based on, for example, lack of written-description support under 35 U.S.C. § 112. The applicant is deemed to have acquiesced to the rejection, precluding making arguments in litigation that it chose to avoid during prosecution. Its threshold nature does not contemplate a Court conducting a claim-by-claim analysis to determine which claims in the CIP are supported by its parent's disclosure or entertaining arguments on the propriety of the final rejection. Resolving this motion stands to dramatically affect this case in view of prior sales and other disclosures of Plaintiff's own products that predate the asserted patent's critical date, which admittingly practice at least claim 1, and also practice the other asserted claims.

## II.      NATURE AND STAGE OF THE PROCEEDINGS

STX filed its Complaint on November 6, 2025, and StringKing filed its Answer with counterclaims on November 24, 2025. D.I. 9. Both parties wanted the Court to settle the asserted patent's priority date because of its impact and agreed to early summary-judgment briefing. D.I. 19. The Court entered a Scheduling Order permitting it. D.I. 22 ¶ 16(a).

## III.      SUMMARY OF THE ARGUMENT

1.      Acquiescence estoppel prevents STX from arguing that any claim of the '930 patent is entitled to the filing date of its parent. During prosecution of the parent application, the USPTO issued a final rejection that rejected claims for lack of written-description support

because they recited "a border flange and various limitations to the border flange." The Applicant opted to file a CIP application, the '152 application, rather than contesting the rejection. Every claim of the resulting asserted patent recites border-flange limitations. STX is now prevented from arguing for an earlier priority date. The Court need not evaluate the correctness of the PTO's rejection or whether any claim is supported by the '454 application.

2.      Judicial estoppel prevents STX from arguing that claims 1-18 are entitled to any earlier priority date. During prosecution of the application leading to the asserted '930 patent, the applicant strategically chose to avoid contesting a USPTO priority-date determination so that it could receive the benefit of allowable subject matter. STX is now estopped from taking an inconsistent position by arguing for an earlier priority date.

3.      Regardless, STX cannot meet its burden to show that claims 1-18 are entitled to any earlier priority date. The '454 application fails to provide adequate written-description support of a border flange "protruding outward at an acute bevel angle" as claimed. Any seemingly similar wording in the '454 application describes the shape—not the orientation—of a different, abandoned border flange. Claim 19's border-flange "edge" limitation is not supported.

4.      STX also cannot show that the '454 application provides adequate written-description support of "a border flange . . . protruding outward at an acute bevel angle . . . around *at least four of said adjacent finger sections*." The full scope of that term includes a sectioned (multi-part) border flange that protrudes at an acute bevel angle in some areas but protrudes at a different angle in others. The '454 application does not disclose such a sectioned border flange.

## IV.    STATEMENT OF THE FACTS

The asserted patent is U.S. Patent No. 12,274,930 ("the '930 patent"). Its parent is U.S. App. No. 16/241,454 ("the '454 application"). During prosecution of the '454 application, the PTO issued a final office action on August 25, 2021. Ex. 7. It included a final written-description

2

rejection of the pending claims based on their recitation of "a border flange and various limitations to the border flange." Ex. 7 at 4-5. In response, the applicant filed a CIP application. Ex. 8. That CIP application matured into the asserted patent. All claims of the asserted patent recite border-flange limitations. Ex. 13 at claims 1-19.

The '930 patent issued from U.S. App. No. 17/681,152 ("the '152 application"). STX acknowledges that, in "a March 28, 2024 Office Action [during prosecution of the '930 patent], the Examiner stated '[t]he effective filing date of claim 1 and its dependent claims [2-17] is 2/25/22 as claim 1 recites a bevel angle.'" D.I. 40 at 3. STX "chose as a matter of strategy to accept allowable subject matter, and did not respond to, contest, or make any additional disclosures in view of the Examiner's statement regarding the effective filing date." D.I. 40 at 3.

