**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| STX, LLC,<br><br>             Plaintiff,<br><br>                    v.<br><br>STRINGKING, INC.<br><br>             Defendant. | C.A. No. 25-1359-JLH-EGT |

**PLAINTIFF STX, LLC'S ANSWERING BRIEF IN OPPOSITION TO STRINGKING'S
<u>MOTION FOR PARTIAL SUMMARY JUDGMENT ON PRIORITY DATE</u>**

*Of Counsel:*

James K. Archibald
Special Counsel
STX, LLC
1500 Bush Street
Baltimore, MD 21230
Telephone: (443) 253-8833
jima@wmtburnett.com

Barry J. Herman
Julie C. Giardina
WOMBLE BOND DICKINSON (US) LLP
100 Light Street, 26th Floor
Baltimore, MD 21202
Telephone: (410) 545-5830
Barry.Herman@wbd-us.com
Julie.Giardina@wbd-us.com

Dated: April 24, 2026

Stephanie S. Riley (#5803)
Alexander P. Wharton (#7304)
WOMBLE BOND DICKINSON (US) LLP
1313 North Market Street, Suite 1200
Wilmington, DE 19801
Telephone: (302) 252-4320
Facsimile: (302) 252-4330
Stephanie.Riley@wbd-us.com
Alexander.Wharton@wbd-us.com

*Attorneys for STX, LLC*

**TABLE OF CONTENTS**

I.    NATURE AND STAGE OF THE PROCEEDINGS ........................................................ 2

II.    SUMMARY OF ARGUMENT ................................................................................ 3

III.    STATEMENT OF THE FACTS ............................................................................. 3

IV.    ARGUMENT ..................................................................................................... 4

    A.    **StringKing's Motion Is Procedurally Deficient** ................................................. 4

    B.    **Acquiescence Estoppel Does Not Apply** ............................................................ 5

        1.    The Record Shows Escalating Disagreement ............................................... 5

        2.    Acquiescence Estoppel Should Be Applied with Caution, If at All ........... 8

        3.    The Doctrine's Own Elements Are Not Satisfied ....................................... 9

        4.    Acquiescence Estoppel Cannot Apply Categorically to All Claims ......... 11

        5.    The Same Examiner Has Since Allowed Claims With the Same Challenged Limitations—Despite Knowing StringKing's Arguments ................................................................................................. 11

    C.    **Judicial Estoppel Does Not Bar STX from Arguing for an Earlier Priority Date** ................................................................................................. 12

        1.    Strategic Silence Is Not Judicial Estoppel ................................................. 12

        2.    STX Did Not "Prevail" on Any Priority Date Position ............................. 13

        3.    Estoppel Cannot Reach Issues the PTO Never Decided ........................... 14

    D.    **The '454 Application Provides Adequate Written Description Support** ....... 15

        1.    The '454 Application Discloses a Border Flange "Protruding Outward at an Acute Bevel Angle Relative to Said Zero-Elevation Surface" ...................................................................................................... 16

        2.    The '454 Application Supports the Full Scope of Claims 1-18 ................ 18

        3.    Claim 19 Is Supported by the '454 Application ........................................ 19

    E.    **In the Alternative, the Court Should Defer Ruling Under Rule 56(d) Because STX Has Been Unable to Conduct Essential Discovery** ................... 19

V.    CONCLUSION ................................................................................................. 20

i

## TABLE OF AUTHORITIES

**Cases**

*Advanced Video Techs. LLC v. HTC Corp.*
    No. 11-6604, 2013 WL 6017923 (S.D.N.Y. Nov. 7, 2013)........................................... 7, 15

*Amgen Inc. v. Hospira, Inc.*
    No. 18-1064-CFC-CJB, 2021 WL 4935868 (D. Del. May 20, 2021) ................................ 5

*Ariad Pharm., Inc. v. Eli Lilly & Co.*
    598 F.3d 1336 (Fed. Cir. 2010)................................................................... 4, 9, 19

*Augustine Med., Inc. v. Gaymar Indus., Inc.*
    181 F.3d 1291 (Fed. Cir. 1999)................................................................................ 4

*Bonzel v. Pfizer, Inc.*
    439 F.3d 1358 (Fed. Cir. 2006)..................................................................... 12, 13, 14

*Centocor Ortho Biotech, Inc. v. Abbott Lab'ys*
    662 F. Supp. 2d 584 (E.D. Tex. 2009), *as amended* (May 29, 2009)....................... 5, 6, 10

*Cephalon, Inc. v. Watson Pharms., Inc.*
    707 F.3d 1330 (Fed. Cir. 2013).................................................................................. 9

*Crown Operations Int'l, Ltd. v. Solutia Inc.*
    289 F.3d 1367 (Fed. Cir. 2002)................................................................................ 16

*Doe v. Abington Friends Sch.*
    480 F.3d 252 (3d Cir. 2007)..................................................................................... 20

*In re Kaslow*
    707 F.2d 1366 (Fed. Cir. 1983)................................................................................ 17

*Johns Hopkins Univ. v. 454 Life Scis. Corp.*
    183 F. Supp. 3d 563 (D. Del. 2016)........................................................................ 4, 7

*Juno Therapeutics, Inc. v. Kite Pharma, Inc.*
    10 F.4th 1330 (Fed. Cir. 2021) ................................................................................. 9

*Koninklijke Philips Elecs. N.V. v. Cardiac Sci. Operating Co.*
    590 F.3d 1326 (Fed. Cir. 2010)................................................................................ 15

*Litton Sys., Inc. v. Whirlpool Corp.*
    728 F.2d 1423 (Fed. Cir. 1984).................................................................................. 8

*M2M Sols. LLC v. Sierra Wireless Am., Inc.*
    No. 12-30-RGA, 2016 WL 1298961 (D. Del. Mar. 31, 2016) ........................................ 16

*McGinley v. Luv N' Care Ltd.*
    819 Fed. Appx. 913 (Fed. Cir. 2020)........................................................................ 18

