# EXHIBIT 2

UNITED STATES PATENT AND TRADEMARK OFFICE

**UNITED STATES DEPARTMENT OF COMMERCE**
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 17/681,152 | 02/25/2022 | David Kucharsky | 54322-139174-CIP2 | 2681 |

155571        7590        03/28/2024
Gordon Feinblatt LLC
1001 Fleet Street, Suite 700
Baltimore, MD 21202

| EXAMINER |
|---|
| MORAN, KATHERINE M |

| ART UNIT | PAPER NUMBER |
|---|---|
| 3732 | |

| NOTIFICATION DATE | DELIVERY MODE |
|---|---|
| 03/28/2024 | ELECTRONIC |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

Notice of the Office communication was sent electronically on above-indicated "Notification Date" to the following e-mail address(es):

eofficeaction@appcoll.com
usptopatents@gfrlaw.com

PTOL-90A (Rev. 04/07)

| **Office Action Summary** | **Application No.**<br>17/681,152 | **Applicant(s)**<br>Kucharsky et al. |
|---|---|---|
| | **Examiner**<br>KATHERINE M MORAN | **Art Unit**<br>3732 | **AIA (FITF) Status**<br>Yes |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address --*

## Period for Reply

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE <u>3</u> MONTHS FROM THE MAILING DATE OF THIS COMMUNICATION.
- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed after SIX (6) MONTHS from the mailing date of this communication.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133).
  Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

## Status

1)☑ Responsive to communication(s) filed on <u>2/25/22</u>.
  ☐ A declaration(s)/affidavit(s) under **37 CFR 1.130(b)** was/were filed on _____.
2a)☐ This action is **FINAL.**       2b) ☑ This action is non-final.
3)☐ An election was made by the applicant in response to a restriction requirement set forth during the interview on _____; the restriction requirement and election have been incorporated into this action.
4)☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

## Disposition of Claims*

5) ☑ Claim(s) <u>1-20</u> is/are pending in the application.
  5a) Of the above claim(s) _____ is/are withdrawn from consideration.
6) ☑ Claim(s) <u>18</u> is/are allowed.
7) ☑ Claim(s) <u>1-3,5-17 and 19-20</u> is/are rejected.
8) ☑ Claim(s) <u>4</u> is/are objected to.
9) ☐ Claim(s) _____ are subject to restriction and/or election requirement

* If any claims have been determined <u>allowable</u>, you may be eligible to benefit from the **Patent Prosecution Highway** program at a participating intellectual property office for the corresponding application. For more information, please see http://www.uspto.gov/patents/init_events/pph/index.jsp or send an inquiry to **PPHfeedback@uspto.gov.**

## Application Papers

10)☑ The specification is objected to by the Examiner.
11)☑ The drawing(s) filed on <u>2/25/2022</u> is/are: a)☐ accepted or b)☑ objected to by the Examiner.
  Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).
  Replacement drawing sheet(s) including the correction is required if the drawing(s) is objected to. See 37 CFR 1.121(d).

## Priority under 35 U.S.C. § 119

12)☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).
  **Certified copies:**
    a)☐ All    b)☐ Some**    c)☐ None of the:
      1.☐ Certified copies of the priority documents have been received.
      2.☐ Certified copies of the priority documents have been received in Application No. _____.
      3.☐ Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).
** See the attached detailed Office action for a list of the certified copies not received.

**Attachment(s)**

1) ☑ Notice of References Cited (PTO-892)
2) ☐ Information Disclosure Statement(s) (PTO/SB/08a and/or PTO/SB/08b)
  Paper No(s)/Mail Date _____.
3) ☐ Interview Summary (PTO-413)
  Paper No(s)/Mail Date _____.
4) ☐ Other: _____.

U.S. Patent and Trademark Office
PTOL-326 (Rev. 11-13)                 Office Action Summary                 Part of Paper No./Mail Date 20240318

Application/Control Number: 17/681,152                                                          Page 2

Art Unit: 3732

## DETAILED ACTION

### *Notice of Pre-AIA or AIA Status*

The present application, filed on or after March 16, 2013, is being examined under the first

inventor to file provisions of the AIA.

