# EXHIBIT 4

**IN THE UNITED STATES PATENT AND TRADEMARK OFFICE**

In re Application of:  David Kucharsky          Filing Date:   February 25, 2022

Application No.:       17/681,152              Examiner:      Katherine M. Moran

Confirmation No.:      2681                    Art Unit:      3732

Attorney Docket:       54322-139174-CIP2

For:    STITCHLESS DORSAL PADDING FOR PROTECTIVE SPORTS GLOVES AND
        OTHER PROTECTIVE GEAR

*    *    *    *    *

<u>Amendment</u>

**Mail Stop Amendment NF**
Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

Madame:

Responsive to the Office Action dated March 28, 2024, please enter the following amendments, and consider the following remarks.

AMENDMENTS IN THE CLAIMS

Please amend claims as set forth in the complete claim listing below.  This listing of claims will replace all prior versions and listings of claims in the application.

1.    (Currently Amended)  ~~In a~~ A protective sports glove having a palmar section configured for covering a wearer's palm, the protective sports glove comprising:

a unitary dorsal panel ~~attached~~ configured to attach to the palmar section and ~~configured to~~ cover the back of said wearer's hand including at least four ~~all five~~ fingers, the dorsal panel consisting of an integrally-molded elastomeric member formed with a main section and ~~five~~ finger sections sharing a common zero-[[ ]]elevation surface and a patterned array of foam protective pads each defining an individual island raised from said zero-elevation surface, said patterned array of foam protective pads including ~~four finger patterns of foam protective pads each running along a corresponding finger of said wearer's hand~~ a plurality of foam protective pads extending along each finger section, the foam protective pads within each finger pattern being aligned end-to-end and separated from adjacent foam protective pads by interstitial channels having a width within a range of from 1-4mm, and a border flange circumscribing said ~~all five~~ finger sections of said dorsal panel, said border flange protruding outward from said zero-elevation surface around said finger sections, and protruding outward at an acute bevel angle relative to said zero-elevation surface around at least ~~two~~ four adjacent finger sections.

2.    (Currently Amended)  The protective sports glove according to claim 1, wherein said interstitial channels have a width of approximately 2mm.

3.    (Canceled)

4.    (Previously Presented)  The protective sports glove according to claim 2, wherein a second section of said border flange protrudes parallel to said zero-elevation surface.

2

5. (Currently Amended)  The protective sports glove according to claim 1 [[3]], wherein the first section of said border flange protrudes at an acute angle within a range of from 30-60 degrees relative to said zero- elevation surface.

6. (Previously Presented)  The protective sports glove according to claim 1, wherein all of the foam protective pads along at least four fingers of said wearer's hand comprise non-parallel sides.

7. (Currently Amended)  The protective sports glove according to claim 6, wherein all of the foam protective pads along at least four fingers of said wearer's hand comprise a ~~substantially~~ trapezoidal cross- section.

8. (Currently Amended)  The protective sports glove according to claim 7, wherein all of ~~the trapezoidal~~ foam protective pads having the trapezoidal cross-section have an arched base[[d]] configured to conform to a finger.

9. (Currently Amended)  The protective sports glove according to claim 1, wherein all of the interstitial channels ~~separating the foam protective pads running along said at least four fingers of said wearer's hand~~ are configured to extend over at least four fingers of said wearer's hand and are parallel-aligned along a slant pattern.

10. (Currently Amended)  The protective sports glove according to claim [[8]] 9, wherein said slant pattern comprises a slant angle within a range of a 20-to-30 degrees relative to a lengthwise finger axis of the protective sports glove.

11. (Previously Presented)  The protective sports glove according to claim 1, wherein said border flange has a width within a range of 4-8 mm.

12. (Previously Presented)  The protective sports glove according to claim 1, further comprising a series of V-notches in said border flange for flexibility.

3

13.    (Previously Presented)  The protective sports glove according to claim 1, wherein said waffle-pattern array of foam protective pads includes crescent shapes.

14.    (Previously Presented)  The protective sports glove according to claim 1, wherein said dorsal panel is fused to a layer of mesh scrim material.

15.    (Currently Amended)  ~~The protective sports glove according to claim 1,~~ <u>A protective sports glove having a palmar section configured for covering a wearer's palm, the protective sports glove comprising: a unitary dorsal panel configured to attach to the palmar section and cover the back of said wearer's hand including at least four fingers, the dorsal panel consisting of an integrally-molded elastomeric member formed with a main section and finger sections sharing a common zero-elevation surface and a patterned array of foam protective pads each defining an individual island raised from zero-elevation surface, said patterned array of foam protective pads including a plurality of foam protective pads extending along each section, the foam protective pads within each finger pattern being aligned end-to-end and separated from adjacent foam protective pads by interstitial channels having a width within a range of from 1-4 mm, and a border flange circumscribing said finger sections of said dorsal panel, said border flange protruding outward from said zero-elevation surface around said finger sections, and protruding outward at an acute angel relative to said zero-elevation surface around at least four adjacent finger sections,</u> wherein the palmar section is stitched to <u>a</u> border flange surrounding ~~the~~ <u>at least two adjacent</u> finger sections.

