# EXHIBIT 10

UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 16/241,454 | 01/07/2019 | Anthony Abdelmalek | 54322.139174.CON | 9309 |

| | | | | |
|---|---|---|---|---|
| 155571 | 7590 | 09/04/2020 | | EXAMINER |
| Gordon Feinblatt LLC | | | | MORAN, KATHERINE M |
| 233 E Redwood St | | | | |
| Baltimore, MD 21202 | | | | |

| ART UNIT | PAPER NUMBER |
|---|---|
| 3732 | |

| NOTIFICATION DATE | DELIVERY MODE |
|---|---|
| 09/04/2020 | ELECTRONIC |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

Notice of the Office communication was sent electronically on above-indicated "Notification Date" to the following e-mail address(es):

eofficeaction@appcoll.com
usptopatents@gfrlaw.com

PTOL-90A (Rev. 04/07)

| **Office Action Summary** | **Application No.** 16/241,454 | **Applicant(s)** Abdelmalek et al. |
|---|---|---|
| | **Examiner** KATHERINE M MORAN | **Art Unit** 3732 / **AIA (FITF) Status** Yes |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address --*

## Period for Reply

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE <u>3</u> MONTHS FROM THE MAILING DATE OF THIS COMMUNICATION.

- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed after SIX (6) MONTHS from the mailing date of this communication.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133).
  Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

## Status

1)☑ Responsive to communication(s) filed on <u>1/7/2019</u>.
  ☐ A declaration(s)/affidavit(s) under **37 CFR 1.130(b)** was/were filed on _____ .
2a)☐ This action is **FINAL.**    2b) ☑ This action is non-final.
3)☐ An election was made by the applicant in response to a restriction requirement set forth during the interview on _____ ; the restriction requirement and election have been incorporated into this action.
4)☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

## Disposition of Claims*

5) ☑ Claim(s) <u>1-21</u> is/are pending in the application.
  5a) Of the above claim(s) _____ is/are withdrawn from consideration.
6) ☐ Claim(s) _____ is/are allowed.
7) ☑ Claim(s) <u>1-21</u> is/are rejected.
8) ☐ Claim(s) _____ is/are objected to.
9) ☐ Claim(s) _____ are subject to restriction and/or election requirement

* If any claims have been determined <u>allowable</u>, you may be eligible to benefit from the **Patent Prosecution Highway** program at a participating intellectual property office for the corresponding application. For more information, please see http://www.uspto.gov/patents/init_events/pph/index.jsp or send an inquiry to **PPHfeedback@uspto.gov.**

## Application Papers

10)☐ The specification is objected to by the Examiner.
11)☐ The drawing(s) filed on _____ is/are: a)☐ accepted or b)☐ objected to by the Examiner.
  Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).
  Replacement drawing sheet(s) including the correction is required if the drawing(s) is objected to. See 37 CFR 1.121(d).

## Priority under 35 U.S.C. § 119

12)☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).
  **Certified copies:**
    a)☐ All    b)☐ Some**    c)☐ None of the:
      1.☐ Certified copies of the priority documents have been received.
      2.☐ Certified copies of the priority documents have been received in Application No. _____ .
      3.☐ Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).

** See the attached detailed Office action for a list of the certified copies not received.

**Attachment(s)**

1) ☑ Notice of References Cited (PTO-892)
2) ☐ Information Disclosure Statement(s) (PTO/SB/08a and/or PTO/SB/08b) Paper No(s)/Mail Date _____ .
3) ☐ Interview Summary (PTO-413) Paper No(s)/Mail Date _____ .
4) ☐ Other: _____ .

Application/Control Number: 16/241,454                                                                 Page 2

Art Unit: 3732

## DETAILED ACTION

### *Notice of Pre-AIA or AIA Status*

The present application, filed on or after March 16, 2013, is being examined under the first inventor to file provisions of the AIA.

Note that there are two claims numbered as "20" and the second occurrence of claim 20 should be corrected.

### Drawings

The drawings were received on 4/1/2019.  These drawings are acceptable for examination purposes.

The drawings are objected to under 37 CFR 1.83(a).  The drawings must show every feature of the invention specified in the claims.  Therefore, the palmar section connected to the dorsal section (panel) formed with a waffle-pattern array of foam protective pads formed as individual islands raised from a zero-elevation surface, the foam protective pads separated from each other by interstitial channels must be shown or the feature(s) canceled from the claim(s).  No new matter should be entered.

