# EXHIBIT 12

# UNITED STATES PATENT AND TRADEMARK OFFICE

**UNITED STATES DEPARTMENT OF COMMERCE**
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 16/241,454 | 01/07/2019 | Anthony Abdelmalek | 54322.139174.CON | 9309 |

| 155571          7590          05/04/2021 |
|---|
| Gordon Feinblatt LLC |
| 233 E Redwood St |
| Baltimore, MD 21202 |

| EXAMINER |
|---|
| MORAN, KATHERINE M |

| ART UNIT | PAPER NUMBER |
|---|---|
| 3732 | |

| NOTIFICATION DATE | DELIVERY MODE |
|---|---|
| 05/04/2021 | ELECTRONIC |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

Notice of the Office communication was sent electronically on above-indicated "Notification Date" to the following e-mail address(es):

eofficeaction@appcoll.com
usptopatents@gfrlaw.com

PTOL-90A (Rev. 04/07)

| *Office Action Summary* | **Application No.**<br>16/241,454 | **Applicant(s)**<br>Abdelmalek et al. | |
|---|---|---|---|
| | **Examiner**<br>KATHERINE M MORAN | **Art Unit**<br>3732 | **AIA (FITF) Status**<br>Yes |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address --*

**Period for Reply**

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE <u>3</u> MONTHS FROM THE MAILING DATE OF THIS COMMUNICATION.
- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed after SIX (6) MONTHS from the mailing date of this communication.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133).
  Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

**Status**

1) ☑ Responsive to communication(s) filed on <u>1/4/2021</u>.
  ☐ A declaration(s)/affidavit(s) under **37 CFR 1.130(b)** was/were filed on _____.
2a) ☐ This action is **FINAL.**    2b) ☑ This action is non-final.
3) ☐ An election was made by the applicant in response to a restriction requirement set forth during the interview on _____; the restriction requirement and election have been incorporated into this action.
4) ☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

**Disposition of Claims***

5) ☑ Claim(s) <u>1-22</u> is/are pending in the application.
  5a) Of the above claim(s) _____ is/are withdrawn from consideration.
6) ☐ Claim(s) _____ is/are allowed.
7) ☑ Claim(s) <u>1-22</u> is/are rejected.
8) ☐ Claim(s) _____ is/are objected to.
9) ☐ Claim(s) _____ are subject to restriction and/or election requirement

* If any claims have been determined <u>allowable</u>, you may be eligible to benefit from the **Patent Prosecution Highway** program at a participating intellectual property office for the corresponding application. For more information, please see http://www.uspto.gov/patents/init_events/pph/index.jsp or send an inquiry to **PPHfeedback@uspto.gov.**

**Application Papers**

10) ☐ The specification is objected to by the Examiner.
11) ☑ The drawing(s) filed on <u>1/22/15</u> is/are: a) ☐ accepted or b) ☑ objected to by the Examiner.
  Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).
  Replacement drawing sheet(s) including the correction is required if the drawing(s) is objected to. See 37 CFR 1.121(d).

**Priority under 35 U.S.C. § 119**

12) ☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).
  **Certified copies:**
    a) ☐ All    b) ☐ Some**    c) ☐ None of the:
      1. ☐ Certified copies of the priority documents have been received.
      2. ☐ Certified copies of the priority documents have been received in Application No. _____.
      3. ☐ Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).
** See the attached detailed Office action for a list of the certified copies not received.

**Attachment(s)**

| 1) ☑ Notice of References Cited (PTO-892) | 3) ☐ Interview Summary (PTO-413) |
|---|---|
| | Paper No(s)/Mail Date _____. |
| 2) ☐ Information Disclosure Statement(s) (PTO/SB/08a and/or PTO/SB/08b)<br>  Paper No(s)/Mail Date _____. | 4) ☐ Other: _____. |

U.S. Patent and Trademark Office

PTOL-326 (Rev. 11-13)          Office Action Summary          Part of Paper No./Mail Date 20210405

Application/Control Number: 16/241,454                                                          Page 2

Art Unit: 3732

## DETAILED ACTION

### *Notice of Pre-AIA or AIA Status*

The present application, filed on or after March 16, 2013, is being examined under the first

inventor to file provisions of the AIA.

### *Response to Amendment*

Applicant's response of 1/4/2021 has been received. Claims 1, 5, and 15-17 are amended and

claims 1-22 are pending.

Applicant states that this application is a continuation or divisional application of the prior-filed

application. A continuation or divisional application cannot include new matter. Applicant is required to

delete the benefit claim or change the relationship (continuation or divisional application) to

continuation-in-part because this application contains the following matter not disclosed in the prior-

filed application:

**Specification paragraphs:** [0008] unitary dorsal panel having a **waffle-pattern** array of foam

protective pads formed as individual islands raised from a substantially zero-elevation surface, (also

includes all paragraphs referencing "waffle-pattern", [0009] unitary dorsal panel having a waffle-pattern

array of foam protective pads formed as individual islands raised from a substantially zero-elevation

surface, a substantially contiguous border **flange** surrounding the entire unitary dorsal panel, [00022]

**substantially** zero-elevation interstitial spaces, the array may be arranged in a **waffle-pattern**, [00028]

protective pads 54..or fused to the substantially zero-elevation surface 52, [00040] the border **flange**

surrounding dorsal panel can be within a range of from 2-8mm across, and most preferably a 5-6 mm

margin, (portion of paragraph 00040 starting with "Palmar sections, such as palmar section 192 can be

fused, welded, stitched, molded or otherwise connected to the border flange 166.........and the latter is

stitched thereto around at least a portion of all four of the finger receiving portions 27,28,29 and thumb

30").