The parent '454 application does not mention an "acute bevel angle" or "bevel angle." The '454 application does not mention a border flange "edge" at all, let alone such an edge that "is beveled by an inclined surface" as recited in claim 19.

Plaintiff STX admits that it sells a product, its "RZR" lacrosse glove, that "is covered by claim 1 of the '930 Patent." D.I. 57-3 at 38. STX admits that the RZR was first sold on March 29, 2019, nearly two years before the February 25, 2022 filing date of the application for the '930 patent. D.I. 57-3 at 24, 35, 37. STX's RZR glove includes all the features of claims 1-10 & 12-19. Ex. 1 at ¶¶ 3-7 (citing Exs. 2-6, including the claim mapping in Ex. 4). STX asserts at least claims 1-5, 10, and 12-19. Ex. 11 at 7.

No reasonable jury could conclude and, STX cannot in good faith dispute, that STX's RZR glove was not in public use and otherwise available to the public before February 24, 2021 (one year before the filing date). *See, e.g.*, Ex. 2 (showing twenty-three excerpts from STX's and others' Instagram sites demonstrating such public use and wide public availability). STX's RZR

glove includes all the features recited in claims 1-10 and 12-19. Ex. 1 at ¶¶ 3-7 (citing Exs. 2-6).

## V.    APPLICABLE AUTHORITY

"Determination of a patent's priority date is purely a question of law if the facts underlying that determination are undisputed." *Medtronic CoreValve, LLC v. Edwards Lifesciences Corp.*, 741 F.3d 1359, 1363 (Fed. Cir. 2014). "Compliance with the written description requirement is a question of fact but is amenable to summary judgment in cases where no reasonable fact finder could return a verdict for the non-moving party." *PowerOasis, Inc. v. T-Mobile USA, Inc.*, 522 F.3d 1299, 1307 (Fed. Cir. 2008).

## VI.    ARGUMENT

### A.    Acquiescence estoppel prevents any earlier priority date.

Acquiescence estoppel prevents STX from arguing that any claim of the '930 patent is entitled to an earlier priority date. Every claim recites border-flange limitations. Ex. 13 at claims 1, 16, 17, and 19. During prosecution of the patent '454 application, the applicant opted to file a CIP application (Ex.14) rather than contesting a final rejection that border-flange limitations were not adequately supported. This greatly simplifies the Court's analysis. A finding of acquiesce moots evaluating whether an earlier application supports later-claimed features.[1] This mature doctrine prevents a patentee from arguing for an earlier priority date because an applicant

---

[1] *See, e.g., B&S Plastics Inc. v. Hydro Air Indus. Inc.*, No. SA CV 95-492AHS(EEX), 1995 WL 811901, at *4 (C.D. Cal. Oct. 10, 1995) (despite extensive argument that the PTO's findings were in error, finding such inquiries into such matters unnecessary "in light of the Court's holding on the threshold question of acquiescence."); *Moll v. N. Telecom, Inc.*, No. CIV.A. 94-5451, 1995 WL 676420, at *3, *5 (E.D. Pa. Nov. 7, 1995) (finding "the *Pennwalt* court noted that acquiescence is a threshold question, and that a finding of acquiescence in the PTO's rejection eliminates the need to determine whether the claims of the patent that issued were supported by the disclosure of the rejected application. . . . Because this Court finds that Moll acquiesced in the rejection, it is unnecessary to consider whether the claims of the '192 patent were supported by the disclosure of the first application.").

may not argue in litigation that which it agreed to during prosecution.[2] Succinctly stated: "A *prima facie* case of acquiescence is made when the challenger presents clear and convincing evidence that: (1) the patent examiner issued a clear, unambiguous, and final 35 U.S.C. § 112 rejection; and (2) the patentee expressly or impliedly conceded the correctness of the rejection by filing a CIP application in response." *Centocor Ortho Biotech, Inc. v. Abbott Lab'ys*, 662 F. Supp. 2d 584, 591 (E.D. Tex. 2009), as amended (May 29, 2009).[3]