*MobileMedia Ideas, LLC v. Apple Inc.*
    907 F. Supp. 2d 570 (D. Del. 2012) .................................................................. 13

*Pennwalt Corp. v. Akzona Inc.*
    740 F.2d 1573 (Fed. Cir. 1984) ......................................................................... 8

*Petrella v. Metro-Goldwyn-Mayer, Inc.*
    572 U.S. 663 (2014) ........................................................................................... 9

*PowerOasis, Inc. v. T-Mobile USA, Inc.*
    522 F.3d 1299 (Fed. Cir. 2008) .......................................................................... 4

*SCA Hygiene Prods. Aktiebolag v. First Quality Baby Prods., LLC*
    580 U.S. 328 (2017) ........................................................................................... 9

*SCA Hygiene Prods. Aktiebolag v. First Quality Baby Prods., LLC*
    767 F.3d 1339 (Fed. Cir. 2014) .......................................................................... 8

*ScriptPro LLC v. Innovation Assocs., Inc.*
    833 F.3d 1336 (Fed. Cir. 2016) ........................................................................ 15

*TorPharm, Inc. v. Ranbaxy Pharms., Inc.*
    336 F.3d 1322 (Fed. Cir. 2003) ........................................................ 7, 10, 13, 14

*Zimmer Surgical, Inc. v. Stryker Corp.*
    365 F. Supp. 3d 466 (D. Del. 2019) ............................................................. 9, 13

**Statutes**

35 U.S.C. § 120 ........................................................................................................ 10

35 U.S.C. § 132 ........................................................................................................ 10

35 U.S.C. § 282 ........................................................................................................ 14

**Rules**

Fed. R. Civ. P. 56(d) ................................................................................................ 19

Plaintiff STX, LLC ("STX") opposes Defendant StringKing, Inc.'s ("StringKing") Motion for Partial Summary Judgment on Priority Date (D.I. 62, "Motion"). The Motion should be denied. It is procedurally deficient, doctrinally unfounded, and factually wrong—and at every turn, genuine disputes of material fact preclude the relief StringKing seeks.

First, StringKing failed to file the separate concise statement of undisputed material facts required by the Scheduling Order. Courts in this District have denied summary judgment motions on this basis alone. The Court need go no further.

If the Court reaches the merits, StringKing's case quickly collapses. Its acquiescence theory hinges on a claim that the Applicant "acquiesced" to the Examiner's Section 112(a) rejection by filing a continuation-in-part ("CIP") application rather than contesting it. The record shows the opposite. Applicant fought the Examiner's written description rejection at every stage, including a response to the final office action. The CIP was filed only after the Examiner declined to enter proposed amendments on procedural grounds, not in lieu of contesting the rejection. Acquiescence requires genuine concession. The prosecution record is replete with disagreement.

StringKing's judicial estoppel argument is no more convincing. It cherry picks a single statement from a disqualification brief describing prosecution counsel's conduct, while ignoring the same brief's express statement that the claims of U.S. Patent No. 12,274,930 (the "'930 Patent") "are at least entitled to a priority date of January 7, 2019" and that "StringKing's arguments lack merit." That is far from a concession and does not give rise to judicial estoppel. Instead, that is merely selective quotation from StringKing's litigation counsel.

StringKing's written description challenge fares no better. U.S. Patent App. No. 16/241,454 (the "'454 Application"), to which the '930 Patent claims priority, expressly discloses a border flange that "may be sloped, beveled or tapered outwardly away . . . from the finger-

1

receiving sections . . . and relative to the zero-elevation surface"—precisely the geometric relationship the '930 Patent discloses. Written description does not demand that the specification parrot the exact claim terms; it demands that the disclosure reasonably convey to a person of ordinary skill in the art ("POSITA") that the inventor possessed the claimed subject matter. The point is underscored by what happened next: the same Examiner who issued the § 112(a) rejection that anchors StringKing's entire acquiescence theory has since allowed claims reciting the same "border flange" and "acute bevel angle" limitations in a related continuation application, after reviewing filings from this litigation, including StringKing's own invalidity theories.

Finally, in the unlikely event that the Court were inclined to grant the Motion, STX has been unable to conduct essential discovery. The pending Motion to Disqualify has prevented STX from consulting with or obtaining testimony from the attorney whose prosecution decisions are at the center of the Motion. At best for StringKing, the Court should defer ruling under Rule 56(d) until STX has had a fair opportunity to develop the record. The Motion should be denied.

## I.    NATURE AND STAGE OF THE PROCEEDINGS

STX filed its complaint for infringement of the '930 in this District on November 6, 2025. D.I. 1. StringKing filed its Answer on November 24, 2025, alongside counterclaims for declaratory judgment of invalidity, unenforceability, and noninfringement, false marking, and unfair competition. D.I. 9. On January 5, 2026, STX filed a partial motion to dismiss, seeking to dismiss StringKing's counterclaims for declaratory judgment of invalidity regarding inventorship, false marking, and unfair competition. D.I. 26. Briefing on the motion to dismiss completed on January 27, 2026. D.I. 27; D.I. 33; D.I. 38. Also on January 5, 2026, STX moved to disqualify StringKing's counsel, Practus LLP, on grounds that the attorney that prosecuted the '930 Patent, the validity and priority date of which are subject to dispute in this action, is a partner at Practus and this

2

presents an irremediable conflict that restricts STX's ability to defend itself. D.I. 23 ("DQ Motion"). Briefing on the DQ Motion completed on January 27, 2026. D.I. 24; D.I. 34; D.I. 40. On February 27, 2026, STX filed a motion to stay discovery pending resolution of the DQ Motion. D.I. 53. Briefing on the motion to stay completed on March 20, 2026. D.I. 54; D.I. 57; D.I. 58. StringKing now moves for early summary judgment regarding priority. D.I. 62.