There is no power of attorney on file for this application.

The pre-amendment of 3/7/2022 including an amendment to paragraph 41 of the specification

is received and entered.


### *Specification*

The substitute specification filed 3/29/2022 has not been entered because it does not conform

to 37 CFR 1.125(b) and (c) because: the substitute specification was not accompanied by a statement

that it includes no new matter as required by section (b) of the statute. This office action references the

originally filed specification of 2/25/2022 and pre-amendment as noted above.

The specification is objected to as failing to provide proper antecedent basis for the claimed

subject matter.  See 37 CFR 1.75(d)(1) and MPEP § 608.01(o).  Correction of the following is required:

Claim 6 recites all of the foam protective pads along at least four fingers of said wearer's hand comprise

non-parallel sides. Claim 7 recites all of the foam protective pads...comprise a substantially trapezoidal

cross-section.  The specification uses reference number 166 for "beveled flange" and "border flange".

Please revise for consistent reference to the same structural element.

The specification should be amended in par.[0001] to indicate that 16/241,454 is now

abandoned.

Application/Control Number: 17/681,152                                                                           Page 3

Art Unit: 3732

***Claim Objections***

Claims 1, 3, 8, 9, and 20 are objected to because of the following informalities:

Claim 1, line 7- a suggested revision to better recite the foam protective pads 62 is as follows:

delete "four finger patterns of foam protective pads each running along a corresponding finger of said

wearer's hand" and insert --a plurality of foam protective pads extending along each finger section--,

Claim 3, line 2: delete "surrounding at least four fingers of a wearer's hand" and insert --

Claim 8, line 2: delete "based" and insert --base--, and delete "all of the trapezoidal foam

protective pads" and replace with --all of the foam protective pads having the substantially trapezoidal

cross-section--,

Claim 9, line 2: delete "running along said at least four fingers of said wearer's hand" and insert -

-configured to extend over at least four fingers of said wearer's hand--,

Claim 15, "surrounding the finger sections" should be revised to recite --surrounding said at

least two adjacent finger sections-- as claim 1 recites the border flange protrudes outward at a bevel

angle relative to at least two adjacent finger sections,

Claim 20, "said border edge flange" should be revised to recite --border flange edge--, "said

border edge" should be revised to recite --said border flange edge--, "there between" should be

changed to --therebetween--,

Appropriate correction is required.


***Drawings***

The drawings are objected to under 37 CFR 1.83(a).  The drawings must show every feature of

the invention specified in the claims.  Therefore, the border flange as set forth in claims 1, 3, 4, 5, 11,

12, and 18-20 as part of the sports glove structure must be shown or the feature(s) canceled from the

claim(s). The glove of Figure 1 doesn't show the border flange and Figures 2 and 5 show patterns for the

Application/Control Number: 17/681,152                                                    Page 4
Art Unit: 3732

dorsal panel and finger receiving portions, not the actual glove product as claimed. The border flange

protruding outward at a bevel angle relative to the zero-elevation surface around at least two adjacent

finger sections and the border edge beveled by an inclined surface sloping away from said zero-

elevation surface around at least two adjacent finger sections should be shown.  No new matter should

be entered.

Please note that the shaded portions of Figure 1, 2, and 5-8 are unclear and difficult to

reproduce should the case be passed to issue. Figure 2 shows variations in the degree of shading and it's

not clear if this is intentional.

The palmar section of the glove as set forth in claims 1-20, "a unitary dorsal panel attached to

the palmar section" and "a unitary dorsal portion stitched to the palmar section" must be shown or the

feature canceled from the claims.