16.    (Previously Presented) The protective sports glove according to claim 1, further comprising a lower wrist/forearm portion extending below said unitary dorsal panel with an attachment strap configured to secure said lower wrist/forearm portion around said user's forearm below the wrist.

4

17.    (Previously Presented)  The protective sports glove according to claim 1, wherein said dorsal panel is molded of ethylene-vinyl acetate foam.

18.    (Currently Amended)  ~~In a~~ A protective sports glove having a palmar section configured for covering a wearer's palm, the protective sports glove comprising:

a unitary dorsal panel configured to be stitched to the palmar section, the dorsal panel consisting of an integrally[[-]]molded panel formed with a main section having a zero-elevation surface and a waffle-pattern array of foam protective pads defined as individual islands raised from said zero- elevation surface, wherein adjacent foam protective pads are separated from each other by an interstitial channel, said dorsal panel further comprising,

a main section,

five finger sections each protruding from said main section, and

a substantially contiguous border flange surrounding and projecting outward around the entire unitary dorsal panel inclusive of said main section and each of said five finger sections, said border flange protruding from said zero-elevation surface at an acute angle relative thereto around at least two adjacent finger sections.

19.   (Currently Amended)  The protective sports glove according to claim 18, wherein said at least two adjacent finger sections is five finger sections. ~~a first section of said border flange surrounding all five fingers of said wearer's hand protrudes at an acute angle from said zero-elevation surface.~~

20.   (Currently Amended)  ~~In a~~ A protective sports glove having a palmar section configured for covering a wearer's palm, the protective sports glove comprising:

a unitary dorsal panel configured to be stitched to the palmar section, the dorsal panel consisting of an integrally[[-]]molded panel formed with a main section having a zero-

5

elevation surface and a waffle-pattern array of foam protective pads defined as individual islands raised from said zero- elevation surface, wherein two or more of said foam protective pads are separated from each other by an interstitial channel, said dorsal panel further comprising ~~five~~ <u>at least four</u> finger sections each protruding from said main section; and

a substantially contiguous border flange edge surrounding the <u>majority of the</u> ~~entire~~ unitary dorsal panel inclusive of said main section and each of <u>said at least four</u> ~~said five~~ finger sections of said unitary dorsal panel and projecting outward beyond said waffle-pattern array of foam pads, wherein said border ~~edge~~ flange <u>edge</u> along a portion of said <u>at least four</u> ~~five~~ finger sections comprises one or more slits ~~there~~ <u>there</u>between for added flexibility, and said border edge is beveled by an inclined surface sloping away from said zero-elevation surface around at least two adjacent finger sections.

6

<u>REMARKS</u>

This Amendment is submitted in response to the Office Action dated March 28, 2024. Claims 1, 2, 5, 7-10, 15 and 18-20 have been amended. Claim 3 has been canceled. No new matter has been added.

*Specification*

The substitute specification has not been entered because it was not accompanied by a statement that it includes no new matter as required by 37 C.F.R. 1.125(b). A new substitute specification is submitted herewith which includes the required statement.

The specification was objected to for reciting the terms "beveled flange" and "border flange" with reference to the same structural element 166. The term "beveled flange" has been removed, the specification now consistently reciting only "border flange" with reference to 166 (including 166a and 166b). Withdrawal of this objection is respectfully requested.

The specification has further been amended to indicate in paragraph [0001] that 16/241,454 is now abandoned as suggested by the Examiner.

*Claim Objections*

The Examiner suggested revisions to claims 1, 3, 8, 9, 15 and 20. Claims 1, 8, 9, 15 and 20 have been amended consistent with the Examiner's suggestion. Claim 3 has been canceled. Withdrawal of the Examiner's objections is respectfully requested.

*Drawings*

The Examiner has objected to the drawings as not showing every feature of the invention specified in the claims. Applicant respectfully disagrees. Claim 1 recites: "A protective sports glove having a palmar section configured for covering a wearer's palm, the protective sports glove comprising: a unitary dorsal panel configured to attach to the palmar section and cover the back of said wearer's hand including at least four fingers…"

7

The unitary dorsal panel claimed consists of several elements, including "a border flange circumscribing at least four finger sections of said dorsal panel".