Corrected drawing sheets in compliance with 37 CFR 1.121(d) are required in reply to the Office action to avoid abandonment of the application. Any amended replacement drawing sheet should include all of the figures appearing on the immediate prior version of the sheet, even if only one figure is being amended. The figure or figure number of an amended drawing should not be labeled as "amended." If a drawing figure is to be canceled, the appropriate figure must be removed from the replacement sheet, and where necessary, the remaining figures must be renumbered and appropriate changes made to the brief description of the several views of the drawings for consistency. Additional replacement sheets may be necessary to show the renumbering of the remaining figures. Each drawing sheet submitted after the filing date of an application must be labeled in the top margin as either

Application/Control Number: 16/241,454                                                      Page 3
Art Unit: 3732

"Replacement Sheet" or "New Sheet" pursuant to 37 CFR 1.121(d). If the changes are not accepted by

the examiner, the applicant will be notified and informed of any required corrective action in the next

Office action. The objection to the drawings will not be held in abeyance.

## Specification

The specification is objected to as failing to provide proper antecedent basis for the claimed

subject matter.  See 37 CFR 1.75(d)(1) and MPEP § 608.01(o).  Correction of the following is required:

Claim 16 recites at least one of the foam protective pads has a curved face.

## 35 USC 112

The following is a quotation of 35 U.S.C. 112(b):
(b)  CONCLUSION.—The specification shall conclude with one or more claims particularly pointing out
and distinctly claiming the subject matter which the inventor or a joint inventor regards as the
invention.

Claims 1-16 are rejected under 35 U.S.C. 112(b) as failing to set forth the subject matter which

the inventor or a joint inventor, or for applications subject to pre-AIA 35 U.S.C. 112, the applicant

regards as the invention. Claim 1 lacks antecedent for "the **discrete** foam protective pads" and "the

dorsal section".

## 35 USC 102

In the event the determination of the status of the application as subject to AIA 35 U.S.C. 102

and 103 (or as subject to pre-AIA 35 U.S.C. 102 and 103) is incorrect, any correction of the statutory

basis for the rejection will not be considered a new ground of rejection if the prior art relied upon, and

the rationale supporting the rejection, would be the same under either status.

The following is a quotation of the appropriate paragraphs of 35 U.S.C. 102 that form the basis

for the rejections under this section made in this Office action:

A person shall be entitled to a patent unless –

Application/Control Number: 16/241,454                                                    Page 4
Art Unit: 3732

(a)(1) the claimed invention was patented, described in a printed publication, or in public use, on sale, or otherwise available to the public before the effective filing date of the claimed invention.

Claims 1-4, 7, 11, 12, and 16 are rejected under 35 U.S.C. 102a(1) as being anticipated by Contant et al. (Contant, U.S. 2015/0047087). Contant discloses the invention as claimed. Contant teaches a protective sports glove 100 comprising a unitary dorsal panel 122 formed with a waffle-pattern array of foam protective pads 140 formed as individual islands raised from a zero-elevation surface, the foam protective pads 140 being separated from each other by interstitial channels having a width within a range of from 1-4 mm and approximately 2 mm (par.57) between the discrete foam protective pads, and a palmar section 120 connected to the dorsal section. The unitary dorsal panel 122 is formed with a border flange (outer portion including exterior surface 144) surrounding the waffle-pattern of foam protective pads 140. The border flange surrounding the waffle-pattern array of foam protective pads is substantially contiguous in that the flange and pads are part of the unitary dorsal panel. The waffle-pattern array of foam protective pads 140 includes quadrilateral shapes as shown in Figure 12.  A lower wrist/forearm portion 113 extends below the unitary dorsal panel and is configured to encircle a user's forearm below the wrist. At least one of the foam protective pads has a curved face in that par. 58 teaches the padding elements 140 may be slightly curved in order to wrap around the player's hand and it is noted that the claim doesn't provide context as to a particular surface that is considered as the "face".