Application/Control Number: 16/241,454                                                          Page 3
Art Unit: 3732

### Double Patenting

The nonstatutory double patenting rejection is based on a judicially created doctrine grounded in public policy (a policy reflected in the statute) so as to prevent the unjustified or improper timewise extension of the "right to exclude" granted by a patent and to prevent possible harassment by multiple assignees. A nonstatutory double patenting rejection is appropriate where the conflicting claims are not identical, but at least one examined application claim is not patentably distinct from the reference claim(s) because the examined application claim is either anticipated by, or would have been obvious over, the reference claim(s). See, e.g., *In re Berg*, 140 F.3d 1428, 46 USPQ2d 1226 (Fed. Cir. 1998); *In re Goodman*, 11 F.3d 1046, 29 USPQ2d 2010 (Fed. Cir. 1993); *In re Longi*, 759 F.2d 887, 225 USPQ 645 (Fed. Cir. 1985); *In re Van Ornum*, 686 F.2d 937, 214 USPQ 761 (CCPA 1982); *In re Vogel*, 422 F.2d 438, 164 USPQ 619 (CCPA 1970); *In re Thorington*, 418 F.2d 528, 163 USPQ 644 (CCPA 1969).

A timely filed terminal disclaimer in compliance with 37 CFR 1.321(c) or 1.321(d) may be used to overcome an actual or provisional rejection based on nonstatutory double patenting provided the reference application or patent either is shown to be commonly owned with the examined application, or claims an invention made as a result of activities undertaken within the scope of a joint research agreement. See MPEP § 717.02 for applications subject to examination under the first inventor to file provisions of the AIA as explained in MPEP § 2159. See MPEP § 2146 *et seq.* for applications not subject to examination under the first inventor to file provisions of the AIA. A terminal disclaimer must be signed in compliance with 37 CFR 1.321(b).

The USPTO Internet website contains terminal disclaimer forms which may be used. Please visit www.uspto.gov/patent/patents-forms. The filing date of the application in which the form is filed determines what form (e.g., PTO/SB/25, PTO/SB/26, PTO/AIA/25, or PTO/AIA/26) should be used. A web-based eTerminal Disclaimer may be filled out completely online using web-screens. An eTerminal Disclaimer that meets all requirements is auto-processed and approved immediately upon submission.

Application/Control Number: 16/241,454                                                    Page 4
Art Unit: 3732

For more information about eTerminal Disclaimers, refer to

www.uspto.gov/patents/process/file/efs/guidance/eTD-info-I.jsp.

Claims 1, 3-6, and 14-16 are rejected on the ground of nonstatutory double patenting as being

unpatentable over claims 1, 4, and 6-9 of U.S. Patent No. 10,201,744 in view of Bulan et al. (U.S.

2014/0033392). Although the claims at issue are not identical, they are not patentably distinct from

each other because the scope of claims 1, 3-6, and 14-16 is encompassed by claims 1, 4, and 6-9 of '744

ivo Bulan. For claim 1 of the present application, the dorsal panel of '744 is considered as unitary in that

the dorsal panel is a formed panel or unit and the foam protective pads of '744 are considered as

equivalent to a waffle-pattern array of pads in that claim 1 of '744 recites raised foam cushions raised

from the zero-elevation surface and respective cushions are separated from each other by interstitial

channels. For claim 15, the '744 reference claim 7 discloses at least two carpometacarpal shock-

absorbing cushions have trapezoidal cross sections and this is considered equivalent to the "trapezoidal

side-cross sections". For claim 16, an unlevel face is interpreted as equivalent to an angled or curved

upper surface as in claims 8 and 9 of '744. The '744 reference doesn't teach the unitary dorsal panel

stitched to the palmar section.  Bulan teaches that it is known to form a glove 10 having a palmar

section 18 stitched to a dorsal panel 16 (par.0015) and this glove construction is known in the art and

allows for use of different materials for the dorsal and palmar sections if desired. Therefore, it would

have been obvious to modify the '744 reference such that the palmar section is stitched to the unitary

dorsal panel as an obvious glove construction allowing for different materials to be used for the palmar

section and dorsal panel.

Claim 2 is rejected on the ground of nonstatutory double patenting as being unpatentable over

claim 1 of '744 in view of Bulan '392 and Contant '087. Although the claims at issue are not identical,

they are not patentably distinct from each other because the scope of claim 2 is encompassed by claim 1

of '744 ivo Bulan and Contant. The '744 reference doesn't teach the interstitial channels having a width

Application/Control Number: 16/241,454                                                    Page 5
Art Unit: 3732

of approximately 2mm. Contant teaches the interstitial channels S having a width of approximately 2

mm. (disclosed in par.57 as 2 mm.) between foam protective pads 140 to allow for flexion of the

wearer's hand and between respective foam pads. Therefore, it would have been obvious to modify the

'744 reference to provide the interstitial channels having a width of approximately 2 mm in that

channels having a width of approximately 2 mm are expected to allow for flexion of the wearer's hand

and movement between respective pads as taught by Contant.

Claim 7 is rejected on the ground of nonstatutory double patenting as being unpatentable over

claim 1 of '744 in view of Bulan '302 and Fisher '305. Although the claims at issue are not identical, they

are not patentably distinct from each other because the scope of claim 7 is encompassed by claim 1 of

'744 ivo Bulan and Contant, except for a teaching of the waffle-pattern array of foam protective pads

includes quadrilateral shapes. Fisher's glove 30 includes a waffle-pattern array 10 of foam protective

pads including quadrilateral shapes as shown in Figure 3 (see at least those pads positioned at central

dorsal portion).  Therefore, it would have been obvious to modify '744 such that the waffle-pattern

array of foam pads includes quadrilateral shapes in that Fisher teaches this shape is suitable for

protecting a back of a wearer's hand.

Claim 8 is rejected on the ground of nonstatutory double patenting as being unpatentable over

claim 1 of '744 in view of Bulan '302 and Hayden (U.S. 2005/0251893). Although the claims at issue are

not identical, they are not patentably distinct from each other because the scope of claim 8 is

encompassed by claim 1 of '744 ivo Bulan and Hayden. The '744 reference doesn't teach the waffle-

pattern array of foam protective pads includes crescent shapes. Hayden teaches a glove with dorsal

protective pads 112 including crescent shapes. Hayden teaches the crescent shaped pads aligned below

the middle and index fingers of the glove provide a desired flexing property of the wearer's and glove's

fingers.  Therefore, it would have been obvious to modify '744 such that the waffle-pattern array of

Application/Control Number: 16/241,454                                                        Page 6

Art Unit: 3732

foam pads includes crescent shapes in that Hayden teaches this shape is suitable as part of a padded

array for protecting the back of a wearer's hand and also allows for desired flexing of the fingers.