That is what happened here. During prosecution of the '454 application, the PTO issued multiple written-description rejections because of border-flange limitations in the claims, which the applicant acknowledged. *See, e.g.,* Ex. 15 ("The Examiner rejects claims 1-22 under 35 U.S.C. l 12(a) as failing to comply with the written description requirement. The Examiner contends that claims 3-6, 10, 17, and 19-21 recite a border flange and various limitations to the border flange[.]"). The PTO ultimately issued a final office action rejecting such claims for failing to comply with the written-description requirement. Ex. 7 at 4 ("Claims 3-6, 8, 10, and 17-22 are rejected under 35 U.S.C. 112(a) as failing to comply with the written description requirement" [because of the recited] "border flange and various limitations."). At that point, the

---

[2] *See, e.g., Litton Sys., Inc. v. Whirlpool Corp.*, 728 F.2d 1423, 1444 (Fed. Cir. 1984), abrogated on other grounds by *Two Pesos Inc. v. Taco Cabana*, 505 U.S. 763 (1992) and *Waldemar Link v. Osteonics Corp.*, 32 F.3d 556, 559 (Fed. Cir. 1994).

[3] *See also Moll,* 1995 WL 676420, at *4 ("Northern Telecom has stated a *prima facie* case of acquiescence by Moll in the Examiner's rejection of the parent application. The Examiner's final rejection of Moll's parent application included a rejection under 35 U.S.C. § 112, paragraph 1, for inadequate disclosure of all claims. Def. Ex. E. at 2. Moll subsequently filed the CIP application which was ultimately accepted by the PTO."); *Depaul v. Toshiba Corp.*, No. 91CIV.4481(LAP)(THK), 1995 WL 489567, at *7 (S.D.N.Y. Aug. 15, 1995) (finding a *prima facie* case shown where the plaintiff filed a CIP application "describing the rejected new matter, in addition to other matter never mentioned in the prosecution of the original application"); *B&S Plastics*, 1995 WL 811901, at *4 ("plaintiff chose not to appeal and instead impliedly conceded the lack of entitlement to the original filing date by filing the CIP application. Under applicable precedent, the '447 patent is therefore not entitled to the filing date of the parent application.").

5

applicant could have advanced any number of arguments. But the applicant chose to abandon the '454 application (Ex. 9) and file the CIP '152 application. Ex. 13 at 1, ln. 63. The '152 application matured into the asserted '930 patent. *Id*. All claims of the '930 patent recite border flange-limitations.  Ex. 13 at claims 1, 16, 17, 19. So none are entitled to an earlier priority date.

In sum, StringKing has met its burden to make a *prima facie* case of acquiescence by showing that (1) the patent examiner issued a clear, unambiguous, and final 35 U.S.C. § 112 rejection (Ex. 7); and (2) the patentee filed a CIP application (Ex. 8 at 2) in response. Plus, the '930 patent includes more detail about the border flange. Revised figures 1 and 2 include new shading directed to a more clearly shown border flange with portions 166a and 166b (FIG. 2). *See also,* new figures 5, 6, 7, 8, 9; and new corresponding descriptions at, for example, col. 9, l. 53 – col. 10, l. 45. Thus, STX is estopped from arguing that the PTO's rejection in the '454 application was wrong or that the '454 application included an adequate disclosure of a "border flange" because acquiescence is a threshold issue. As discussed, because Applicant had a full and fair opportunity to make such arguments to the PTO, courts do not evaluate whether the PTO's rejection was correct or whether a parent's disclosure supports a child's claims; the patentee "is now bound to its acquiescence." *Litton*, 728 F.2d at 1444. "Judge Learned Hand persuasively stated in a similar context that '[i]f the result is harsh and over strict, it arises from the laws as to 'continuations.''" *Id*. (quoting *Philip A. Hunt Co. v. Mallinckrodt Chem. Works*, 177 F.2d 583, 587 (2d Cir. 1949)). At bottom, STX "is estopped from asserting that the filing date of the" '454 application applies to any claim of the '930 patent. *Moll*, 1995 WL 676420, at *5.