## II.    SUMMARY OF ARGUMENT

1.    The Motion should be denied for failure to comply with the Scheduling Order.

2.    The Motion should be denied because acquiescence and judicial estoppel do not apply, and the '454 Application provides adequate written description support for the '930 Patent, which is entitled to the priority date of the '454 Application and, at best for StringKing, there are genuine disputes of material fact as to the same.

3.    Alternatively, the Motion should be denied under Rule 56(d) until the Court rules on STX's Motion to Disqualify and STX can conduct necessary discovery.

## III.    STATEMENT OF THE FACTS

The '930 Patent, which was filed on February 25, 2022, is a CIP of the '454 Application, which was filed on January 7, 2019. Ex. 6[1] at 1. The '454 Application is a CIP of U.S. Patent App. No. 14/602,915 (the "'915 Application"), filed January 22, 2015. *Id.* Certain claims of the '454 Application included a "border flange." Ex. 9 at cl. 3. During prosecution of the '454 Application, the Examiner issued Section 112(a) rejections on the basis that the '915 Application did not provide support for a "border **flange**," i.e., the '915 Application set forth a "border" but did not expressly set forth the term "flange." Ex. 12 at 11. The Examiner did not issue a Section 112(a) rejection on the basis that the specification of the '454 Application itself did not describe a "border

---

[1] References to "Exhibit" or "Ex." herein refer to exhibits attached to the Declaration of Julie C. Giardina ("Giardina Decl."), filed contemporaneously herewith.

flange." *See id.* at 2,11 ("the ***parent application*** provides support for a substantially contiguous border but doesn't provide support for a "border flange.") (emphasis added). Ultimately, the Applicant abandoned the '454 Application and filed U.S. Patent App. No. 17/681,152 (the "'152 Application), which issued as the '930 Patent.

## IV.   ARGUMENT

Summary judgment is only appropriate where the movant shows that there is no genuine dispute as to any material fact and the nonmovant fails to come forward with specific facts showing the opposite, with all reasonable inferences drawn in the nonmovant's favor. *Johns Hopkins Univ. v. 454 Life Scis. Corp.*, 183 F. Supp. 3d 563, 567 (D. Del. 2016).

 "[A] patent application is entitled to the benefit of the filing date of an earlier filed application only if the disclosure of the earlier application provides support for the claims of the later application, as required by 35 U.S.C. § 112." *PowerOasis, Inc. v. T-Mobile USA, Inc.*, 522 F.3d 1299, 1306 (Fed. Cir. 2008). For CIP applications, "[d]ifferent claims of [a CIP] application" may "receive different effective filing dates." *Augustine Med., Inc. v. Gaymar Indus., Inc.*, 181 F.3d 1291, 1302 (Fed. Cir. 1999). "Subject matter that arises for the first time in [a] CIP application does not receive the benefit of the filing date of the parent application." *Id.* "Application of the written description requirement is central to the resolution of [a priority date dispute]." *PowerOasis*, 522 F.3d at 1306. Written description is analyzed from the perspective of a POSITA. *Ariad Pharm., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1351 (Fed. Cir. 2010).

### A.   StringKing's Motion Is Procedurally Deficient

The Scheduling Order requires that any summary judgment motion be accompanied by a separate concise statement of undisputed material facts:

> Any motion for summary judgment shall be accompanied by ***a separate concise statement***, not to exceed six pages, which details each material fact that the moving

party contends is essential for the Court's resolution of the summary judgment motion . . . and as to which the moving party contends there is no genuine issue to be tried. ***Each fact shall be set forth in a separate numbered paragraph*** and shall be supported by specific citation(s) to the record.

D.I. 22 ¶ 16(b) (emphasis added). This provision immediately follows the very provision StringKing cites as authorizing its early summary judgment motion. D.I 62 at 1 (citing D.I. 22 ¶ 16(a)). Yet StringKing's Motion includes no such separate concise statement of material facts. And as Chief Judge Connolly has made clear, this warrants denial:

The terms of the Scheduling Order could not be clearer: Any motion for summary judgment shall be accompanied by a separate concise statement detailing each material fact as to which the moving party contends that there are no genuine issues to be tried that are essential for the Court's determination of the [motion]. ***Because Defendants did not comply with the Scheduling Order's requirements for summary judgment practice, I will deny their motion***.

*Amgen Inc. v. Hospira, Inc.*, No. 18-1064-CFC-CJB, 2021 WL 4935868, at *1 (D. Del. May 20, 2021) (emphasis added) (citation and internal quotations omitted).

## B. Acquiescence Estoppel Does Not Apply

StringKing's acquiescence estoppel theory fails at every level: (1) the prosecution record refutes its factual premise; (2) the doctrine itself rests on non-binding authority inapplicable here as StringKing does not cite, and STX has been unable to find, any case applying acquiescence estoppel based on a written description rejection directed at a parent application's disclosure; (3) its own elements are not satisfied; (4) it cannot operate as a blanket bar across all claims; and (5) the very Examiner whose rejection forms the basis of StringKing's theory has since allowed claims reciting identical limitations as those challenged here.

### 1. The Record Shows Escalating Disagreement

The doctrine requires that the patentee "expressly or impliedly conceded the correctness of the rejection by filing a CIP application in response." *Centocor Ortho Biotech, Inc. v. Abbott Lab'ys*, 662 F. Supp. 2d 584, 591 (E.D. Tex. 2009), *as amended* (May 29, 2009). Whether

5

Applicant conceded or contested the Examiner's rejection is a factual question—and the prosecution record answers it decisively in STX's favor. StringKing contends that "the applicant could have advanced any number of arguments. But the applicant chose to abandon the '454 application . . . and file the CIP '152 application" (D.I. 63 at 5-6) rather than contest the Examiner's rejection. That characterization is false. The prosecution history reveals a continuous, escalating pattern of disagreement at every stage of prosecution.