Corrected drawing sheets in compliance with 37 CFR 1.121(d) are required in reply to the Office

action to avoid abandonment of the application. Any amended replacement drawing sheet should

include all of the figures appearing on the immediate prior version of the sheet, even if only one figure is

being amended. The figure or figure number of an amended drawing should not be labeled as

"amended." If a drawing figure is to be canceled, the appropriate figure must be removed from the

replacement sheet, and where necessary, the remaining figures must be renumbered and appropriate

changes made to the brief description of the several views of the drawings for consistency. Additional

replacement sheets may be necessary to show the renumbering of the remaining figures. Each drawing

sheet submitted after the filing date of an application must be labeled in the top margin as either

"Replacement Sheet" or "New Sheet" pursuant to 37 CFR 1.121(d). If the changes are not accepted by

the examiner, the applicant will be notified and informed of any required corrective action in the next

Office action. The objection to the drawings will not be held in abeyance.

Application/Control Number: 17/681,152                                                          Page 5
Art Unit: 3732

### *Claim Rejections - 35 USC § 112*

The following is a quotation of 35 U.S.C. 112(b):

(b) CONCLUSION.—The specification shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the inventor or a joint inventor regards as the invention.

Claims 3, 5, 7, 10, 19, and 20 are rejected under 35 U.S.C. 112(b) as being indefinite for failing to particularly point out and distinctly claim the subject matter which the inventor or a joint inventor (or for applications subject to pre-AIA 35 U.S.C. 112, the applicant), regards as the invention. Claim 3 is unclear as it recites a first section of the border flange surrounding at least four fingers of said wearer's hand..it appears this should recite "said at least two adjacent finger sections is at least four finger sections." Claim 7 recites all of the foam protective pads along at least four fingers of said wearer's hand comprise a substantially trapezoidal cross-section. The scope of "substantially trapezoidal" is unclear as the specification doesn't provide a standard for ascertaining to what degree the pads must be trapezoidal in order to be considered as "substantially trapezoidal". Claim 10 is unclear because it lacks antecedent basis for "said slant pattern". Claim 10 also recites the slant angle relative to a lengthwise finger axis and it's not clear if the finger axis is referring to the finger axis of the glove or to the finger axis of the wearer's finger, as the claim doesn't recite context for a finger axis. Claim 19 is unclear as it recites a first section of the border flange surrounding all five fingers of said wearer's hand..it appears this should recite "said at least two adjacent finger sections is five finger sections."  Claim 20 lacks antecedent basis for "said border edge".

### *Claim Rejections - 35 USC § 103*

In the event the determination of the status of the application as subject to AIA 35 U.S.C. 102 and 103 (or as subject to pre-AIA 35 U.S.C. 102 and 103) is incorrect, any correction of the statutory basis (i.e., changing from AIA to pre-AIA) for the rejection will not be considered a new ground of

Application/Control Number: 17/681,152                                                                      Page 6

Art Unit: 3732

rejection if the prior art relied upon, and the rationale supporting the rejection, would be the same

under either status.

The following is a quotation of 35 U.S.C. 103 which forms the basis for all obviousness rejections

set forth in this Office action:

> A patent for a claimed invention may not be obtained, notwithstanding that the claimed invention is
> not identically disclosed as set forth in section 102, if the differences between the claimed invention
> and the prior art are such that the claimed invention as a whole would have been obvious before the
> effective filing date of the claimed invention to a person having ordinary skill in the art to which the
> claimed invention pertains. Patentability shall not be negated by the manner in which the invention
> was made.

This application currently names joint inventors. In considering patentability of the claims the

examiner presumes that the subject matter of the various claims was commonly owned as of the

effective filing date of the claimed invention(s) absent any evidence to the contrary.  Applicant is advised

of the obligation under 37 CFR 1.56 to point out the inventor and effective filing dates of each claim that

was not commonly owned as of the effective filing date of the later invention in order for the examiner

to consider the applicability of 35 U.S.C. 102(b)(2)(C) for any potential 35 U.S.C. 102(a)(2) prior art

against the later invention.