The substitute specification submitted herewith, with reference to FIG. 2, describes at paragraph [0041] of the specification "a first (grey-shaded) section 166a of the border flange 166 surrounding four fingers [that] protrudes at the acute bevel angle from the zero-elevation surface, and a second (grey-shaded) section surrounding the thumb protrudes at the same acute bevel angle from the zero-elevation surface. All other sections 166b of the border flange 166 (not grey shaded) protrude horizontal to the zero-elevation surface 54." Appropriate reference numerals and lead lines are provided in FIG. 2. While FIG. 1 lacks the same reference numerals (166a and 166b) and lead lines, it is clear that the same features are present in protective sports glove illustrated in FIG. 1, which comprises the unitary dorsal panel illustrated in FIG. 2. Withdrawal of this objection is therefore respectfully requested.

The Examiner also notes: "The border flange protruding outward at a bevel angle relative to the zero-elevation surface around at least two adjacent finger sections and the border edge beveled by an inclined surface sloping away from said zero-elevation surface around at least two adjacent finger sections should be shown." FIG. 1 and FIG. 2 illustrate the dorsal side of a protective glove and claimed unitary dorsal panel. As mentioned above, 166a and 166b of FIG. 2 represent different areas of border flange 166. The border flange is also illustrated in FIGs. 5, 7 and 8, where the bevel angle is better shown. Withdrawal of this objection is therefore respectfully requested.

The Examiner comments that shaded portions of FIGs. 1, 2 and 5-8 are unclear and difficult to reproduce should the case be passed to issue. Applicant may submit replacement sheets post-allowance if this is determined to be the case. The Examiner also posits that it is not

8

clear whether the variations in the degree of shading in FIG. 2 are intentional. However, as discussed above, paragraph [0041] explains the purpose of the shading in FIG. 2. Withdrawal of this objection is therefore respectfully requested.

Lastly, the Examiner notes that claims 1-20 include "a unitary dorsal panel attached to the palmar section" "a unitary dorsal panel stitched to the palmar section" of the protective sports glove, e.g., of claim 1, and required that these features be illustrated in the drawings or canceled from the claims. Claim 1 has been amended to provide for a unitary dorsal panel configured to be attached or stitched to the palmar section. How the unitary dorsal panel is so-configured is explained via several examples in the specification, with stich patterns being illustrated in FIG. 4. Withdrawal of this objection is therefore respectfully requested.

*Claim Rejections - 35 USC § 112*

Claims 3, 5, 7, 10, 19 and 20 are rejected under 35 U.S.C. 112(b) as being indefinite for failing to point out and distinctly claim the subject matter which the inventor or a joint inventor regards as the invention.

The Examiner suggests in the Office Action that claim 3 would be allowable if rewritten to essentially recite the limitations of claim 1 but with "border flange protruding outward from said zero-elevation surface around said finger sections, and protruding outward at a bevel angle relative to said zero-elevation surface around at least *four* adjacent finger sections" instead of two (emphasis added). Rather than amend claim 3, Applicant has amended claim 1, changing "at least two adjacent finger sections" to "at least four adjacent finger sections" in the relevant section, and claim 3 has been canceled. Thus, Applicant posits that claim 1 is now allowable, which should also render claims 2 and 4 allowable per the Examiner's

9

remarks regarding allowable subject matter, and claim 5, which has been amended to depend from amended claim1, should also be allowable in view of those remarks.

Claim 7 has been amended to remove the term "substantially" as suggested by the Examiner. Withdrawal of this ground of rejection of claim 7 is respectfully requested.

The Examiner rejected claim 10 as not having antecedent basis for "said slant pattern". Claim 10 has been amended to depend from claim 9 instead of claim 8, claim 9 providing the required antecedent basis. Withdrawal of this ground of rejection is therefore requested. Claim 10 has also been amended to clarify that the recited "finger axis" refers to that of the claimed protective sports glove, and not that of a wearer. Withdrawal of this ground of rejection is therefore also requested.

The Examiner has suggested that claim 19, which depends from claim 18, be amended to recite "said at least two adjacent finger sections is five finger sections." Claim 19 has been amended in accordance with the Examiner's suggestion. Applicant respectfully requests that this ground of rejection be withdrawn.

Claim 20 has been amended to recite "said border flange edge" as opposed to "said border edge". Withdrawal of this ground of rejection of claim 20 is therefore requested.

*Claim Rejections - 35 USC § 103*

Claims 1, 2, 11, 12, 15-17 and 20 are rejected as being unpatentable over Leary (US 2016/0325173) in view of Contant (US 2015/0047087) and Berlese (US 4,570,269).