Claims 17, 18, and 20 (first occurrence) are rejected under 35 U.S.C. 102a(1) as being anticipated by Fisher '305. Fisher discloses the invention as claimed. Fisher teaches a protective sports glove (Fig.3) comprising a unitary dorsal panel 10 formed with a waffle-pattern array of foam protective pads formed as individual islands raised from a zero-elevation surface wherein two or more of the foam protective pads are separated from each other by an interstitial channel 20,22, a main section configured to correspond to the back of a wearer's hand and five finger sections each protruding from the main section and a substantially contiguous border flange surrounding the entire unitary dorsal panel (see

Application/Control Number: 16/241,454                                                    Page 5

Art Unit: 3732

flange portion surrounding the entire panel 10 in Fig.1). The foam protective pads are positioned on

both the main section and five finger sections.  The border flange along adjacent finger sections is

configured to avoid interference in that the flange doesn't extend beyond the dorsal fabric panel as

shown in Figure 3.

**35 USC 103**

The following is a quotation of 35 U.S.C. 103 which forms the basis for all obviousness rejections

set forth in this Office action:

> A patent for a claimed invention may not be obtained, notwithstanding that the claimed invention is
> not identically disclosed as set forth in section 102, if the differences between the claimed invention
> and the prior art are such that the claimed invention as a whole would have been obvious before the
> effective filing date of the claimed invention to a person having ordinary skill in the art to which the
> claimed invention pertains. Patentability shall not be negated by the manner in which the invention
> was made.

This application currently names joint inventors. In considering patentability of the claims the

examiner presumes that the subject matter of the various claims was commonly owned as of the

effective filing date of the claimed invention(s) absent any evidence to the contrary.  Applicant is advised

of the obligation under 37 CFR 1.56 to point out the inventor and effective filing dates of each claim that

was not commonly owned as of the effective filing date of the later invention in order for the examiner

to consider the applicability of 35 U.S.C. 102(b)(2)(C) for any potential 35 U.S.C. 102(a)(2) prior art

against the later invention.

Claims 1-4, 7, and 8 are rejected under 35 U.S.C. 103 as being unpatentable over Fisher (U.S.

2014/0137305) in view of Contant '087. Fisher discloses the invention substantially as claimed. Fisher

teaches a protective sports glove 30 comprising a unitary dorsal panel 10 formed with a waffle-pattern

array of foam protective pads (see waffle-pattern array of foam protective pads in Figs.1 and 3) formed

as individual islands raised from a zero-elevation surface (par.15 discloses the method of forming the

pads using molding techniques), two or more of the foam protective pads are separated from each

other by interstitial channels 20,22. The dorsal panel is formed with a main section configured to

Application/Control Number: 16/241,454                                                                 Page 6
Art Unit: 3732

correspond to the back of a wearer's hand and five finger sections each protrude from the main section

as in Figure 1. The annotated drawing shows the waffle-pattern array of foam protective pads including

quadrilateral and crescent shapes.  However, Fisher doesn't teach the channels have a width within a

range of from 1-4 mm (par.57) or have a width of approximately 2 mm between the discrete foam

protective pads, and a palmar section 120 connected to the dorsal section. Contant teaches a glove 100

with a dorsal panel 122 formed with a waffle-pattern array of foam protective pads 140 formed as

individual islands raised from a zero-elevation surface and the foam protective pads separated from

each other by interstitial channels having a width within a range of from 1-4 mm between the discrete

foam protective pads (including a value of approximately 2 mm).

Application/Control Number: 16/241,454                                                                 Page 7
Art Unit: 3732



Fig. 3

Claims 5, 6, and 10 are rejected under 35 U.S.C. 103 as being unpatentable over Fisher '305 in

view of Contant '087 as applied to claim 1 above, and further in view of Leary (U.S. 2016/0325173). Note

that the limitations of claim 5 (within a range of 2-8mm) have an effective filing date of 1/7/2019.  Fisher