Claim 9 is rejected on the ground of nonstatutory double patenting as being unpatentable over

claim 1 of '744 in view of Bulan '302 and Brown (U.S. 9,839,831). Although the claims at issue are not

identical, they are not patentably distinct from each other because the scope of claim 9 is encompassed

by claim 1 of '744 ivo Bulan and Brown. The '744 reference teaches the molded foam pads of dorsal

panel are fused to a layer of scrim material, but does not disclose the scrim as mesh scrim material.

Brown teaches glove 2 including dorsal pads 138 fused to a layer of mesh scrim material (disclosed as

woven or knit scrim/liner material) with applicant's disclosure reciting mesh scrim as a woven material

with mesh openings between the warp and weft threads. Therefore, Brown's woven liner/scrim material

is considered equivalent to the mesh scrim material and it would have been obvious to modify '744 to

provide the mesh scrim as a suitable lining layer securing the pads to the glove structure.

Claim 10 is rejected on the ground of nonstatutory double patenting as being unpatentable

over claims 1 and 5 of '744 in view of Bulan and Leary '173. The '744 reference discloses the

substantially contiguous border framing the dorsal panel/waffle-pattern array of foam protective pads

but doesn't teach the palmar section is stitched to the border flange surrounding the waffle-pattern

array of foam protective pads. Leary teaches a glove 10 with a border flange 38 surrounding a waffle

pattern array of pads of main section/hand portion 24, the flange 38 is provided as a location for

stitching to join the molded component 12 of the hand portion to other non-molded components

(par.50). Leary's flange 38 is stitched to gussets 42 and the gussets are stitched to the palmar section 44.

The glove of the '744 reference doesn't include gussets; however, based upon Leary's teaching of

stitching the flange to non-molded components, it would have been obvious to one of ordinary skill to

stitch the palmar section to the dorsal panel at flange 38 in that Leary teaches that the flange serves as a

Application/Control Number: 16/241,454                                                    Page 7
Art Unit: 3732

structural element peripheral to the protective pads, the flange joined to the molded dorsal panel of the glove to a palmar section without interfering with the pad structures.

Claims 11 and 12 are rejected on the ground of nonstatutory double patenting as being unpatentable over claim 1 of '744 in view of Bulan and Contant '087. The '744 reference doesn't teach a lower wrist/forearm portion extending below the unitary dorsal panel and the lower wrist/forearm portion is configured to encircle a user's forearm below the wrist. Contant teaches a glove 100 with a lower wrist/forearm portion 113 extending below the unitary dorsal panel 122 and configured to encircle a user's forearm below the wrist. It would have been obvious to modify the '744 reference to include the lower wrist/forearm portion configured to encircle a user's forearm below the wrist as taught by Contant's glove structure in order to protect the wrist and forearm area of the wearer.

Claim 13 is rejected on the ground of nonstatutory double patenting as being unpatentable over claim 1 of '744 in view of Bulan and Contant and Gibby '681. The '744 reference doesn't teach the lower wrist/forearm portion includes an attachment strap configured to secure the lower wrist/forearm portion around the user's forearm below the wrist. Gibby teaches a glove with a padded dorsal portion and an attachment strap 170,180 configured to secure the lower wrist/forearm portion around the user's forearm below the wrist in order to secure the lower wrist/forearm portion to the wearer's wrist and also allow adjustment of the wrist/forearm portion. Therefore, it would have been obvious to modify the '744 reference to provide the attachment strap at the lower wrist/forearm portion in that Gibby teaches this strap structure will securely and adjustably retain the lower wrist/forearm portion around the wearer's arm and wrist.

Claims 17-20 are rejected on the ground of nonstatutory double patenting as being unpatentable over claim 1 of '744 in view of Bulan '392 and Leary '173.  Although the claims at issue are not identical, they are not patentably distinct from each other because the scope of claims 17-20 is encompassed by claims 1, 4, and 6-9 of '744 ivo Bulan and Fisher. For claim 17 of the present

Application/Control Number: 16/241,454                                                          Page 8
Art Unit: 3732

application, the dorsal panel of '744 is considered as unitary in that the dorsal panel is a formed panel or unit and the arrangement of foam protective pads is considered equivalent to a waffle-pattern array of pads in that each pad is raised from the zero-elevation surface and respective pads are separated from each other by interstitial channels. As disclosed above, the '744 reference doesn't teach the unitary dorsal panel stitched to the palmar section.  Bulan teaches that it is known to form a glove 10 having a palmar section 18 stitched to a dorsal panel 16 (par.0015) and this glove construction is known in the art and allows for use of different materials for the dorsal and palmar sections if desired. The '744 reference, claim 1, discloses the substantially contiguous border surrounding the entire dorsal panel inclusive of the main section and waffle-pattern array of foam protective pads but doesn't disclose the flange as also surrounding five finger sections, the five finger sections including foam protective pads positioned thereon. Leary teaches a glove 10 with a border flange 38 surrounding the dorsal panel including a waffle-pattern array of pads of main section/hand portion 24 with five finger sections 30 each protruding from the main section and each finger section having foam pads, and the flange 38 is provided as a location for stitching to join the dorsal panel/molded component 12 to other non-molded components (par.50).  Looking to this teaching of Leary, one of ordinary skill would recognize that providing the flange as surrounding the entire unitary dorsal panel including the main section and the five finger sections would result in the entire periphery of the dorsal panel as securely attached to the palmar section. The modified '744 reference with the border flange along adjacent finger sections is considered as configured to avoid interference in that it is not exposed when the glove is assembled. Therefore, it would have been obvious to modify the '744 reference to provide the dorsal panel with five finger sections and to provide the palmar section stitched to the unitary dorsal panel as an obvious glove construction allowing for different materials to be used for the palmar section and dorsal panel, with the five finger sections protecting and covering the wearer's five fingers.  It also would have been obvious to provide the substantially contiguous border flange surrounding the entire unitary dorsal

Application/Control Number: 16/241,454                                                                Page 9
Art Unit: 3732

panel inclusive of the main section and each of the five finger sections as taught by Leary in order to ensure secure attachment of the entire periphery of the molded panel to the palmar section.