**B.    Judicial estoppel also prevents STX from seeking an earlier priority date.**

STX's admitted strategic acquiescence to the PTO's priority-date determination estops it from arguing for an earlier priority date. "The Federal Circuit has established that judicial estoppel is appropriate 'when a party takes a later position that is inconsistent with a former

6

position in the same dispute, on which the party had been successful and had prevailed based on the former position.'" *MobileMedia Ideas, LLC v. Apple Inc.*, 907 F. Supp. 2d 570, 623 (D. Del. 2012), *vacated in part*, 780 F.3d 1159 (Fed. Cir. 2015) (quoting *Bonzel v. Pfizer, Inc.*, 439 F.3d 1358, 1362 (Fed. Cir. 2006)). In a priority-date dispute, the patent holder was estopped from seeking an earlier priority date in litigation based on earlier prosecution positions. *Id*. Likewise, here, STX's current position is inconsistent with the one it intentionally took during prosecution. STX now argues that claims 1-18 are entitled to an earlier priority date after it prevailed in obtaining a patent by deliberately not contesting the PTO's priority-date determination.

STX acknowledges that in "a March 28, 2024 Office Action, the Examiner stated '[t]he effective filing date of claim 1 and its dependent claims is 2/25/22 as claim 1 recites a bevel angle." D.I. 40 at 3; Ex. 10. STX has also admitted that it "chose as a matter of strategy to accept allowable subject matter, and did not respond to, contest, or make any additional disclosures in view of the Examiner's statement regarding the effective filing date." D.I. 40 at 3.

Beyond judicial estoppel, the rationale of *Pennwalt* also favors estopping STX from asserting that claims 1-18 are entitled to any earlier priority date. *Pennwalt Corp. v. Akzona Inc.*, 740 F.2d 1573 (Fed. Cir. 1984) (finding acquiescence to a lack-of-enablement rejection precluded later relying on a parent application's disclosure). Courts in this District have found that the *Pennwalt* doctrine (discussed above) applies by analogy in other contexts to bind an applicant in litigation to its acquiesce during prosecution.[4] In the face of the PTO's express determination that any claim reciting a "bevel angle" limitation is limited to the '930 patent's filing date (Ex. 10), STX has admitted that it strategically did not contest the Examiner's

---

[4] *See Salomon S.A. v. Rossignol Ski Co*., 715 F. Supp. 1274, 1282 (D. Del. 1989) ("The parties in the present case urge, and the Court agrees, that the *Pennwalt* doctrine applies by analogy to the filing of a terminal disclaimer.").

statement to receive the benefit of accepting allowable subject matter (D.I. 40 at 3).

When applicants strategically choose not to contest a priority-date determination, they are withholding information about any purported belief in supposed entitlement to an earlier date in exchange for immediate economic and other benefits of a granted patent. This frustrates the public's ability to rely on the prosecution record of an application. If an applicant were permitted to remain silent to obtain an allowance and then reach back to an earlier date during litigation, the prosecution record would lose its value as a reliable guide for the public. Given that the rationale of *Pennwalt* confirms that acquiescence leads to estoppel and that judicial estoppel prevents STX from taking inconsistent positions after its gain, STX should be estopped from now asserting that claims 1-18 are entitled to any earlier priority date.

**C.    The '454 application does not support claims 1-19 of the '930 patent.**

Even if the Court finds that neither of the independent estoppel bases prevents STX from arguing for an earlier priority date, the '454 application does not adequately support claims 1-19. At a high level, the patented technology relates to a lacrosse glove. Lacross gloves have padding on top of the fingers and on top of the hand. STX maintains that its RZR glove is innovative because its padding consists of a single piece of foam instead of many stitched pieces.