A fulsome review of the prosecution history of the '454 Application highlights the Applicant's defense of the border flange disclosure, which began before the final office action issued, and did not terminate with any express or implied concession. In the May 4, 2021 non-final office action, the Examiner rejected claims 1-22 under Section 112(a) for lack of written description support for a "border flange." Ex. 12 at 10-12. In its August 4, 2021 response, the Applicant contested the Examiner's position, arguing that "a mere change in semantics from 'border' to 'border flange' is not new matter" and identified specific dimensional support in the parent application. Ex. 13 at 11. The Examiner's final office action acknowledged the response, but maintained the rejection. Ex. 14. The Applicant escalated the dispute by: (1) submitting a corrected Application Data Sheet; (2) filing a comprehensive response, including proposed claim amendments and a request for reconsideration that disagreed with the Examiner point by point, citing five Federal Circuit decisions (which support STX's positions here) (Ex. 14).

Acquiescence estoppel requires that the patentee concede the correctness of the rejection— either expressly or impliedly—by filing a CIP application "in response" to a final rejection. *Centocor,* 662 F. Supp. 2d at 591. Here, the Applicant's response to the final rejection was not to file a CIP application. The Applicant's response was to file a substantive amendment and request for reconsideration that **expressly** contested the Examiner's position. *See* Ex. 15. Nor was the

Applicant's decision to thereafter pursue the claimed subject matter through the '152 Application an implied concession of the Examiner's new matter finding—it was the next step after actively contesting the rejection and having the proposed amendments declined for procedural reasons.

In sum, the prosecution record reveals three rounds of substantive disagreement, and acquiescence estoppel requires genuine concession, not strategic procedural efficiency. *See Advanced Video Techs. LLC v. HTC Corp.*, No. 11-6604, 2013 WL 6017923, at *7 (S.D.N.Y. Nov. 7, 2013) (interpreting *Pennwalt* as finding acquiescence in the absence of finding "some other reason" for filing the CIP). "A patentee is not required to fight tooth and nail every possibly adverse thought an examiner commits to paper, nor to advance redundant arguments for patentability." *TorPharm, Inc. v. Ranbaxy Pharms., Inc.*, 336 F.3d 1322, 1330 (Fed. Cir. 2003). Where the prosecution record is replete with the applicant's express disagreement at every stage, no inference of acquiescence can be drawn from the subsequent filing of a CIP application. StringKing has therefore failed to make a *prima facie* case of acquiescence.

At minimum, genuine disputes of material fact preclude summary judgment on acquiescence. The parties dispute whether the Applicant conceded or contested the Examiner's Section 112(a) rejection, whether the filing of the CIP reflected acquiescence or strategic procedural efficiency after active contestation, and whether the response—which the Examiner declined to enter on procedural grounds—constituted a substantive challenge to the rejection. These are factual questions that cannot be resolved on the current record without crediting one party's characterization of the prosecution history over the other's. The Court must draw all reasonable inferences in STX's favor. *Johns Hopkins*, 183 F. Supp. 3d at 567. The inference that the Applicant contested the rejection—rather than conceded it—is not merely reasonable; it is compelled by the documentary record. *Advanced Video*, 2013 WL 6017923, at *7 (absent

7

acquiescence, compliance with written description requirement remains a disputed material fact). Indeed, to "justify summary judgment of equitable estoppel, any inference that a patentee made a misleading communication by omission or acquiescence must be the **only** possible inference from the evidence." *SCA Hygiene Prods. Aktiebolag v. First Quality Baby Prods., LLC*, 767 F.3d 1339, 1350 (Fed. Cir. 2014) (emphasis added). That standard is not met here.

### 2.    Acquiescence Estoppel Should Be Applied with Caution, If at All

Even setting aside the Applicant's active contestation, StringKing's acquiescence theory fails because it rests on non-binding authority that this Court should approach with caution.

StringKing's characterization of acquiescence estoppel as a "mature doctrine" that "moots" all further inquiry draws primarily from district court decisions. *See* D.I. 63 at 4. None of these decisions are binding on this Court. And while StringKing cites two Federal Circuit decisions (*Litton* and *Pennwalt*), neither establishes the blanket rule StringKing seeks. *Litton* arose in a design patent context involving trade dress, not utility patent priority, and the applicant there filed a CIP "rather than contesting" the rejection. *Litton Sys., Inc. v. Whirlpool Corp.*, 728 F.2d 1423, 1444 (Fed. Cir. 1984). *Pennwalt* addressed a lack of enablement rejection—not a written description rejection—and predates the Federal Circuit's modern written description framework established in *Ariad*. *See generally Pennwalt Corp. v. Akzona Inc.*, 740 F.2d 1573 (Fed. Cir. 1984). In both cases, the applicant abandoned claims **without contesting** the examiner's findings—the opposite of what happened here.

The Federal Circuit has never expressly endorsed a blanket rule that filing of a CIP after a Section 112 rejection categorically estops a patentee from later asserting an earlier priority date. A doctrine developed by a handful of district courts in the mid-1990s should not be mechanically imported as a dispositive "threshold" bar, particularly where, as here, the prosecution record

8

reflects vigorous disagreement with the Examiner's finding.[2]

StringKing's application of the doctrine is not merely unsupported—it is unprecedented. Every acquiescence case cited by StringKing involved either an enablement rejection under Section 112, first paragraph or a new matter rejection under Section 132. No case cited by StringKing—and none STX has been able to identify—has ever applied acquiescence estoppel on the basis of a Section 112(a) **written description** rejection directed at the adequacy of a **parent** application's disclosure, which is precisely what StringKing asks this Court to do here.