Claims 1, 2, 11, 12, 15-17, and 20 are rejected under 35 U.S.C. 103 as being unpatentable over

Leary (U.S. 2016/0325173) in view of Contant (U.S. 2015/0047087) and Berlese (U.S. 4,570,269). The

effective filing date of claim 1 and its dependent claims is 2/25/22 as claim 1 recites a bevel angle.  Leary

discloses the invention substantially as claimed. Leary teaches in a protective sports glove 100 having a

palmar section configured for covering a wearer's palm, a unitary dorsal panel attached to the palmar

section 40 and configured to cover the back of said wearer's hand including all five fingers (see Figures 1

and 3 showing dorsal panel including pads configured to cover the back of the hand including all five

fingers), the dorsal panel consisting of an integrally molded elastomeric member 12 formed with a main

section and five finger sections sharing a common zero elevation surface 16, and a patterned array of

foam protective pads 18 each defining an individual island raised from the zero-elevation surface, the

Application/Control Number: 17/681,152                                                    Page 7
Art Unit: 3732

patterned array of foam protective pads including four finger patterns of foam protective pads each

running along a corresponding finger of said wearer's hand (see Figures 1 and 3 showing the four finger

patterns of foam pads 30 and five finger sections and main section 24), the foam protective pads within

each finger pattern being aligned end-to-end and separated from adjacent foam protective pads by

interstitial channels 14 having a width.  A border flange 38 circumscribes all five finger sections of the

dorsal panel, the border flange protruding outward from the zero-elevation surface around the finger

sections as shown in Figure 11A. The border flange has a width within a range of 4-8 mm. (par. 50

discloses approximately 8 mm, but may be wider or narrower). A lower wrist/forearm portion (formed

collectively by 28A,B,C ) extends below the unitary dorsal panel with an attachment strap 58 configured

to secure the lower wrist/forearm portion around the user's forearm below the wrist. The dorsal panel

is molded of ethylene-vinyl-acetate foam (par.44). However, Leary doesn't teach the interstitial channels

have a width with a range from 1-4mm and the flange protruding outward at a bevel angle relative to

the zero-elevation surface around at least two adjacent finger sections. Leary doesn't teach a series of

V-notches in the border flange for flexibility. Leary does teach that there should be a flexibility between

respective foam pads of each finger as in par.48. Contant teaches a glove with foam protective pads 140

separated from each other by interstitial channels having a width within a range of from 1-4 mm and

approximately 2 mm (par.57 discloses 2 mm). Contant teaches the channels between pads affect the

degree of flexion of the dorsal portion of the glove. Therefore, it would have been obvious to one of

ordinary skill in the art before the effective filing date of the invention to modify Leary's channels to

form with a width of 1-4 mm or approximately 2 mm as taught by Contant, as Contant teaches the

claimed width values contribute to the flexion of the dorsal portion of the glove. Berlese teaches a glove

including a dorsal pad 4 with a border flange protruding outward from a zero-elevation surface at a

bevel angle around at least two adjacent finger sections as the pad edge includes a groove 30 formed

into the zero-elevation surface to form a flange protruding outward from the zero-elevation surface at a

Application/Control Number: 17/681,152                                                                Page 8

Art Unit: 3732

bevel angle.  For claim 15, Leary's modified beveled border flange includes the palmar section stitched

to the beveled border flange surrounding the finger sections. Berlese teaches that it's known to provide

notches 26 in a border of a protective dorsal member 4, the notches appear to be V-notches, with the

shape considered as obvious based upon the desired degree of flexibility and aesthetic considerations.

The notches are disclosed as corresponding to finger joints of the wearer to facilitate bending of the

member at these locations. Therefore, it would have been obvious to one of ordinary skill in the art

before the effective filing date of the invention to modify Leary's border flange to provide a series of V-

shaped notches, as Berlese teaches the notches provide flexibility and facilitate bending at the notch

locations. It also would have been obvious to one of ordinary skill in the art before the effective filing

date of the invention to modify Leary to provide the flange protruding outward at a bevel angle relative

to the zero-elevation surface around at least two adjacent finger sections, as Berlese teaches this flange

structure serves as a guide for stitching the dorsal panel to the palmar section.