As discussed in the previous section, claim 1 has been amended consistent with the Examiner's remarks regarding allowable subject matter in the Office Action. Moreover, the dorsal panel of Leary does not consist of Applicant's "[a] integrally-molded elastomeric member formed with a main section and five finger sections sharing a common zero elevation surface." Not only does Leary make no mention of Applicant's zero-elevation surface, but

10

Applicant's dorsal panel expressly and intentionally does not contain any exterior fabric, in contrast to Leary's "a fabric layer comprising a stretch material, wherein the fabric material is bonded to the exterior layer" of the foam layer of Leary's molded component section. Leary does not disclose either of Applicant's zero elevation surface or its exposed/uncovered molded foam panel.  Therefore, the application of Leary as disclosing these  features is not appropriate. Further, the dorsal panel of Leary consists of a plurality of molded grooves arranged in an exterior layer <u>and</u> an interior layer, and as noted comprises a fabric layer bonded to the exterior layer, which is a construction  Applicant's invention specifically  seeks to avoid. Neither Contant nor Berlese cure this defect in application of Leary in rejection Applicant's invention as obvious, as none disclose a unitary dorsal panel, and especially not a panel that consists of all the elements recited in claim 1.

Because Leary, alone or in combination with Contant and Berlese, does not disclose each and every element of claim 1, claim 1 is patentable over Leary in view of Contant in further view of Berlese.  Because claim 1 is patentable over Leary in view of Contant in further view of Berlese and claims 2, 11, 12 and15-17 depend from claim 1, claims 2, 11, 12 and15-17 are patentable over Leary in view of Contant in further view of Berlese for at least that reason.

Claims 6 and 7 are rejected as being unpatentable over Leary in view of Contant in further view of Berlese as applied to claim 1, and in further view of Kim (US 10,342,274). However, as explained above, claim 1 is patentable over Leary in view of Contant in further view of Berlese.  Because claim 1 is patentable over Leary in view of Contant in further view of Berlese, claims 6 and 7 are patentable over Leary in view of Contant in further view of Berlese and in further view of Kim.

Claims 8 is rejected as being unpatentable over Leary in view of Contant in further view of Berlese as applied to claims 1, 6 and 7, and in further view of Binge et al. (US 2015/0143599).

11

However, as explained above, claims 1, 6 and 7 are patentable over Leary in view of Contant in further view of Berlese.  As claim 8 is dependent from claim 7, and claim 7 is patentable over Leary in view of Contant in further view of Berlese, claim 8 is patentable over  Leary in view of Contant in further view of Berlese and in further view of Binge et al. for at least that reason. This being the case, the rejection of claim 10, which depends from claim 8, as being unpatentable over Leary in view of Contant in further view of Berlese and in further view of Zhao (US 2022/0354198) is also unsustainable for at least that reason.

Claim 13, which depends from claim 1, is rejected as unpatentable over Leary in view of Contant in further view of Berlese and in further view of Brown et al. (US 9,839,831). As explained above, claim 1 is patentable over Leary in view of Contant in further view of Berlese. Because claim 1 is patentable over Leary in view of Contant in further view of Berlese and claim 13 depends from claim 1, claim 13 is patentable over Leary in view of Contant in further view of Berlese and in further view of Brown et al. for at least that reason.

Claim 14, which depends from claim 1, is rejected as unpatentable over Leary in view of Contant in further view of Berlese and in further view of Safford (US 2019/0357612). As explained above, claim 1 is patentable over Leary in view of Contant in further view of Berlese. Because claim 1 is patentable over Leary in view of Contant in further view of Berlese and claim 14 depends from claim 1, claim 13 is patentable over Leary in view of Contant in further view of Berlese and in further view of Safford for at least that reason.

### *Allowable Subject Matter*

The Examiner indicated that claims 3 and 5 would be allowable if rewritten to overcome the rejections under 35 U.S.C. 112(b) set forth in the Office Action. Since claim 3 depends from claim 1, Applicant has amended claim 1 to include the additional limitation recited in claim 3, which should have the same effect as to claim 3. Therefore, claim 3 has been canceled, and claim

5 amended to depend from claim 1, which now contains all the limitations claim 3 would have contained had they not been incorporated into claim 1. Since claim 1 is now allowable, so should be claim 2, and since claim 4 depends from claim 2, it follows that it should also be allowable, as the base claim 1 should be in condition for allowance.

Regarding claims 18-20, the Examiner's suggestions have all been incorporated and those claims should therefore be allowed.

*    *    *

In light of the foregoing amendments and argument, Applicants assert that all of the pending claims are now in condition for allowance.

Respectfully submitted,

Steven Scott Lloyd
Reg. No. 56,650
(410) 576-4249
Attorney for Applicant
Date:  June 24, 2024

13