Application/Control Number: 16/241,454                                                                    Page 8
Art Unit: 3732

discloses the invention substantially as claimed. However, Fisher doesn't teach the border flange surrounding the waffle-pattern array of foam protective pads has a width within a range of 2-8 mm or within a range of 5-6 mm. Leary teaches a glove with a waffle-pattern array of foam protective pads with a border flange surrounding the array of pads, the flange having a width of approximately 8 mm in width but may be wider or narrower as needed to achieve the desired results in that the flanges are provided as a location for stitching or to otherwise join the molded components 12 to each other and/or to other non-molded components 40 (par.50).  For claim 6, Leary teaches the general conditions of the claimed range values as approximately 8 mm. in width, this value includes values just less than 8mm. Using this teaching of the approximately 8 mm, as well as Leary's teaching that the flange width may be wider or narrower than 8 mm in width as needed to achieve desired results, one of ordinary skill could have arrived at the 5-6 mm range to form a flange with a narrower width such that the flange is more easily joined to the dorsal fabric/palmar fabric and requires less trimming. Therefore, it would have been obvious to modify Fisher's flange to form with a width within a range of 2-8 mm, or within a range of 5-6 mm in that Leary teaches a flange of approximately 8 mm and the flange may be wider or narrower than 8 mm as needed to achieve desired results, the range of 5-6 mm considered as obvious to one of ordinary skill in that this range would not provide unexpected results and would still allow for the flange to function as a location for stitching the molded components/pads to a dorsal or palm panel of the glove.   For claim 10, Fisher doesn't teach the palmar section is stitched to the border flange surrounding the waffle-pattern array of foam protective pads. Fisher teaches the glove may take on different forms including as a cut and sewn glove, this glove is known in the art for having a back section and palm section in individual pieces and then sewn together. In the cut and sewn configuration, the palmar section could be stitched to the border flange and the dorsal panel/section in one manufacturing step such that the back, palm and border flange/pad array are aligned as desired and form a unitary glove. This configuration is considered as an alternative assembly for the glove's structure with the

Application/Control Number: 16/241,454                                                    Page 9
Art Unit: 3732

border flange positioned such that padded portion, palm, and back may be attached in one sewing step.

It would have been obvious to one of ordinary skill before the effective filing date of the invention to

stitch the palmar section to the border flange as part of a sewing assembly step that aligns the padded

portion with the palm and back.

Claim 9 is rejected under 35 U.S.C. 103 as being unpatentable over Fisher '305 in view of

Contant '087 as applied to claim 1 above, and further in view of Shamis et al. (U.S. 2008/0263738).

Fisher discloses the invention substantially as claimed but doesn't teach the dorsal panel is fused to a

layer of mesh scrim material. Shamis teaches a glove 20 with foam cushions 40 attached to a scrim

section 52 attached to the outer dorsal surface of the dorsal panel 21. Shamis teaches the scrim section

52 is formed of heat insulating, hydrophobic or hydrophilic material to wick away moisture from the

shell layer. Therefore, it would have been obvious to one of ordinary skill before the effective filing date

of the invention to modify Fisher to fuse a layer of mesh scrim material to the dorsal panel in that

Shamis teaches this layer provides a hydrophobic or hydrophilic property to the dorsal panel.

Claim 13 is rejected under 35 U.S.C. 103 as being unpatentable over Contant '087 in view of

Gibby (U.S. 2012/0159681). Contant discloses the invention substantially as claimed but doesn't teach

the lower wrist/forearm portion includes an attachment strap configured to secure the lower

wrist/forearm portion around the user's forearm below the wrist. Gibby teaches a glove with a padded

dorsal portion and an attachment strap 170,180 configured to secure the lower wrist/forearm portion

around the user's forearm below the wrist in order to secure the lower wrist/forearm portion to the

wearer's wrist and also allow adjustment of the wrist/forearm portion. Therefore, it would have been

obvious to modify Contant's glove to provide the attachment strap at the lower wrist/forearm portion in

that Gibby teaches this structure will securely retain the lower wrist/forearm portion around the

wearer's arm/wrist.

Application/Control Number: 16/241,454                                                    Page 10
Art Unit: 3732

Claim 14 is rejected under 35 U.S.C. 103 as being unpatentable over Contant '087 in view of Yamamoto (U.S. 4,768,234). Contant discloses the invention substantially as claimed but doesn't teach the dorsal panel is comprised of ethylene-vinyl acetate (EVA) foam. Yamamoto teaches a glove with ethyl vinyl acetate foam pads 1 on a dorsal side. The EVA pads are disclosed as a semi-hard synthetic resin has moderate hardness and moderate softness to absorb impact (col.6, lines 7). Therefore, it would have been obvious to one of ordinary skill before the effective filing date to modify Contant's foam pads to form from EVA foam in that Yamamoto teaches EVA foam absorbs impact to a wearer's dorsal surface of the hand.