Claims 21 and 22 are rejected on the ground of nonstatutory double patenting as being unpatentable over claim 1 of '744 in view of Bulan '392 and Leary '173 and Berlese '269. Although the claims at issue are not identical, they are not patentably distinct from each other because the scope of claims 17-20 is encompassed by claims 1 of the modified '744 reference. The '744 reference doesn't teach the border flange along a portion of the five finger sections comprises one or more slits for added flexibility or a top surface of the border flange is sloped relative to the zero-elevation surface. Berlese teaches a glove with a border flange of dorsal pad 4 along a portion of the five finger sections comprising one or more slits 26 for added flexibility (col.4, lines 5-8). The border flange includes groove 30 formed around the periphery of the dorsal pad 4 such that a top surface of the border flange is sloped relative to the zero-elevation surface. Note that there is a slope as the zero-elevation surface transitions to the groove 30. Therefore, it would have been obvious to modify the '744 reference to provide the one or more slits along a portion of the five finger sections of the border flange and to modify the top surface of the border flange such that it is sloped relative to the zero-elevation surface in that the slits are disclosed by Berlese as facilitating bending of the dorsal panel and providing the border flange as sloped relative to the zero-elevation surface in that this provides the groove structure serving as a stitching guide.

### Drawings

A replacement drawing was submitted on 4/1/2019 which included additional details to Figure 6, particularly to a slope 166. This constitutes new matter in that the parent application (14/602915/US 10,201,744) does not include this feature of the border. Note that the originally filed drawings to

Application/Control Number: 16/241,454                                                          Page 10
Art Unit: 3732

Figures 2 and 6 also illustrate new matter in that figure 2 shows 166,168. The replacement drawings of 4/1/2019 are not entered.

The drawings are objected to under 37 CFR 1.83(a). The drawings must show every feature of the invention specified in the claims. Therefore, the unitary dorsal panel stitched to the palmar section (claim 1) and the palmar section stitched to the border flange (claim 10) and the palmar section stitched to the unitary dorsal panel (claim 17) and the palmar section stitched to the unitary dorsal panel along at least a portion of the border flange surrounding the five finger sections (claim 19) must be shown or the feature(s) canceled from the claim(s). No new matter should be entered.

Corrected drawing sheets in compliance with 37 CFR 1.121(d) are required in reply to the Office action to avoid abandonment of the application. Any amended replacement drawing sheet should include all of the figures appearing on the immediate prior version of the sheet, even if only one figure is being amended. The figure or figure number of an amended drawing should not be labeled as "amended." If a drawing figure is to be canceled, the appropriate figure must be removed from the replacement sheet, and where necessary, the remaining figures must be renumbered and appropriate changes made to the brief description of the several views of the drawings for consistency. Additional replacement sheets may be necessary to show the renumbering of the remaining figures. Each drawing sheet submitted after the filing date of an application must be labeled in the top margin as either "Replacement Sheet" or "New Sheet" pursuant to 37 CFR 1.121(d). If the changes are not accepted by the examiner, the applicant will be notified and informed of any required corrective action in the next Office action. The objection to the drawings will not be held in abeyance.

### Claim Rejections - 35 USC § 112

The following is a quotation of the first paragraph of 35 U.S.C. 112(a):

(a) IN GENERAL.—The specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to

Application/Control Number: 16/241,454                                                      Page 11
Art Unit: 3732

> enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to
> make and use the same, and shall set forth the best mode contemplated by the inventor or joint
> inventor of carrying out the invention.

Claims 1-22 are rejected under 35 U.S.C. 112(a) as failing to comply with the written description requirement. The claim(s) contains subject matter which was not described in the specification in such a way as to reasonably convey to one skilled in the relevant art that the inventor or a joint inventor had possession of the claimed invention. Note that a continuation application may not add any new subject matter not previously disclosed in the parent application. Claims 1 and 17 recite the waffle-pattern array of foam protective pads.  Claims 3-6, 10, 17, and 19-21 recite a border flange and various limitations to the border flange. However, the parent application provides support for a substantially contiguous border but doesn't provide support for a "border flange".  Further support for the examiner's interpretation of the border flange as constituting new matter is found in applicant's response to the prior art rejections (remarks of 1/4/2021) where applicant points to a definition of "flange" as a "projecting rim, collar, or ring…formed to give additional strength, stiffness, or supporting area". Claim 8 recites the waffle-pattern array of foam protective pads includes crescent shapes. (Figure 8d isn't considered as a crescent shape, but does have a concave upper surface). Claim 15 is amended to recite two adjacent foam protective pads of the foam protective pads have trapezoidal side-cross sections. Claim 16 recites at least one of said foam pads has an unlevel face. There is no support for this recitation in that the originally filed specification recite the pads may be formed with angled top surfaces/shaped or sculpted surfaces/angled surfaces.  A limitation of an "unlevel face" is more broad than the surface features of the pads originally disclosed by applicant. Claim 17 recites a main section and five finger sections protruding from the main section. Claim 21 recites said border flange…comprises one or more slits for added flexibility and claim 22 recites a top surface of said border flange is sloped relative to said zero-elevation surface.

Application/Control Number: 16/241,454                                                                Page 12
Art Unit: 3732

The following is a quotation of 35 U.S.C. 112(b):

(b) CONCLUSION.—The specification shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the inventor or a joint inventor regards as the invention.