No material facts are in dispute. The content of the '454 application is undisputed, and the written-description inquiry is confined to its four corners. *See, e.g., Seagen Inc. v. Daiichi Sankyo Co., Ltd.*, 160 F.4th 1322, 1329 (Fed. Cir. 2025) (in a priority-date context, noting that the "hallmark of written description is disclosure in the four corners of the specification.") (internal quotation marks omitted). STX bears the burden to show that it is entitled to an earlier effective filing date. A *prima facie* case of invalidity is established by introducing sufficient evidence to put at issue whether there is antedating prior art but for awarding an earlier priority date. *PowerOasis*, 522 F.3d at 1305. Here, STX's own RZR glove is antedating prior art. STX

admits that its RZR glove "is covered by claim 1 of the '930 Patent" (D.I. 57-3 at 38), and that the RZR was first sold on March 29, 2019 (*Id.* at 24, 35, 37). The RZR was also in public use and otherwise available to the public before February 24, 2021. *See,* Ex. 2. STX's RZR glove includes all the features of claims 1-10 & 12-19. Ex. 1 at ¶¶ 3-7 (citing Exs. 2-6, including the claim mapping in Ex. 4). After a patent challenger establishes evidence of antedating prior art, the burden of production shifts to the patent owner to come forward with evidence to the contrary. *Id.*; *Tech. Licensing Corp. v. Videotek, Inc.*, 545 F.3d 1316, 1329 (Fed. Cir. 2008) ("the patentee has the burden of going forward with evidence and argument to the contrary.") A district court "correctly place[s] the burden on [a patentee] to come forward with evidence to prove entitlement to claim priority to an earlier filing date." *PowerOasis*, 522 F.3d at 1305–06.

Plus, the PTO's finding is "entitled to a presumption of correctness and regularity, and can only be held erroneous through the presentation of clear and convincing evidence carrying thorough conviction."[5] STX is unable to show that the '454 application discloses (1) a border flange "protruding outward at an acute bevel angle relative to said zero-elevation surface" or (2) a sectioned border flange protruding outward at an acute bevel angle "around at least four of said adjacent finger sections." D.I. at claim 1 (claims 16 and 17 including similar limitations).

Independent claims 1, 16, and 17 recite an "acute bevel angle" of the border flange. For example, claim 1 recites: "said border flange . . . protruding outward at an acute bevel angle relative to said zero-elevation surface around at least four of said adjacent finger sections." Ex.

---

[5] *Ralston Purina Co. v. Far-Mar-Co, Inc.*, 586 F. Supp. 1176, 1213 (D. Kan. 1984), *aff'd in part, rev'd in part* (on other grounds), 772 F.2d 1570 (Fed. Cir. 1985) (finding a determination of priority of invention is "entitled to a presumption of correctness and regularity, and can only be held erroneous through the presentation of clear and convincing evidence carrying thorough conviction."). *PowerOasis* affirmed that the "district court in *Ralston* properly accorded deference to the Board's decision on priority." *PowerOasis*, 522 F.3d at 1304.

13 at claim 1. The "acute bevel angle" limitation has two parts: a protruding aspect (orientation, not shape) and a sectioned aspect (one section angled downward, others not). Diagram D1 (below) shows what is meant by the border flange "protruding" outward at an acute bevel angle relative to a zero-elevation surface 52. Ex. 13 at claims 1, 16, 17.



**Diagram D1.**

### C(1).   The '454 application fails to disclose a border flange "protruding outward at an acute bevel angle relative to said zero-elevation surface."