The distinction matters. Enablement requires that the specification teaches a POSITA to make and use the claimed invention without undue experimentation. *Cephalon, Inc. v. Watson Pharms., Inc.*, 707 F.3d 1330, 1336 (Fed. Cir. 2013). Written description requires that the inventor was in **possession** of the claimed invention as of the filing date. *Ariad Pharms.*, 598 F.3d at 1351. Written description is a question of fact requiring a claim-by-claim analysis. *See Juno Therapeutics, Inc. v. Kite Pharma, Inc.*, 10 F.4th 1330, 1335 (Fed. Cir. 2021). A blanket estoppel rule that "moots" all further inquiry is fundamentally incompatible with this fact intensive, possession-based standard. If acquiescence were extended to cover written description rejections, the Court would be foreclosing the required factual inquiry. *See Zimmer Surgical, Inc. v. Stryker Corp.*, 365 F. Supp. 3d 466, 482 (D. Del. 2019) ("the test is not whether the claims may also find support in new matter, but whether the original disclosure is sufficient to support the claims").

### 3.    The Doctrine's Own Elements Are Not Satisfied

Even accepting that acquiescence estoppel can apply in principle, the doctrine's elements

---

[2] The Supreme Court has reinforced this caution, expressing skepticism toward equitable defenses in patent cases that stretch beyond their traditional boundaries to override statutory remedies. *See SCA Hygiene Prods. Aktiebolag v. First Quality Baby Prods., LLC*, 580 U.S. 328 (2017); *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663, 684 (2014). StringKing's acquiescence theory—seeking to foreclose STX's statutory right to litigate priority based on inferences from prosecution strategy—is precisely the kind of overextension of equitable doctrines cautioned against.

9

are not met here. Under *Centocor*, a *prima facie* case requires: (1) a clear, unambiguous, and final Section 112 rejection; and (2) that the patentee expressly or impliedly conceded its correctness by filing a CIP. *Centocor*, 662 F. Supp. 2d at 591. Even assuming element one is satisfied, two is not.

Filing a CIP does not satisfy element two. An applicant may file a CIP for reasons unrelated to any § 112 rejection—to broaden claim scope, address prior art, consolidate prosecution, or, as here, advance prosecution efficiently after contesting the examiner's findings. Declaration of Michael Lee ("Lee Decl.") ¶22. Filing a CIP is a procedural vehicle, not a formal admission. *See* 35 U.S.C. §§ 120, 132. *Centocor's* "implied concession" requires conduct demonstrating the applicant accepted the rejection as correct, not merely chose another application vehicle. *TorPharm*, 336 F.3d at 1330 (acquiescence "principles do not suggest that a patentee may advance during litigation only those arguments in support of patentability that were made before the [PTO]").

Here, the Applicant filed a CIP in response to a complex prosecution posture, not as an implied concession on the border flange issue. Lee Decl. ¶¶ 31-49, 81-89. The final office action included five separate Section 103 prior art combinations spanning all 21 pending claims, a Section 112(a) written description rejection, drawing objections, and specification objections. Ex. 14 at 4-15. Critically, the Applicant's express reason for changing the '454 Application from a continuation to a CIP related not to the border flange at all, but to the "slits" limitation of claim 21—a feature that Applicant acknowledged was not disclosed in the parent application. *Id.* at 15; Lee Decl. ¶¶ 46, 86. A court cannot infer an "implied concession" on one Section 112 issue when the applicant expressly identified a different limitation as the basis for the CIP designation and vigorously contested the border flange rejection throughout. *Id.* ¶¶ 46, 81-89.

Acquiescence estoppel is also inapplicable for an independent reason: the Section 112(a) rejections during prosecution of the '454 Application concerned whether the grandparent '915

10

Application provided adequate support for the "border flange" as claimed in the '454 Application. Lee Decl. ¶¶ 86-89. The '454 Application itself indisputably discloses the "border flange." *Id.* Because STX seeks priority only to the '454 Application—not the '915 Application—whether the '915 Application supports the border flange is irrelevant to the priority question before this Court. *Id.* Acquiescence estoppel cannot bar STX from arguing here that the '930 Patent's claims are supported by the '454 Application. *Id.* ¶¶ 49, 87-88. The '930 Patent's prosecution history confirms this point. The Examiner issued no Section 112(a) rejections based on the "border flange" or "acute bevel angle" limitations. *Id.* ¶¶ 49-50.

### 4.    Acquiescence Estoppel Cannot Apply Categorically to All Claims

StringKing seeks to apply acquiescence as a blanket bar to every claim of the '930 Patent, arguing that the doctrine's "threshold nature does not contemplate a Court conducting a claim-by-claim analysis." D.I. 63 at 1, 4. That proposition is unsupported and overbroad, as the final office action rejected only Claims 3-6, 8, 10, and 17-22 under Section 112(a). Ex. 14 at 3. Claims 1, 2, 7, 9, and 11-16 were rejected solely under Section 103. *Id.* at 4. Where the Section 112(a) rejection was claim specific, any estoppel must be correspondingly limited.

A blanket estoppel across all 19 claims—based on a rejection that did not extend to all, addressed only the semantics of "border" versus "border flange," and concerned different limitations than those at issue—exceeds even the most aggressive reading of acquiescence. At minimum, the estoppel analysis must proceed claim-by-claim and limitation-by-limitation.

### 5.    The Same Examiner Has Since Allowed Claims With the Same Challenged Limitations—Despite Knowing StringKing's Arguments

The prosecution history of a related continuation, U.S. App. No. 19/036,972 (the "'972 Application"), undercuts StringKing's theory. The '972 Application was examined by the same Primary Examiner—Katherine M. Moran—who examined the '454 and '152 Applications. On

April 2, 2026, Examiner Moran issued a Notice of Allowance ("NOA") in the '972 Application for all 21 claims, including claims reciting "border flange" and "acute bevel angle" limitations. Ex. 19 at 5-6; Ex. 22 at 2-5. Before issuing the NOA, Ms. Moran considered an Information Disclosure Statement that included filings from this litigation encompassing StringKing's counterclaims (including its priority date and invalidity theories). *Id.* at 5, 12-14.

Thus, the same examiner whose Section 112(a) rejection forms StringKing's **entire** acquiescence theory has now reviewed the identical disclosure, considered identical claim limitations, been made aware of StringKing's arguments, and concluded the claims are allowable. This Court should be skeptical about treating these limitations as categorically barred when the Examiner herself does not view them as unsupported.