        Claims 6 and 7, as best understood, are rejected under 35 U.S.C. 103 as being unpatentable over

Leary in view of Contant and Berlese as applied to claim 1 above, and further in view of Lim

(10,342,274). Leary discloses the invention substantially as claimed. However, Leary doesn't teach all of

the foam protective pads along at least four fingers of the wearer's hand comprise non-parallel sides

and comprise a substantially trapezoidal cross-section. Lim teaches a glove (Fig.3 and 4) with protective

members 312,314 secured to four fingers of the glove to protect upper portions of the wearer's four

fingers, the members comprise non-parallel sides ("it may be desirable for the protrusions protecting at

least one of the finger phalanges to have a curved arrangement 312,314. The curved arrangement may

increase finger dexterity and hand movement in particular applications and industries. ..various

protrusions may have a sloped apex or ridge or plateau 316 that is shaped and configured to address

particular impact risks of particular applications or industries.").  Lim discloses trapezoid shaped

protective protrusions 522,524 configured to protect trapezoid bones and these protrusions have

Application/Control Number: 17/681,152                                                                                            Page 9
Art Unit: 3732

substantially trapezoidal cross sections. Lim teaches that the shapes of the protective members can be selected for desired flexibility and dexterity based upon the type of expected impact during usage. Applicant's specification doesn't provide criticality for the claimed shapes and discloses that the shapes may be altered to promote specific performance improvements. Therefore, it would have been obvious to one of ordinary skill in the art before the effective filing date of the invention to modify Leary's foam protective pads along at least four fingers of the wearer's hand comprise non-parallel sides and a substantially trapezoidal cross-section as Lim teaches equivalent protective pads shaped with non-parallel sides and a substantially trapezoidal cross section are expected to provide desired protective properties and Lim also teaches that the shapes of the pads may be selected for desired flexibility and performance.

Claim 8 is rejected under 35 U.S.C. 103 as being unpatentable over Leary in view of Contant and Berlese as applied to claims 1, 6, and 7 above, and further in view of Binge et al. (U.S. 2015/0143599). Leary discloses the invention substantially as claimed. However, Leary doesn't teach all of the trapezoidal foam protective pads have an arched based configured to conform to a finger. Binge teaches a glove 10 with a protective pad 55 on the dorsal portion of the glove, the pad having an arched based at undersurface 58. The arched shape is expected to function to conform to a finger and Binge also teaches that the arched shape can be free to flex downwardly when impacted by a blow. Therefore, it would have been obvious to one of ordinary skill in the art before the effective filing date of the invention to modify Leary's trapezoidal foam protective pads to have an arched based configured to conform to a finger as Binge teaches the arched based shape allows for flexing downwardly when impacted by a blow, thereby assisting in impact absorption at the fingers.

Claim 10 is rejected under 35 U.S.C. 103 as being unpatentable over Leary in view of Contant and Berlese as applied to claims 1, 7, and 8 above, and further in view of Zhao (U.S. 2022/0354198). Leary discloses the invention substantially as claimed but doesn't teach the slant pattern comprises a

Application/Control Number: 17/681,152                                                Page 10

Art Unit: 3732

slant angle within a range of a 20 to 30 degrees relative to a lengthwise finger axis. Zhao teaches a glove

with protective members 102 on each of the dorsal portions of the four fingers of the glove.  The

protective members include a slant pattern 301 (see Fig.2 and 5 with flex cut 301 closest to surface 502).

The pattern 301 is disclosed as an acute angle less than 90 degrees to disperse stress from an impact to

other pads on the finger as in par.41.  As the claimed range of 20 to 30 degrees doesn't have criticality in

the specification disclosing particular results achieved by the claimed range and Zhao teaches the

general conditions of the range as an acute angle, one of ordinary skill could have arrived at the claimed

range for desired impact dispersion at the fingertip regions of the hand.