Claim 15 is rejected under 35 U.S.C. 103 as being unpatentable over Contant '087 in view of Brown et al. (U.S 2014/0143926). Contant discloses the invention substantially as claimed. However, Contant doesn't teach two adjacent foam protective pads of the foam protective pads have trapezoidal cross sections. Brown teaches a glove with a dorsal portion having two adjacent foam protective pads 150,150' having trapezoidal cross sections. Contant's paragraph 59 discloses that the padding elements 140 may be cut and shaped to accommodate requirements of a specific glove and may have a variety of designs and sizes. A pad with a trapezoidal cross section can protect and overlay particular portions of a wearer's dorsal hand portion to provide protection. Therefore, it would have been obvious to modify Contant's two adjacent foam pads to have trapezoidal cross sections in that these pads are expected to overlay a particular portion of the wearer's hand to provide impact protection.

Claim 19 is rejected under 35 U.S.C. 103 as being unpatentable over Fisher '305. Fisher discloses the invention substantially as claimed. However, Fisher doesn't teach a palmar section stitched to the unitary dorsal panel along at least a portion of the border flange surrounding the five finger sections. Fisher teaches the glove may take on different forms including as a cut and sewn glove, this glove is known in the art for having a back section and palm section in individual pieces and then sewn together. In the cut and sewn configuration, the palmar section could be stitched to the border flange and the

Application/Control Number: 16/241,454                                                    Page 11

Art Unit: 3732

dorsal panel/section in one manufacturing step such that the back, palm and border flange/pad array are aligned as desired and form a unitary glove. This configuration is considered as an alternative assembly for the glove's structure with the border flange positioned such that padded portion, palm, and back may be attached in one sewing step. It would have been obvious to one of ordinary skill before the effective filing date of the invention to stitch the palmar section to the border flange as part of a sewing assembly step that aligns the padded portion with the palm and back.

Claims 20 (second occurrence) and 21 are rejected under 35 U.S.C. 103 as being unpatentable over Fisher '305 in view of Contant '087, as applied to claim 17 above, and further in view of Berlese (U.S. 4,570,269). Fisher discloses the invention substantially as claimed but doesn't teach the border flange along a portion of the five finger sections comprises one or more slits for added flexibility or a top surface of the border flange is sloped relative to the zero-elevation surface. Berlese teaches a border flange of a dorsal pad 4 along a portion of the five finger sections comprises one or more slits 26 for added flexibility (col.4, lines 5-8). The border flange includes a groove 30 formed around the periphery of the dorsal pad 4 such that a top surface of the border flange is sloped relative to the zero-elevation surface. Note that there is a slope as the zero-elevation surface transitions to the groove 30. Therefore, it would have been obvious to modify Fisher to provide the one or more slits along a portion of the five finger sections of the border flange in that Berlese teaches this structure is known in the art for added flexibility of the fingers. It also would have been obvious to modify the top surface of the border flange to be sloped relative to the zero-elevation surface in that this structure provides the groove 30 to serve as a stitching guide.

### *Conclusion*

Any inquiry concerning this communication or earlier communications should be directed to Primary Examiner Katherine Moran at (571) 272-4990 (phone) and/or (571) 273-4990 (fax). Please note that internet communication (i.e. email) requires submission of an Authorization for Internet

Application/Control Number: 16/241,454                                                               Page 12
Art Unit: 3732

Communications form (PTO/SB/439).  The examiner can be reached on Monday-Thursday from 9:00 am

to 6:00 pm, and alternating Fridays.

If attempts to reach the examiner by telephone are unsuccessful, the examiner's supervisor, Khoa

Huynh, may be reached at (571) 272-4888. The official and after final fax number for the organization

where this application is assigned is (571) 273-8300. General information regarding this application and

questions directed to matters of form and procedures may be directed to the PTO Contact

Center/Inventors Assistance Center at (800) 786-9199/571-272-1000. Information regarding the status

of an application may be obtained from the Patent Application Information Retrieval (PAIR) system.

Status information for published applications may be obtained from either Private PAIR or Public PAIR.

Status information for unpublished applications is available through Private PAIR only. For questions on

access to the Private PAIR system, contact the Electronic Business Center (EBC) at 866-217-9197 (toll-

free).


          /KATHERINE M MORAN/
          Primary Examiner, Art Unit 3732