Claims 4-6 and 19 are rejected under 35 U.S.C. 112(b) as being indefinite for failing to particularly point out and distinctly claim the subject matter which the inventor or a joint inventor (or for applications subject to pre-AIA 35 U.S.C. 112, the applicant), regards as the invention. Claims 4-6 lack antecedent basis for "said border flange". Claim 19 is unclear in that it recites "further comprising a palmar section stitched to the unitary dorsal panel..". However, claim 17 previously recites a palmar section and a unitary dorsal panel stitched to the palmar section. A revision for claim 19 is suggested to clarify that "a palmar section" is referring to the palmar section of claim 17 as follows: "said palmar section is stitched to the unitary dorsal panel along at least a portion of said border flange surrounding said five finger sections".

The following is a quotation of 35 U.S.C. 112(d):

(d) REFERENCE IN DEPENDENT FORMS.—Subject to subsection (e), a claim in dependent form shall contain a reference to a claim previously set forth and then specify a further limitation of the subject matter claimed. A claim in dependent form shall be construed to incorporate by reference all the limitations of the claim to which it refers.

Claim 15 is rejected under 35 U.S.C. 112(d) as being of improper dependent form for failing to further limit the subject matter of the claim upon which it depends, or for failing to include all the limitations of the claim upon which it depends. Claim 15 recites two adjacent foam protective pads of said foam protective pads have trapezoidal side-cross sections. Amending claim 15 to add the term "side" doesn't further limit the trapezoidal cross section in that a cross section is defined as a shape obtained when a plane cuts a three dimensional solid. Applicant may cancel the claim(s), amend the claim(s) to place the claim(s) in proper dependent form, rewrite the claim(s) in independent form, or present a sufficient showing that the dependent claim(s) complies with the statutory requirements.

Application/Control Number: 16/241,454                                                  Page 13
Art Unit: 3732

### *Claim Rejections - 35 USC § 103*

In the event the determination of the status of the application as subject to AIA 35 U.S.C. 102 and 103 (or as subject to pre-AIA 35 U.S.C. 102 and 103) is incorrect, any correction of the statutory basis for the rejection will not be considered a new ground of rejection if the prior art relied upon, and the rationale supporting the rejection, would be the same under either status.

The following is a quotation of 35 U.S.C. 103 which forms the basis for all obviousness rejections set forth in this Office action:

> A patent for a claimed invention may not be obtained, notwithstanding that the claimed invention is not identically disclosed as set forth in section 102, if the differences between the claimed invention and the prior art are such that the claimed invention as a whole would have been obvious before the effective filing date of the claimed invention to a person having ordinary skill in the art to which the claimed invention pertains. Patentability shall not be negated by the manner in which the invention was made.

This application currently names joint inventors. In considering patentability of the claims the examiner presumes that the subject matter of the various claims was commonly owned as of the effective filing date of the claimed invention(s) absent any evidence to the contrary.  Applicant is advised of the obligation under 37 CFR 1.56 to point out the inventor and effective filing dates of each claim that was not commonly owned as of the effective filing date of the later invention in order for the examiner to consider the applicability of 35 U.S.C. 102(b)(2)(C) for any potential 35 U.S.C. 102(a)(2) prior art against the later invention.

Claims 1, 2, 11, 12, and 16 are rejected under 35 U.S.C. 103 as being unpatentable over Safford (U.S. 2013/0276199) in view of Tirinen (U.S. 4,484,359) and Contant '087. Safford discloses the invention substantially as claimed. Safford teaches in a protective sports glove 10 having a palmar section 22 configured for covering a wearer's palm and a unitary dorsal panel 20 stitched to the palmar section and including a pad 46 (par.21).  However, Safford doesn't teach the dorsal panel consisting of an integrally-molded member formed with a zero-elevation surface and a waffle-pattern array of foam protective pads each defining an individual island raised from the zero-elevation surface, the foam protective pads

Application/Control Number: 16/241,454                                                    Page 14
Art Unit: 3732

separated from each other by interstitial channels having a width within a range of from 1-4 mm

between the discrete foam protective pads. Safford also doesn't teach a lower wrist/forearm portion

extending below the unitary dorsal panel, and the lower wrist/forearm portion is configured to encircle

a user's forearm below the wrist or at least one of the foam protective pads has an unlevel face. Tirinen

teaches a dorsal panel consisting of an integrally molded member formed with a zero-elevation surface

2 and a waffle-pattern array of cellular plastic or rubber protective pads 3-7 each defining an individual

island raised from the zero-elevation surface, the protective pads separated from each other. Tirinen's

pads appear to be spaced such that they have channels therebetween. However, Tirinen doesn't

explicitly disclose the pads are formed of foam and separated from each other by interstitial channels

having a width within a range of 1-4 mm and approximately 2 mm. Contant teaches foam protective

pads 140 separated from each other by interstitial channels having a width within a range of from 1-4

mm and approximately 2 mm (par.57 discloses 2mm is within the range of 1-4 mm and includes the

approximately 2 mm. value).  Foam is a known pad material and is considered to provide the same

function as the cellular plastic or rubber. Contant teaches the channels or spaces between pads affect

the degree of flexion of the dorsal portion of the glove. Contant's glove includes a lower wrist/forearm

area extending below a dorsal region, the lower wrist/forearm portion is configured to encircle a user's

forearm below the wrist. Contant also teaches at least one of the foam protective pads has an unlevel

face in that par.58 discloses the padding element 140 may be slightly curved in order to wrap around

the player's hand and the claim doesn't provide specific details as to a particular surface considered as

the face.  Therefore, it would have been obvious to substitute Safford's dorsal panel with Tirinen's panel

in that Tirinen teaches the integrally molded member may be efficiently fabricated in a single molding or

casting step and can be readily fastened to a glove portion such that the dorsal side of a wearer's hand is

protected. It also would have been obvious to form the pads from foam and provide interstitial channels

having a width within a range of 1-4 mm/approximately 2 mm. in that Contant teaches foam is a known

Application/Control Number: 16/241,454                                                    Page 15
Art Unit: 3732

padding material, this material expected to provide a protective property to the pad, and the channels

allow for desired flexion between respective pads of the dorsal panel, the desired width values arrived

at through routine experimentation based upon the degree of flexion desired (Contant, par.57).  It also

would have been obvious to modify the glove to include a lower wrist/forearm portion extending below

the unitary dorsal panel in that a lower wrist/forearm portion is taught by Contant as a glove feature

that protects a wearer's lower wrist/forearm. Finally, it would have been obvious to modify Safford's

dorsal panel such that at least one of the foam protective pads has an unlevel face in that Contant

teaches padding that may be slightly curved in order to wrap around the player's hand.