As a preliminary matter, Fed. R. Civ. P. Rule 37 prohibits STX from offering evidence of such support because STX has refused to respond to StringKing's interrogatory no. 1 asking for its bases. *See* D.I. 57-3 at 22-23. The '454 application does not use the terms "bevel angle" or "acute bevel angle" at all. Claims 1-18 recite a border flange "protruding outward at an acute bevel angle relative to said zero-elevation surface." Ex. 13 at claims 1, 16. That *orientation* is not disclosed in the '454 application. Here is the closest disclosure:

> The border flange 166 may also have a non-flat cross section configured to avoid interference between the border flange 166 of adjacent finger-receiving sections 27, 28, 29, 30 and 31. For example, the border flange 166 may be sloped, beveled or tapered outwardly away (see FIG. 6 bottom) from the finger-receiving sections 27, 28, 29, 30, and relative to the zero-elevation surface.

Ex. 12 at ¶ 50. But that describes a shape of a border flange, which the '930 patent abandoned, not an *orientation* that it newly describes and claims. Diagram D2 shows the change.

10



**Diagram D2**

The only picture of that shape is FIG. 6 (Diagram D2, left side). FIG. 6 visually depicts what the passage describes. FIG. 6 shows only a horizontally protruding flange with a flat bottom. Any potential remaining doubt that the two above sentences do not describe the newly claimed *orientation* of the border flange recited in the '930 patent is resolved by comparing like passages, as reflected in Table T1, below.

| Table T1 | |
|---|---|
| **'454 Application** | **'930 Patent** |
| The border flange 166 may also have a *non-flat cross section* configured to avoid interference between the border flange 166 of adjacent finger-receiving sections 27, 28, 29, 30 and 31. *For example*, the border flange 166 may be sloped, beveled or tapered outwardly away (see FIG. 6 bottom) from the finger-receiving sections 27, 28, 29, 30, and relative to the zero-elevation surface. Ex. 12 at ¶ 50. | Importantly, the border flange 166 surrounding the five finger-receiving sections 27, 28, 29, 30 and 31 is formed with a bevel, e.g., the border flange 166 is *angled rearward* (away from the picture in FIG. 2). *This bevel* is configured to avoid interference between the border flange 166 of adjacent finger-receiving sections 28, 29, 30 and 31. Preferably, the border flange 166 is sloped, beveled or tapered away ***at a slope*** relative to the zero-elevation surface as shown in FIG. 4 (bottom) around all of the finger-receiving sections 28, 29, 30, 31. Ex. 13 at col. 7, ll. 38-47. |

Table T1 compares the '454 application's wording to the '930 patent's. The '454 application refers to the "non-flat cross section" *shape* of the flange (e.g., like a doorstop). The "[f]or example" phrase introduces ways of describing the doorstop's *shape*. The '930 patent, however, introduces the border flange with new wording, saying it is "angled rearward." It calls this angled-rearward orientation a "bevel." The '930 patent adds three new words: "at a slope."

11

The lack of "at a slope" in the '454 application confirms a lack of an adequate written-description of a border flange "protruding outward at an acute bevel angle." Ex. 13 at claim 1.

Comparing the new border flange of '930 patent with that of the '454 application further confirms its lack of support.[6] The '930 patent deletes the "non-flat cross section" wording, does not incorporate the '454 application by reference, and introduces significant new matter and new features to support its newly *oriented* bevel flange. In fact, there is no disclosure common to both applications that supports the "bevel angle" limitation.

One new feature of the '930 patent is newly shaped finger pads. The undersides of finger pads 62 are "arched from side-to-side to conform to the arch of the fingers." Ex. 13 at 10:10-11. Because of that arch, as shown in new FIG. 5 (right), the undersides transition "directly into the border flange 166 on both sides of each finger *at the same angle*" in one embodiment. Ex. 13 at 10:12-14. This extension of arched finger-section bottoms "at the same angle" could not be achieved with the flat-bottom flanges of the '454 application, confirming its lack of disclosure of a border flange protruding at an acute bevel angle.