### C.    Judicial Estoppel Does Not Bar STX from Arguing for an Earlier Priority Date

Judicial estoppel requires a clearly inconsistent position in a prior proceeding, success based on that position, and an unfair advantage absent estoppel. *Bonzel v. Pfizer, Inc.*, 439 F.3d 1358, 1362 (Fed. Cir. 2006). StringKing cannot satisfy any element.

### 1.    Strategic Silence Is Not Judicial Estoppel

StringKing contends that STX's decision "not to contest" the Examiner's priority date statement constitutes a "position" triggering judicial estoppel. D.I. 63 at 8. It does not. Judicial estoppel bars affirmative inconsistent positions—not silence. *Bonzel*, 439 F.3d at 1362. The Examiner's statement that "[t]he effective filing date of claim 1 and its dependent claims is 2/25/22 as claim 1 recites a bevel angle" was an incidental comment within the Section 103 obviousness rejection for prior art purposes—not a final determination, adjudicated holding, or ruling requiring a formal stance. The Examiner provided no rationale, and contesting the statement would have been pointless: the cited prior art all published in 2016 or earlier, so every reference qualified as prior art even under the January 7, 2019 filing date. Lee Decl. ¶¶ 26-30. STX accepted allowable

subject matter; it did not represent to the PTO that the February 25, 2022 date was correct. *See TorPharm*, 336 F.3d at 1330.

StringKing contends that STX "admitted" that it strategically chose not to contest the Examiner's priority date statement and is now estopped from arguing an earlier date. D.I. 63 at 7. The statement to which StringKing points was made in a disqualification motion to describe Mr. Lloyd's prosecution work—not in a priority date proceeding—and it does not change the analysis. The same brief **expressly** stated that "the claims of the '930 Patent are at least entitled to a priority date of January 7, 2019" and that "StringKing's arguments lack merit." D.I. 40 at 1 n.1, 3. A brief that simultaneously asserts an earlier priority date cannot be read as conceding a later one. STX further explained that the statement reflected only "what STX's litigation counsel independently surmised from reviewing the publicly available prosecution file history—without being able to consult Mr. Lloyd." D.I. 58 at 2.

StringKing's reliance on *MobileMedia* is misplaced. There, the patentee made affirmative representations about claim scope and then argued the opposite in litigation. *MobileMedia Ideas, LLC v. Apple Inc.*, 907 F. Supp. 2d 570, 623 (D. Del. 2012). Here, STX made no affirmative priority date representation during prosecution endorsing the Examiner's narrower priority date determination. Declining to contest an incidental priority comment is not "taking a position" on priority. *See Zimmer*, 365 F. Supp. 3d at 487 (holding that a prosecution amendment directed at one issue does not constitute a concession on a different issue).

### 2. STX Did Not "Prevail" on Any Priority Date Position

The second element requires a causal nexus: the party must have prevailed **because of** the prior position, not merely at the **same time**. *Bonzel*, 439 F.3d at 1362. STX did not succeed "based on" the February 25, 2022 priority date. The Examiner found allowable subject matter on the merits, not on any priority date representation. The Applicant's June 24, 2024 response confirms

the point: Mr. Lloyd amended claim 1 to incorporate the allowable limitation from claim 3 (a border flange protruding at a bevel angle around "at least four adjacent finger sections"). The Applicant did not face a binary choice between arguing priority and accepting allowable subject matter—the allowable claims were identified on the merits of the prior art analysis, not as a consequence of which priority date applied. Lee Decl. ¶ 30. Judicial estoppel does not apply.

### 3.    Estoppel Cannot Reach Issues the PTO Never Decided

StringKing seeks to use estoppel not to bar an inconsistent position, but to foreclose STX from making legal arguments about the adequacy of the '454 Application's disclosure that the PTO never adjudicated. The Examiner's priority date comment was an administrative observation for prior art purposes, not a judicial finding, contested proceeding, or final agency determination. The Examiner never rejected any claim on priority grounds, analyzed written description support for the bevel angle limitation, or provided any rationale for Applicant to respond.

Judicial estoppel protects the integrity of the judicial process by preventing parties from playing "fast and loose" with the courts. *See Bonzel*, 439 F.3d at 1362. It is not a tool to strip a patentee of its right to litigate issues the PTO never decided. Patent claims enjoy a presumption of validity (35 U.S.C. § 282), and a patentee may present arguments about priority regardless of whether it raised every possible argument during prosecution. *See TorPharm*, 336 F.3d at 1330. StringKing's "public reliance" argument—that applicants who do not contest a statement by the examiner are "withholding information" and "frustrat[ing] the public's ability to rely on the prosecution record" (D.I. 63 at 8)—proves too much. If accepted, it would render priority dates unreviewable in court whenever an applicant obtained a patent without contesting every statement. That is not the law. STX has consistently maintained that the '930 Patent's claims are "at least entitled to a priority date of January 7, 2019." *See* D.I. 40 at 1 n.1; D.I. 63-11 at 8-30. There is no "fast and loose" playing—only a patentee asserting the same position it has consistently held.

14

### D.    The '454 Application Provides Adequate Written Description Support

StringKing cannot prevail on the merits because the '454 Application provides adequate written description support for the claims of the '930 Patent. The parties fundamentally dispute what the '454 Application conveys to a POSITA: StringKing contends it describes only a "shape," while STX demonstrates it discloses an "orientation"—i.e., a border flange beveled at an angle relative to the zero-elevation surface. That is precisely the kind of factual dispute that precludes summary judgment. *See Advanced Video*, 2013 WL 6017923, at *9 (denying summary judgment where "compliance with the written description requirement remains a disputed issue of material fact"). Summary judgment is appropriate only "in cases where no reasonable fact finder could return a verdict for the non-moving party." *ScriptPro LLC v. Innovation Assocs., Inc.*, 833 F.3d 1336, 1340 (Fed. Cir. 2016).