Claim 13 is rejected under 35 U.S.C. 103 as being unpatentable over Leary in view of Contant

and Berlese as applied to claim 1 above, and further in view of Brown et al. (Brown, U.S. 9,839,831).

Leary discloses the invention substantially as claimed but doesn't teach the waffle-pattern array of foam

protective pads includes crescent shapes. Brown teaches a glove with an array of protective pads on a

dorsal portion of the glove, including pads with crescent shapes.  The thumb tip foam pad 206 of Figure

10 is disclosed as crescent-shaped to conform to the distal tip of the thumb. Therefore, it would have

been obvious to one of ordinary skill in the art before the effective filing date of the invention to modify

Leary's waffle pattern array of foam protective pads to include crescent shapes as Brown teaches these

shapes are known in the art and are particularly configured to conform to a thumb or fingertip.

Claim 14 is rejected under 35 U.S.C. 103 as being unpatentable over Leary in view of Contant

and Berlese as applied to claim 1 above, and further in view of Safford (U.S. 2019/0357612). Leary

discloses the invention substantially as claimed. Leary teaches the dorsal panel 12 is formed from a

fabric layer and a foam layer 18 and the fabric layer 16 is cemented, glued (considered equal to fused) or

otherwise adhered to the foam layer 18 in bonding step 204 as in par.62. However, Leary doesn't teach

the dorsal panel is fused to a layer of mesh scrim material. Safford teaches a glove with a foam dorsal

panel pad secured to an outer layer of glove 100, with the outer layer formed from mesh material

Application/Control Number: 17/681,152                                                      Page 11
Art Unit: 3732

(equivalent to mesh scrim). Thus, Safford serves as a teaching that mesh material is suitable for

engaging a foam pad. The mesh scrim is inherently breathable and flexible due to its nylon and spandex

blend.  Therefore, it would have been obvious to one of ordinary skill in the art before the effective filing

date of the invention to modify Leary's fabric layer to form from mesh scrim as Safford teaches it's

known in the art to combine a mesh scrim material as a supportive layer for a foam pad layer.


### *Allowable Subject Matter*

Claims 3 and 5 would be allowable if rewritten to overcome the rejection(s) under 35

U.S.C. 112(b) set forth in this Office action and to include all of the limitations of the base claim and any

intervening claims.

Claim 4 is objected to as being dependent upon a rejected base claim, but would be allowable if

rewritten in independent form including all of the limitations of the base claim and any intervening

claims.

There is no prior art applied to claims 18-20 at this time, with allowability of the claims pending

response to rejections/objections set forth herein.


### *Conclusion*

Any inquiry concerning this communication or earlier communications should be directed to

Primary Examiner Katherine Moran at (571) 272-4990 (phone).  Please note that any internet

communication directed to katherine.moran@uspto.gov requires prior submission of an Authorization

for Internet Communications form (PTO/SB/439).  The examiner can be reached on Monday-Thursday

from 9:00 am to 6:00 pm, and alternating Fridays.

If attempts to reach the examiner by telephone are unsuccessful, the examiner's supervisor, Khoa

Application/Control Number: 17/681,152                                              Page 12
Art Unit: 3732

Huynh, may be reached at (571) 272-4888. The official and after final fax number for the organization

where this application is assigned is (571) 273-8300. General information regarding this application and

questions directed to matters of form and procedures may be directed to the PTO Contact

Center/Inventors Assistance Center at (800) 786-9199/571-272-1000. Information regarding the status

of an application may be obtained from the Patent Application Information Retrieval (PAIR) system.

Status information for published applications may be obtained from either Private PAIR or Public PAIR.

Status information for unpublished applications is available through Private PAIR only. For questions on

access to the Private PAIR system, contact the Electronic Business Center (EBC) at 866-217-9197 (toll-

free).


/KATHERINE M MORAN/
 Primary Examiner, Art Unit 3732