Claims 3-6 and 10 are rejected under 35 U.S.C. 103 as being unpatentable over Safford '199 in

view of Tirinen '359 and Contant '087 as applied to claim 1 above, and further in view of Leary '173.

These limitations receive an effective filing date of 1/7/2019 because the provisional application doesn't

disclose a waffle-pattern array and a substantially contiguous border flange and a substantially

contiguous border flange stitched to the palmar section, in addition to the features of claims 3-6 and 10.

Safford discloses the invention substantially as claimed but doesn't teach the unitary dorsal panel is

formed with a border flange surrounding the waffle-pattern array of foam protective pads, the border

flange being substantially contiguous and having a width of 4-8 mm, or 5-6 mm. Leary teaches a glove 10

with molded panels formed with a border flange 38 (considered as substantially contiguous in that it is

contiguous to the foam protective pads) surrounding the array of pads 12 and the border flange having

a width of approximately 8 mm. (par.50).  Leary teaches the flange is provided as a location for stitching

to join the molded pads with other components 40 of the glove. Locating the stitching at the flange

rather than through the padded portion prevents structural deformation of the pads. Figure 4 illustrates

40 as a palm side of the glove. Leary teaches the general conditions of the claimed range as

approximately 8 mm and the "approximately" term modifying 8mm to include those values just less

than 8 mm. Leary also teaches the flange width may be wider or narrower than 8 mm in width to

achieve desired results. One of ordinary skill could have arrived at the 5-6 mm range through routine experimentation in order to form a flange with a narrower width such that the flange requires less trimming but still functions as a location for stitching to the palmar section of the glove in that the 5-6 mm. limitation doesn't appear critical such as providing unexpected results to the dorsal panel or assembled glove structure. For claim 10, Safford's glove structure is assembled by stitching the palmar section to the dorsal panel. Modification of Safford's dorsal panel with Leary results in a dorsal panel with a border flange, this flange disclosed as a location for stitching to join the molded dorsal panel with other parts of the glove.  Looking to Safford's teaching of stitching a dorsal panel to a palmar section is known in the glove art, and also looking to Leary's teaching of the flange as a stitching location, one of ordinary skill in the art before the effective filing date would have been motivated to modify Safford such that the border flange is stitched to the palmar section, with the flange situated as a joining point for the dorsal panel to the palmar section such that the pad structures are not compromised by the stitching. It would have been obvious to one of ordinary skill before the effective filing date of the invention to modify Safford's dorsal panel to provide the substantially contiguous border flange of 4-8 mm or 5-6 mm, the flange surrounding the waffle-pattern array of foam protective pads in that Leary teaches the flange is formed during the molding process after a cutting step and providing Safford's dorsal panel with a border flange would provide a structure serving as a location for stitching to the palmar section.

Claims 7 and 8 are rejected under 35 U.S.C. 103 as being unpatentable over Safford '199 in view of Tirinen '359 and Contant '087 as applied to claim 1 above, and further in view of Fisher '305. Safford discloses the invention substantially as claimed and disclosed above. Safford's modified dorsal panel includes quadrilateral shapes (see Tirinen pads 6), but doesn't teach crescent shapes. Fisher teaches a dorsal pad panel with pads having crescent shapes as in the annotated drawing of 9/4/2020, including those panels forming lower corner portions of the panel. Applicant's disclosure doesn't provide

Application/Control Number: 16/241,454                                                          Page 17
Art Unit: 3732

criticality for or unexpected results arising from pads with particular shapes and a crescent shape is known in the art as evidenced by Fisher, as a suitable shape for a dorsal panel. Therefore, it would have been obvious to modify Safford to provide the dorsal panel with pads having crescent shapes in that Fisher teaches crescent pad shapes are suitable for protecting a back of a wearer's hand.

Claim 9 is rejected under 35 U.S.C. 103 as being unpatentable over Safford '199 in view of Tirinen '359 and Contant '087 as applied to claim 1 above, and further in view of Brown et al. (U.S. 2014/0143926) and Shamis '738. Safford discloses the invention substantially as claimed but doesn't teach the dorsal panel is fused to a layer of mesh scrim material. Brown teaches that conventional gloves have foam pad segments affixed to one another and to a liner material (known as scrim) such as woven material. Applicant's specification points to a woven material as an example of mesh material. Brown also teaches a glove with pad 138 surrounded by a peripheral flange 144 that provides a frame for stability and allows stitching therethrough, the pad 138 sewn to the underlying scrim layer as in par.37.   Brown doesn't teach the mesh scrim material is fused to the dorsal panel. Shamis teaches a glove 20 with foam cushions 40 attached to a scrim layer 52 attached to the outer dorsal surface of the dorsal panel 21. Paragraph 42 of the present application refers to ultrasonic/sonic welding which appears to be equivalent to the claimed "fused' limitation. Shamis discloses manners of attaching scrim layer 52 to the pads such as in paragraph 68 which discloses various members, layers and/or components of glove 20 can be assembled together using any known attachment means such as adhesive (hot melted adhesives), ultrasonic bonding, thermal bonds, etc.  Based upon this teaching of Shamis that glove layers may be assembled together using various means including ultrasonic bonding, one of ordinary skill could have modified Safford's glove to fuse the dorsal panel to the mesh scrim material via ultrasonic bonding as a process of securely assembling the layers. Fusing the mesh scrim material to the dorsal panel is considered as an obvious assembling process that doesn't require piercing the scrim or dorsal panel. Therefore, it would have been obvious to provide the dorsal panel fused to a

Application/Control Number: 16/241,454                                                    Page 18

Art Unit: 3732

layer of mesh scrim material in that the mesh scrim material is known in the art as a suitable lining material and fusing the mesh scrim material to the dorsal panel is considered as an obvious assembling process for securing glove components.