FIG. 5

A second new feature in the '930 patent is a new way of resolving side-to-side finger-interference. In the '454 application, finger interference was solved by the *shape* of the flange: its "non-flat cross section." Ex. 12 ¶ at 50 ("The border flange 166 may also have a non-flat cross

---

[6] Comparing a child application's disclosure to a parent's helps confirm the parent's lack of disclosure. *See, e.g., Cozy, Inc. v. Dorel Juv. Grp., Inc.*, 678 F. Supp. 3d 225, 237 (D. Mass. 2023) ("A comparison of the [relevant patents] demonstrates that the drawings are different, the described embodiments are different and the claims of the earlier and later patents use different terminology to describe the respective inventions.").

section *configured to avoid interference*"). Diagram D2, above (left side), shows that "slope" in the '454 application refers to the non-flat cross section that makes the flange look like a wedged doorstop. But in the '930 patent, finger interference is addressed not by the border flange's *shape*, but by its new *orientation*: how it protrudes away. Diagram D3 (below) shows how the flange from a disparaged flat-bottom shape in the '454 app. to a praised downward-angled protrusion in the '930 patent.



**Diagram D3.**

This new orientation is what now "avoid[s] finger-interference." Ex. 13 at 10:29-33. The '930 patent disparages the flat-bottom, horizontal-protrusion design of the '454 patent, saying they "encounter each other" and "resist flexing when adjacent fingers compress together." Ex. 13 at 10:37-40. Its FIG. 9 distinguishes its newly oriented border flange from ones that have a "flat bottom"—the only type disclosed in the '454 parent application. *See* Diagram D3 (below) (referencing FIG. 9, as filed (Ex. 14)). A description of an acknowledged inferior design cannot support an improved design. The '930 patent's disparagement of a flat-bottomed border flange confirms that the '454 application's description of such a flange does not support the '930 patent's improved border flange that protrudes away at an acute bevel angle.

13

**C(2).    The '454 patent fails to provide an adequate written-description to support the full scope claims 1-18 that extend to a multi-sectioned border flange that protrudes at an acute bevel angle around "at least four of said adjacent finger sections" but not elsewhere.**

Compliance with the written-description requirement requires providing "enough description in the specification to demonstrate that" inventors invented "the full scope" of the claims.[7] Here, claims 1-18 of the '930 patent are broad enough to cover a sectioned border flange that protrudes at an acute bevel angle along some sections but not others. Analogous to the *ICU Medical* court's usage of "spikeless," this brief uses the term "sectioned border flange" not because it excludes a non-sectioned flange or requires a sectioned one, but because the claims are broad enough to encompass the sectioned border flange of the '930 patent. 558 F.3d at 1372.

As shown in its FIG. 2, the '930 patent's border flange newly includes two sections: "a first (grey-shaded) section 166a of the border flange 166 surrounding four fingers protrudes at the acute bevel angle . . . , and a second (grey-shaded) section surrounding the thumb protrudes at the same acute bevel angle . . . . All other sections 166b of the border flange 166 (not grey shaded) protrude horizontal to the zero-elevation surface 54." Ex. 13 at 7:56-63.

Claim 1 recites a dorsal panel including "at least four fingers." Thumb 27 is considered a

---

[7] *Lipocine Inc. v. Clarus Therapeutics, Inc.*, 541 F. Supp. 3d 435, 463 (D. Del. 2021). *ICU Med., Inc. v. Alaris Med. Sys., Inc.*, 558 F.3d 1368 (Fed. Cir. 2009) provides an example of the "full scope" requirement. It dealt with medical valves used in the transmission of fluids to or from a medical patient. The specification disclosed valves with spikes. Some claims recited a spike, others did not. The Federal Circuit referred to the latter claims as *spikeless*, "not because they exclude the preferred embodiment of a valve with a spike but rather because these claims do not include a spike limitation—*i.e.*, they do not require a spike." *Id*. at 1377. The spikeless claims were broader than spike claims because they do not include a spike limitation. The spikeless claims were found to refer to medical valves generically—covering those valves that operate with a spike and those that operate without a spike. *Id*. at 1378. But the figures and description disclosed only spike embodiments. The Court found the claims invalid for want of written description, rejecting the "contention that the figures and descriptions that include spikes somehow demonstrate that the inventor possessed a medical valve that operated without a spike." *Id*. at 1378.