Summary judgment on written description is also premature because the Court has not yet construed the claims. Claim construction must precede any written description analysis under Section 112 before determining the priority date. *See Koninklijke Philips Elecs. N.V. v. Cardiac Sci. Operating Co.*, 590 F.3d 1326, 1336 (Fed. Cir. 2010) (holding that "[a] district court must base its analysis of written description under § 112, ¶ 1 on proper claim construction" and must first construe disputed terms "**and then determine**" whether the written description is adequate). Claim construction briefing is not scheduled to begin until August 27. D.I. 22 ¶¶ 11-13. StringKing offered various constructions in its opening brief, such as regarding "relative to the zero-elevation surface," that are not consistent with the intrinsic evidence and are based only on attorney argument. *See* Lee Decl. ¶¶ 90-92. To the extent the Court is inclined to adopt StringKing's unsupported claim construction positions, granting summary judgment before a full record and claim construction briefing would be reversible error under *Koninklijke*.

15

StringKing's Motion is further undermined by its pure reliance on attorney argument without any POSITA testimony.[3] *See M2M Sols. LLC v. Sierra Wireless Am., Inc.*, No. 12-30-RGA, 2016 WL 1298961, at *3 (D. Del. Mar. 31, 2016) ("[W]ith regard to most of their written description arguments, Defendants cite no expert testimony, relying instead on pure attorney argument. Yet the written description inquiry is a fact question, viewed from the perspective of a [POSITA], and attorney arguments are not facts. These conclusory arguments, unsupported by expert opinion . . . do not meet Defendants' considerable burden.").

### 1.    The '454 Application Discloses a Border Flange "Protruding Outward at an Acute Bevel Angle Relative to Said Zero-Elevation Surface"

StringKing contends that the '454 Application fails to disclose a border flange "protruding outward at an acute bevel angle relative to said zero-elevation surface." D.I. 63 at 10-13. It does. The claimed "acute bevel angle" is not a discrete, separately disclosable component or feature that requires independent written description support. Lee Decl. ¶ 56. It is the geometric relationship between a border flange that protrudes outward in a beveled arrangement relative to the zero-elevation surface, each element of which the '454 Application expressly discloses. *Id.* ¶¶ 56-59. The '454 Application describes a border flange (component) that protrudes outward (configuration) and is "beveled outwardly" (angled) relative to the zero-elevation surface. Ex. 17, ¶ [0050]. A surface "beveled" relative to another surface necessarily forms an angle—a bevel angle—and an angle less than 90 degrees is, by definition, acute. Lee Decl. ¶ 58.

Written description does not demand the specification use the exact claim terms. *Crown Operations Int'l, Ltd. v. Solutia Inc.*, 289 F.3d 1367, 1376 (Fed. Cir. 2002) (disclosure need not provide "in haec verba support"). The parent application must "reasonably convey[] to the artisan

---

[3] Notably, StringKing's Opening Brief never includes the word/phrase "POSA," "POSITA," or "person of ordinary skill in the art." *See generally* D.I. 63.

that the inventor had possession at that time of the later claimed subject matter." *In re Kaslow*, 707 F.2d 1366, 1375 (Fed. Cir. 1983). A POSITA reading the '454 Application's description of a border flange would understand the inventor to have possessed a border flange protruding outward at an acute bevel angle relative to the zero-elevation surface. Figure 6 of the '454 Application further illustrates this configuration. Lee Decl. ¶¶ 60-61; Ex. 17 at Fig. 6.

StringKing contends that the "acute bevel angle" limitation "has two parts: a protruding aspect (orientation, not shape) and a sectioned aspect (one section angled downward, others not)." D.I. 63 at 10. Neither is recited by the claims. The claims recite a border flange "protruding outward from said zero-elevation surface . . . and protruding outward at an acute bevel angle relative to said zero-elevation surface." Ex. 6 at cls. 1-18. The conjunction "and" connects two descriptions of the same border flange—it does not introduce a separate "protruding aspect" or "sectioned aspect." Lee Decl. ¶¶ 74-75. StringKing's Diagram D1 confirms that the acute bevel angle is simply the angle formed between the border flange and the zero-elevation surface in a beveled relationship, which is disclosed in the '454 Application. *Id.* ¶ 76.

StringKing's attempt to distinguish the '454 Application's disclosure as a "shape" (a "non-flat cross section" like a "wedged doorstop") from the '930 Patent's claimed "orientation" (D.I. 63 at 10-13) is artificial and lacks technical merit. As StringKing's Diagram D2 and Table T1 illustrate, the '454 Application's description of a border flange as "sloped, beveled or tapered outwardly away . . . relative to the zero-elevation surface" and the '930 Patent's description of one "sloped, beveled or tapered away at a slope relative to the zero-elevation surface" are different verbal formulations of the same physical arrangement. Lee Decl. ¶¶ 66-70. The "166 (slope)" annotation in FIG. 6 identifies a surface angled relative to the zero-elevation surface—that is orientation, not static shape. StringKing's reference to the "angled rearward" language (D.I. 63 at

17

11) is misleading: the phrase "angled rearward (away from the picture in FIG. 2)" (Ex. 6 at 7:38-47) describes drawing perspective, not a new characteristic of the border flange, and the words "at a slope" do not appear in any claim of the '930 Patent. Lee Decl. ¶¶ 62-65.

StringKing's FIG. 9 argument undermines its position. By acknowledging that FIG. 9 of the '930 Patent contrasts beveled flanges with "flat bottom" flanges (D.I. 63 at 13), StringKing effectively concedes that the '454 Application's description of a "non-flat" border flange describes a flange with the very configuration the '930 Patent claims. The '930 Patent describes a configuration "formed with a bevel"—one surface is angled relative to another. Ex. 6 at 7:38-63. The '454 Application describes the same relationship: a border flange "beveled . . . outwardly away . . . relative to the zero-elevation surface." Ex. 17 ¶ [0050]. An acute angle is a type of angle. The '454 Application's disclosure therefore provides adequate written description support for a border flange "protruding outward at an acute bevel angle relative to said zero-elevation surface." Lee Decl. ¶¶ 71-73.