Claim 13 is rejected under 35 U.S.C. 103 as being unpatentable over Safford '199 in view of Tirinen '359 and Contant '087 as applied to claims 1, 11, and 12 above, and further in view of Gabby '681. Safford discloses the invention substantially as claimed but doesn't teach the lower wrist/forearm portion includes an attachment strap configured to secure the lower wrist/forearm portion around the user's forearm below the wrist. Gabby teaches a glove with a padded dorsal portion and an attachment strap 170,180 configured to secure the lower wrist/forearm portion around the user's forearm below the wrist in order to adjustably secure the lower wrist/forearm portions around the wearer's wrist. Therefore, it would have been obvious to modify Safford's glove to provide an attachment strap at the lower wrist/forearm portion in that Gibby teaches this structure will securely retain the lower wrist/forearm portion around the wearer's arm/wrist.

Claim 14 is rejected under 35 U.S.C. 103 as being unpatentable over Safford '199 in view of Tirinen '359 and Contant '087 as applied to claim 1 above, and further in view of Yamamoto '234. Safford discloses the invention substantially as claimed but doesn't teach the dorsal panel is comprised of EVA foam. Yamamoto teaches a glove with EVA foam pads 1 on a dorsal side. The EVA pads are disclosed as a semi-hard synthetic resin with moderate hardness and moderate softness to absorb impact (col.6, lines 1-7). Therefore, it would have been obvious to modify Safford's dorsal panel such that it is comprised of EVA foam in that Yamamoto teaches that it is known to form padding on a dorsal side of a glove from EVA foam for impact absorption.

Claim 15, as best understood, is rejected under 35 U.S.C. 103 as being unpatentable over Safford in view of Tirinen and Contant as applied to claim 1 above, and further in view of Brown '926. Safford discloses the invention substantially as claimed but doesn't teach two adjacent foam pads of the foam

Application/Control Number: 16/241,454                                                          Page 19
Art Unit: 3732

protective pads have trapezoidal side-cross sections. Contant discloses in par.59 that padding elements

140 may be cut and shaped to accommodate requirements of a specific glove and may have a variety of

designs and sizes.  Brown teaches a glove with two adjacent foam pads 150,150' having trapezoidal

shapes as in Figure 3, these shapes expected to have trapezoidal side-cross sections. Therefore, it would

have been obvious to one of ordinary skill to modify Safford's dorsal panel to form to adjacent pads

having trapezoidal side-cross sections as part of a dorsal pad profile, the pads with the trapezoidal side-

cross sections suitable for an outer region of the pad as taught by Brown.

Claims 17-20 are rejected under 35 U.S.C. 103 as being unpatentable over Safford in view of

Tirinen 'and Contant '087 and Leary '173. Safford discloses the invention substantially as claimed.

Safford teaches in a protective sports glove 10 having a palmar section 22 configured for covering a

wearer's palm, a unitary dorsal panel 20 including a pad 46, the dorsal panel stitched to the palmar

section (par.21). Safford teaches a padded dorsal panel. However, Safford doesn't teach the dorsal panel

consisting of an integrally-molded member formed with a main section having a zero-elevation surface

and a waffle-pattern array of foam protective pads defined as individual islands raised from the zero-

elevation surface, wherein two or more of the foam protective pads are separated from each other by

an interstitial channel, the dorsal panel further comprising five finger sections each protruding from the

main section and a substantially contiguous border flange surrounding the entire dorsal panel inclusive

of the main section and each of the five finger sections., and the border flange along adjacent finger

sections is configured to avoid interference. Tirinen teaches a unitary dorsal panel consisting of an

integrally molded member formed with a main section having a zero-elevation surface 2 and a waffle-

pattern array of cellular plastic or rubber protective pads 5-7 each defined as individual islands raised

from the zero-elevation surface, the protective pads separated from each other. The dorsal panel

further comprises five finger sections 4 each protruding from the main section. Tirinen's pads appear to

be spaced such that two or more of the protective pads are separated from each other by an interstitial

Application/Control Number: 16/241,454                                              Page 20
Art Unit: 3732

channel. However, Tirinen doesn't explicitly disclose the pads are formed of foam and the pads

separated from each other by an interstitial channel. Contant teaches foam protective pads 118,140

with two or more of the foam pads separated from each other by an interstitial channel as in par.57.

Foam is a known pad material and is considered to provide the same protective function as the cellular

plastic or rubber. Contant teaches the channels or spaces between pads affect the degree of flexion of

the dorsal portion of the glove. Leary teaches a glove 10 with molded panels formed with a border

flange 38 (considered as substantially contiguous in that it is contiguous to the foam protective pads)

surrounding the entire dorsal panel inclusive of a main section and each of the five finger sections as in

Figure 11A. Leary teaches the flange is provided as a location for stitching to join the molded pads with

other components 40 of the glove and the border flange along adjacent finger sections is considered as

configured to avoid interference in that the border flange along adjacent finger sections doesn't

interfere with the assembly of the glove. Locating the stitching at the flange rather than through the

padded portion prevents structural deformation of the pads during the assembly process. Therefore, it

would have been obvious to one of ordinary skill before the effective filing date of the invention to

substitute Safford's dorsal panel with Tirinen's panel in that Tirinen teaches the integrally molded

member may be efficiently fabricated in a single molding or casting step and can be readily fastened to a

glove portion such that the dorsal side of a wearer's hand is protected. It also would have been obvious

to form the pads of the main section and five finger sections from foam and provide interstitial channels

in that Contant teaches foam is a known padding material for the main and finger sections, this material

expected to provide a protective property to the pad, and the channels allow for desired flexion

between respective pads of the dorsal panel. Modification of Safford's dorsal panel with Leary results in

a dorsal panel with a border flange, this flange disclosed as a location for stitching to join the molded

dorsal panel with other parts of the glove.  Looking to Safford's teaching of stitching a dorsal panel to a

palmar section as known in the glove art, and also looking to Leary's teaching of the flange as a stitching

Application/Control Number: 16/241,454                                              Page 21
Art Unit: 3732

location, one of ordinary skill in the art would have been motivated to modify Safford such that the border flange is stitched to the palmar section, with the flange situated as a joining point for the dorsal panel finger and main sections to the palmar section such that the pad structures are not compromised by the stitching during assembly of the glove.