finger.[8] Claim 1 is broad enough to include a dorsal panel with five fingers. Claim 1 also recites a border flange protruding outward at an acute bevel angle "around at least four of said adjacent finger sections," meaning that it need not protrude outward at that angle around other sections, such as the section between the index finger and thumb.[9] Claim 16 includes similar wording. And claim 17 is even broader in this respect because its border flange protrudes at the acute bevel around only "at least two adjacent finger sections." Ex. 13 at claim 17.

The '454 application, however, does not provide adequate written-description support of the full scope of claims 1, 16, and 17. It includes no disclosure of any sort of sectioned (two-part, or multi-part) border flange, where a first section protrudes at an acute bevel angle and another section does not. There is only one border flange. It is oriented in only one way. Its FIG. 6 shows that it protrudes only parallel with a flat bottom. Ex. 12 at FIG. 6. There is no disclosure akin to FIG. 2 of the '930 patent. No "grey shaded" and no "non-shaded" portion.

Just as a spike-only disclosure in *ICU Medical* could not disclose a spikeless device, disclosure of a non-sectioned border flange cannot disclose a sectioned one. Thus, the '454 application does not provide adequate written-description of a claimed border flange protruding outward at an acute bevel angle around "at least four" adjacent finger sections as recited in claim 1, which is broad enough to include a border flange with a "second section" that protrudes "parallel to said zero-elevation surface" as recited in claim 3. So it is with claims 16 and 17

---

[8] The specification describes the border flange as "surrounding the five finger-receiving sections 27, 28, 29, 30 and 31." Ex. 13 at 7:38-40, FIG. 1.

[9] Claim 3 recites "a second section of *said* border flange protrudes parallel to said zero-elevation surface." Ex. 13 at claim 3 (emphasis added). This would be a section between a thumb and index finger. Thus, the doctrine of claim differentiation confirms that the scope of claim 1 extends to a glove having a dorsal panel that includes a border flange that protrudes at the recited acute bevel angle around a first section (e.g., "at least four of said adjacent finger sections") but protrudes horizontally (or "parallel") in other sections.

15

based on their similar wording. Here, "the patent itself is clear enough that it establishes inadequacy of support in the written description for the full scope of the claimed invention unless there is contrary evidence," which there is not. *Mondis Tech. Ltd. v. LG Elecs. Inc.*, 149 F.4th 1291, 1297 (Fed. Cir. 2025).

### C(3).   Claim 19 lacks written-description support in the '454 application.

Claim 19 recites a border flange "edge" that "is beveled by an inclined surface sloping away . . . ." Ex. 13 at claim 19. The '454 application does not mention or otherwise a border flange "edge" at all, let alone provide adequate written-description support for one that is beveled and includes the features as claimed.

### VII.   CONCLUSION

For all the above, StringKing requests summary judgment that all claims of the asserted patent are entitled to a priority date no earlier than its filing date of February 25, 2022.

<div style="margin-left: 50%;">

Respectfully submitted,

*/s/ Virginia K. Lynch*
Andrew E. Russell (No. 5382)
Virginia K. Lynch (No. 7423)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
arussell@shawkeller.com
glynch@shawkeller.com
*Attorneys for Defendant StringKing, Inc.*

</div>

OF COUNSEL:
Jesse J. Camacho
PRACTUS LLP
3810 NE 95th ST
Kansas City, MO 65156
(816) 343-4301

Dated: April 9, 2026

16