StringKing's reliance on the '930 Patent's revised figures and new descriptions (D.I. 63 at 6) is unavailing. New figures depicting exemplary embodiments do not defeat a priority claim where the disputed element was previously disclosed. *McGinley v. Luv N' Care Ltd.*, 819 Fed. Appx. 913, 924 (Fed. Cir. 2020) (figures were merely "examples showing that the . . . limitations being added to the claims during prosecution had been previously disclosed . . . in the prior applications"). Because the border flange was disclosed in the '454 Application, the addition of shading and new figures in the '152 Application does not undermine priority.

### 2.    The '454 Application Supports the Full Scope of Claims 1-18

StringKing separately argues that the '454 Application fails to support the "full scope" of claims 1-18, which recite a border flange protruding at an acute bevel angle around "at least four of said adjacent finger sections." D.I. 63 at 14-16. StringKing contends the claims encompass a

"sectioned" border flange—beveled in some areas but not others—and that the '454 Application does not disclose this configuration. This argument improperly asks the Court to construe the claims as covering a hypothetical embodiment and then deny priority because the parent application does not specifically disclose it. Lee Decl. ¶ 77-78. The '454 Application discloses a border flange surrounding the finger-receiving sections that may be "sloped, beveled or tapered outwardly away ... from the finger-receiving sections 27, 28, 29, 30." Ex. 17 ¶ [0050]. The claim language "at least four of said adjacent finger sections" defines the minimum extent of the beveled border flange, and the '454 Application discloses a border flange with this orientation surrounding the finger-receiving sections. Lee Decl. ¶¶ 77-79. That is sufficient. *See Ariad*, 598 F.3d at 1351 (written description satisfied where disclosure "reasonably conveys to a [POSITA] that the inventor had possession of the claimed subject matter as of the filing date").

### 3.    Claim 19 Is Supported by the '454 Application

StringKing argues that claim 19's "border flange edge" limitation lacks support. D.I. 63 at 16. The '454 Application describes a border flange with specific width ranges and dimensional characteristics relative to the zero-elevation surface, which adequately conveys the concept of a border flange edge beveled by an inclined surface sloping away from the zero-elevation surface. Lee Decl. ¶ 80. As demonstrated above, the '454 Application's disclosure of a beveled border flange relative to the zero-elevation surface provides written description support for this limitation.

### E.    In the Alternative, the Court Should Defer Ruling Under Rule 56(d) Because STX Has Been Unable to Conduct Essential Discovery

Even if the Court were inclined to grant StringKing's Motion—it should not—it should defer or deny the Motion under Rule 56(d). Where a nonmovant cannot present facts essential to justify its opposition, the court may defer consideration, allow time for discovery, or issue any other appropriate order. FED. R. CIV. P. 56(d). The Third Circuit has held that such relief should

19

be granted "as a matter of course," particularly where "relevant facts are under the control of the moving party." *Doe v. Abington Friends Sch.*, 480 F.3d 252, 257 (3d Cir. 2007).

There is overwhelming evidence to demonstrate that StringKing's Motion must be denied, but in addition, STX cannot present essential facts because the pending Motion to Disqualify (D.I. 23) has prevented STX from consulting with or obtaining testimony from Mr. Lloyd, the attorney who prosecuted the '930 Patent to allowance and whose decisions are at the center of StringKing's Motion. Mr. Lloyd responded to the March 28, 2024 Office Action on which StringKing's judicial estoppel theory rests. D.I. 40 at 3; D.I. 25-1 at 32-44. He has first-hand knowledge of why the Applicant responded in the manner it did, what prosecution strategy informed that decision, and whether the '454 Application was understood to support the contested limitations. Declaration of Barry J. Herman ("Herman Decl.") ¶¶ 15, 17. STX's outside counsel cannot communicate with Mr. Lloyd—a partner at opposing counsel's firm—without risking disclosure of privileged strategy and work-product protections. *See* D.I. 24 at 9 n.6; D.I. 58 at 2. Until the disqualification motion is resolved, STX cannot obtain testimony from Mr. Lloyd or develop the factual record necessary to fully oppose StringKing's Motion. Herman Decl. ¶¶ 15, 17.

STX has been diligent. It filed its Motion to Disqualify on January 5, 2026 (D.I. 23), moved to stay discovery on February 27, 2026 (D.I. 53), and has consistently identified Mr. Lloyd's testimony as essential. Herman Decl. ¶¶ 5-7. STX has not slept on its rights—it has been blocked from obtaining essential testimony by an unresolved ethical conflict not of its making. If the Court were inclined to grant the Motion, the Court should defer ruling at least until STX has had a fair opportunity to develop the record with Mr. Lloyd. *Id.* ¶ 20.

## V.     CONCLUSION

For the reasons set forth above, the Court should deny StringKing's Motion.

20

Dated: April 24, 2026

*Of Counsel:*

James K. Archibald
Special Counsel
STX, LLC
1500 Bush Street
Baltimore, MD 21230
Telephone: (443) 253-8833
jima@wmtburnett.com

Barry J. Herman
Julie C. Giardina
WOMBLE BOND DICKINSON (US) LLP
100 Light Street, 26th Floor
Baltimore, MD 21202
Telephone: (410) 545-5830
Barry.Herman@wbd-us.com
Julie.Giardina@wbd-us.com

Respectfully submitted,

*/s/ Alexander P. Wharton*
Stephanie S. Riley (#5803)
Alexander P. Wharton (#7304)
WOMBLE BOND DICKINSON (US) LLP
1313 North Market Street, Suite 1200
Wilmington, DE 19801
Telephone: (302) 252-4320
Facsimile: (302) 252-4330
Stephanie.Riley@wbd-us.com
Alexander.Wharton@wbd-us.com

*Attorneys for STX, LLC*

21