Claims 21 and 22 are rejected under 35 U.S.C. 103 as being unpatentable over Safford in view of Tirinen and Contant and Leary as applied to claim 17 above, and further in view of Berlese '269. Safford discloses the invention substantially as claimed. However, Safford doesn't teach the border flange along a portion of the five finger sections comprises one or more slits for added flexibility or a top surface of the border flange is sloped relative to the zero-elevation surface.  Berlese teaches a dorsal pad 4 with a border along a portion of the five finger sections comprising one or more slits 26 for added flexibility (col.4, lines 5-8). The border includes a groove 30 formed around the periphery of the pad 4 such that a top surface of the border is sloped relative to the zero-elevation surface (upper surface of pad 4). Note that there is a slope as the zero-elevation surface transitions to groove 30. Therefore, it would have been obvious to one of ordinary skill before the effective filing date of the invention to modify Safford's dorsal panel to provide the border flange along of a portion of the five finger sections with one or more slits for added flexibility of the pad and it also would have been obvious to modify the top surface of the Safford's border flange to be sloped relative to the zero-elevation surface in that this sloped border flange serves as a transition at edges of the pad and this sloped portion can assist as a visual indicator for the stitching (Berlese, col.4, lines 14-16).

***Response to Arguments***

Applicant's remarks have been considered. In response to the drawing objections, applicant submits that claim 1 has been amended to recite the palmar section in the preamble and therefore a corrected drawing sheet is not necessary. The examiner points to multiple recitations in the pending

Application/Control Number: 16/241,454                                                    Page 22
Art Unit: 3732

claims to a palmar section as stitched to a unitary dorsal panel (claim 1), the palmar section stitched to the border flange (claim 10), the palmar section stitched to the unitary dorsal panel (claim 17) and the palmar section stitched to the unitary dorsal panel along at least a portion of the border flange surrounding the five finger sections (claim 19) such that the palmar section is an essential structural detail set forth in combination with other structural elements of the glove that requires illustration. Remarks which are considered relevant to rejections set forth above are addressed as follows: For the rejection of claim 9, applicant submits that Shamis teaches foam 40 laminated to scrim 52 which is not equivalent to the claimed limitation of "said dorsal panel is fused to a layer of mesh scrim material" and refers to a Merriam Webster dictionary definition of fusing as "to reduce to a liquid or plastic state by heat". A review of applicant's specification to the fused limitation shows paragraphs 31, 42, and 43 disclosing a fusing process for securing the pads 54,154 to scrim fabric and paragraph 31 appears to recite molding/fusing/adhering pads 54,154 to the scrim fabric such that any of these methods of securing may be used.   The step of fusing disclosed in paragraph 42 of the present application refers to ultrasonic/sonic welding which appears to be equivalent to the claimed "fused' limitation. While Shamis does disclose the scrim layer 52 laminated to foam pads as pointed to by applicant, Shamis also discloses other manners of attaching scrim layer 52 to the pads such as in paragraph 68 which discloses various members, layers and/or components of glove 20 can be assembled together using any known attachment means such as adhesive (hot melted adhesives), ultrasonic bonding, thermal bonds, etc. Based upon this teaching of Shamis that glove layers may be assembled together using various means including ultrasonic bonding, one of ordinary skill could have modified Safford's glove to fuse the dorsal panel to the mesh scrim material via ultrasonic bonding as a process of securely assembling the layers. Applicant submits that the limitations of claim 5 receive the benefit of the priority application; however, as noted above, the recitation of "border flange" is considered as new matter.

Application/Control Number: 16/241,454                                                                 Page 23
Art Unit: 3732

For Brown, applicant submits that claim 15 is amended to recite "trapezoidal side-cross sections" rather

than the previously recited "trapezoidal cross sections" and applicant appears to say that this amended

phrase should be interpreted by the examiner as viewed from the side. As set forth in the rejections

above, the amended phrasing doesn't appear to further limit the recitation of "cross-section" and there

is no disclosure of "trapezoidal side-cross sections" in the specification.  In the absence of further detail

as to a "side-cross section" the examiner is interpreting this phrase as a trapezoidal cross-section. For

claims 21 and 22, applicant submits that slits 26 of Berlese are different and spatially separate from the

groove 30 and the slope of claim 22 is part of the slits of claim 21. Applicant's reasoning is not clear and

the examiner submits that the slits 26 are formed in the outer periphery of the dorsal pad, while the

groove 30 is formed around an upper periphery of the pad. It's not clear how the slope of claim 22 is

part of the slits of claim 21 as applicant points out.


*Conclusion*

Any inquiry concerning this communication or earlier communications should be directed to

Primary Examiner Katherine Moran at (571) 272-4990 (phone) and/or (571) 273-4990 (fax). Please note

that internet communication (i.e. email) requires submission of an Authorization for Internet

Communications form (PTO/SB/439).  The examiner can be reached on Monday-Thursday from 9:00 am

to 6:00 pm, and alternating Fridays.

If attempts to reach the examiner by telephone are unsuccessful, the examiner's supervisor, Khoa

Huynh, may be reached at (571) 272-4888. The official and after final fax number for the organization

where this application is assigned is (571) 273-8300. General information regarding this application and

questions directed to matters of form and procedures may be directed to the PTO Contact

Center/Inventors Assistance Center at (800) 786-9199/571-272-1000. Information regarding the status

of an application may be obtained from the Patent Application Information Retrieval (PAIR) system.

Application/Control Number: 16/241,454                                          Page 24
Art Unit: 3732

Status information for published applications may be obtained from either Private PAIR or Public PAIR.

Status information for unpublished applications is available through Private PAIR only. For questions on

access to the Private PAIR system, contact the Electronic Business Center (EBC) at 866-217-9197 (toll-

free).

/KATHERINE M MORAN/
Primary Examiner, Art Unit 3732