# EXHIBIT 14

# UNITED STATES PATENT AND TRADEMARK OFFICE

**UNITED STATES DEPARTMENT OF COMMERCE**
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 16/241,454 | 01/07/2019 | Anthony Abdelmalek | 54322.139174.CON | 9309 |

| 155571        7590        08/25/2021 | | EXAMINER |
|---|---|---|
| Gordon Feinblatt LLC<br>233 E Redwood St<br>Baltimore, MD 21202 | | MORAN, KATHERINE M |

| ART UNIT | PAPER NUMBER |
|---|---|
| 3732 | |

| NOTIFICATION DATE | DELIVERY MODE |
|---|---|
| 08/25/2021 | ELECTRONIC |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

Notice of the Office communication was sent electronically on above-indicated "Notification Date" to the following e-mail address(es):

eofficeaction@appcoll.com
usptopatents@gfrlaw.com

PTOL-90A (Rev. 04/07)

| *Office Action Summary* | **Application No.**<br>16/241,454 | **Applicant(s)**<br>Abdelmalek et al. |
|---|---|---|
| | **Examiner**<br>KATHERINE M MORAN | **Art Unit**<br>3732 | **AIA (FITF) Status**<br>Yes |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address --*

**Period for Reply**

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE <u>3</u> MONTHS FROM THE MAILING DATE OF THIS COMMUNICATION.
- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed after SIX (6) MONTHS from the mailing date of this communication.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133).
  Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

**Status**

1) ☑ Responsive to communication(s) filed on <u>8/4/2021</u>.
- ☐ A declaration(s)/affidavit(s) under **37 CFR 1.130(b)** was/were filed on _____.
2a) ☑ This action is **FINAL.**    2b) ☐ This action is non-final.
3) ☐ An election was made by the applicant in response to a restriction requirement set forth during the interview on _____; the restriction requirement and election have been incorporated into this action.
4) ☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

**Disposition of Claims***

5) ☑ Claim(s) <u>1-21</u> is/are pending in the application.
- 5a) Of the above claim(s) _____ is/are withdrawn from consideration.
6) ☐ Claim(s) _____ is/are allowed.
7) ☑ Claim(s) <u>1-21</u> is/are rejected.
8) ☐ Claim(s) _____ is/are objected to.
9) ☐ Claim(s) _____ are subject to restriction and/or election requirement

* If any claims have been determined <u>allowable</u>, you may be eligible to benefit from the **Patent Prosecution Highway** program at a participating intellectual property office for the corresponding application. For more information, please see http://www.uspto.gov/patents/init_events/pph/index.jsp or send an inquiry to **PPHfeedback@uspto.gov.**

**Application Papers**

10) ☑ The specification is objected to by the Examiner.
11) ☑ The drawing(s) filed on <u>1/22/2015</u> is/are: a) ☐ accepted or b) ☑ objected to by the Examiner.
- Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).
- Replacement drawing sheet(s) including the correction is required if the drawing(s) is objected to. See 37 CFR 1.121(d).

**Priority under 35 U.S.C. § 119**

12) ☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).
**Certified copies:**
- a) ☐ All    b) ☐ Some**    c) ☐ None of the:
  1. ☐ Certified copies of the priority documents have been received.
  2. ☐ Certified copies of the priority documents have been received in Application No. _____.
  3. ☐ Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).

** See the attached detailed Office action for a list of the certified copies not received.

**Attachment(s)**

1) ☐ Notice of References Cited (PTO-892)
2) ☐ Information Disclosure Statement(s) (PTO/SB/08a and/or PTO/SB/08b)
   Paper No(s)/Mail Date _____.
3) ☐ Interview Summary (PTO-413)
   Paper No(s)/Mail Date _____.
4) ☐ Other: _____.

U.S. Patent and Trademark Office

PTOL-326 (Rev. 11-13)    Office Action Summary    Part of Paper No./Mail Date 20210817

Application/Control Number: 16/241,454                                                                Page 2
Art Unit: 3732

## DETAILED ACTION

### *Notice of Pre-AIA or AIA Status*

The present application, filed on or after March 16, 2013, is being examined under the first inventor to file provisions of the AIA.

### *Response to Amendment*

Applicant's response of 8/4/2021 has been received. Claims 1-22 are pending, with claims 5, 6, 17, 19, 21, and 22 currently amended.  A specification amendment was also filed which amended paragraph 0001 to recite the "present application is a continuation-in-part of application Ser.No. 14/602,915....".  However, this application is not considered as a CIP in that a corrected ADS indicating the status of the application as a CIP is required by 37 CFR 1.76, and also discussed in MPEP 211.02.

A power of attorney and PTO/AIA/96 (assignment document) were also received on 8/18/2021.

Applicant has filed the present application as a continuation of the parent application 14/602,915. Applicant is required to delete the benefit claim or change the relationship to a continuation-in-part because this application contains the following subject matter not disclosed in the parent application:

Specification paragraphs: [0009] a substantially contiguous border **flange** surrounding the entire unitary dorsal panel, [0022] substantially zero-elevation interstitial spaces, [0028] protective pads 54..or fused to the substantially zero-elevation surface 52, [0040] the border **flange** surrounding dorsal panel can be within a range of from 2-8 mm across,....a 5-6 mm margin, (portion of paragraph 40 starting with "Palmar sections, such as palmar section 192 can be fused, welded, stitched, molded or otherwise connected to the border flange 166...and the latter is stitched thereto around at least a portion of all four of the finger receiving portions 27,28,29 and thumb portion 30").

Application/Control Number: 16/241,454                                                                Page 3
Art Unit: 3732

### *Terminal Disclaimer*

Applicant's terminal disclaimer of 8/4/2021 is not acceptable. As noted on the terminal disclaimer review decision, "The terminal disclaimer identifies a party who is not the applicant" (See FP 14.26.10. 37 CFR 1.321 specifies that the applicant can disclaim, and the terminal disclaimer must specify the extent of the applicant's ownership. The TD uses "WM T. BURNETT IP, LLC" as applicant.

Applicant's terminal disclaimer of 8/18/2021 is acceptable.

### *Drawings*

A replacement drawing was submitted on 4/1/2019 which included additional details to Figure 6, particularly to a slope 166. This constitutes new matter in that the parent application (14/602915, US 10,201,744) does not include this feature of the border. Note that the originally filed drawings to Figures 2 and 6 also illustrate new matter in that Figure 2 shows 166,168 and Figure 6 shows slope 166.

### *Claim Rejections - 35 USC § 112*

The following is a quotation of the first paragraph of 35 U.S.C. 112(a):

> (a) IN GENERAL.—The specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same, and shall set forth the best mode contemplated by the inventor or joint inventor of carrying out the invention.

Claims 3-6, 8, 10, and 17-22 are rejected under 35 U.S.C. 112(a) as failing to comply with the written description requirement. The claim(s) contains subject matter which was not described in the specification in such a way as to reasonably convey to one skilled in the relevant art that the inventor or a joint inventor, at the time the application was filed, had possession of the claimed invention. Claims 3-6, 10, 17, and 19-21 recite a border flange and various limitations to the border flange. However, the parent application provides support for a substantially contiguous border. Further support for the examiner's interpretation of the "border flange" as new matter is found in applicant's remarks of 1/4/2021 where applicant points to a definition of "flange" as a "projecting rim, collar, or ring...formed

Application/Control Number: 16/241,454                                                          Page 4

Art Unit: 3732

to give additional strength, stiffness, or supporting area". The previous disclosure of "border" is more broad than that of "border flange". Claim 8 recites the waffle-pattern array of foam protective pads includes crescent shapes. Claim 21 also recites limitations to one or more slits along a portion of said five finger sections, the slits positioned therebetween for added flexibility.

The text of those sections of Title 35, U.S. Code not included in this action can be found in a prior Office action.

Claims 1, 2, 11, 12, and 16 are rejected under 35 U.S.C. 103 as being unpatentable over Safford (U.S. 2013/0276199) in view of Tirinen (U.S. 4,484,359) and Contant (U.S. 2015/0047087). Safford discloses the invention substantially as claimed. Safford teaches in a protective sports glove 10 having a palmar section 22 configured for covering a wearer's palm and a unitary dorsal panel 20 stitched to the palmar section and including a pad 46 (par.21). However, Safford doesn't teach the dorsal panel consisting of an integrally- molded member formed with a zero-elevation surface and a waffle-pattern array of foam protective pads each defining an individual island raised from the zero-elevation surface, the foam protective pads separated from each other by interstitial channels having a width within a range of from 1-4 mm between the discrete foam protective pads. Safford also doesn't teach a lower wrist/forearm portion extending below the unitary dorsal panel, and the lower wrist/forearm portion is configured to encircle a user's forearm below the wrist or at least one of the foam protective pads has an unlevel face. Tirinen teaches a dorsal panel consisting of an integrally molded member formed with a zero-elevation surface 2 and a waffle-pattern array of cellular plastic or rubber protective pads 3-7 each defining an individual island raised from the zero-elevation surface, the protective pads separated from each other. Tirinen's pads are disclosed as "slightly" spaced apart in order to provide flexibility to the dorsal portion of the glove and further teaches that the spaced configuration results in channels, each having a width that affects the amount of flexion and protection provided by padding elements (par.57

Application/Control Number: 16/241,454                                                                          Page 5

Art Unit: 3732

and 61).   However, Tirinen doesn't explicitly disclose the pads are formed of foam and separated from

each other by interstitial channels having a width within a range of 1-4 mm and approximately 2 mm.

Contant teaches foam protective pads 140 separated from each other by interstitial channels having a

width within a range of from 1-4 mm and approximately 2 mm (par.57 discloses 2mm which is within

the range of 1-4 mm and includes the approximately 2 mm. value). Foam is a known pad material and is

considered to provide the same function as the cellular plastic or rubber. Contant teaches the channels

or spaces between pads affect the degree of flexion of the dorsal portion of the glove. Contant's glove

includes a lower wrist/forearm area extending below a dorsal region, the lower wrist/forearm portion is

configured to encircle a user's forearm below the wrist. Contant also teaches at least one of the foam

protective pads has an unlevel face in that par.58 discloses the padding element 140 may be slightly

curved in order to wrap around the player's hand and the claim doesn't provide specific details as to a

particular surface considered as the face. Therefore, it would have been obvious to substitute Safford's

dorsal panel with Tirinen's panel in that Tirinen teaches the integrally molded member may be

efficiently fabricated in a single molding or casting step and can be readily fastened to a glove portion

such that the dorsal side of a wearer's hand is protected. It also would have been obvious to form the

pads from foam and provide interstitial channels having a width within a range of 1-4

mm/approximately 2 mm. in that Contant teaches foam is a known padding material, this material

expected to provide a protective property to the pad, and the channels allow for desired flexion

between respective pads of the dorsal panel, the desired width values arrived at through routine

experimentation based upon the degree of flexion desired (Contant, par.57). It also would have been

obvious to modify the glove to include a lower wrist/forearm portion extending below the unitary dorsal

panel in that a lower wrist/forearm portion is taught by Contant as a glove feature that protects a

wearer's lower wrist/forearm. Finally, it would have been obvious to modify Safford's dorsal panel such

Application/Control Number: 16/241,454                                                        Page 6
Art Unit: 3732

that at least one of the foam protective pads has an unlevel face in that Contant teaches padding that may be slightly curved in order to wrap around the player's hand.

Claims 3-6 and 10 are rejected under 35 U.S.C. 103 as being unpatentable over Safford '199 in view of Tirinen '359 and Contant '087 as applied to claim 1 above, and further in view of Leary '173. These limitations receive an effective filing date of 1/7/2019 because the provisional application doesn't disclose a waffle-pattern array and a substantially contiguous border flange and a substantially contiguous border flange stitched to the palmar section, in addition to the features of claims 3-6 and 10. Safford discloses the invention substantially as claimed but doesn't teach the unitary dorsal panel is formed with a border flange surrounding the waffle-pattern array of foam protective pads, the border flange being substantially contiguous and having a width of 4-8 mm, or 5-6 mm. Leary teaches a glove 10 with molded panels formed with a border flange 38 (considered as substantially contiguous in that it is contiguous to the foam protective pads) surrounding the array of pads 12 and the border flange having a width of approximately 8 mm. (par.50). Leary teaches the flange is provided as a location for stitching to join the molded pads with other components 40 of the glove. Locating the stitching at the flange rather than through the padded portion prevents structural deformation of the pads. Figure 4 illustrates 40 as a palm side of the glove. Leary teaches the general conditions of the claimed range as approximately 8 mm and the "approximately" term modifying 8 mm to include those values just less than 8 mm. Leary also teaches the flange width may be wider or narrower than 8 mm in width to achieve desired results. Given these teachings, one of ordinary skill could have arrived at the 5-6 mm range through routine experimentation in order to form a flange with a narrower width such that the flange requires less trimming but still functions as a location for stitching to the palmar section of the glove in that the 5-6 mm. limitation doesn't appear critical such as providing unexpected results to the dorsal panel or assembled glove structure. For claim 10, Safford's glove structure is assembled by stitching the palmar section to the dorsal panel. Modification of Safford's dorsal panel with Leary results

Application/Control Number: 16/241,454                                                    Page 7
Art Unit: 3732

in a dorsal panel with a border flange, this flange disclosed as a location for stitching to join the molded dorsal panel with other parts of the glove. Looking to Safford's teaching of stitching a dorsal panel to a palmar section is known in the glove art, and also looking to Leary's teaching of the flange as a stitching location, one of ordinary skill in the art before the effective filing date would have been motivated to modify Safford such that the border flange is stitched to the palmar section, with the flange situated as a joining point for the dorsal panel to the palmar section such that the pad structures are not compromised by the stitching. It would have been obvious to one of ordinary skill before the effective filing date of the invention to modify Safford's dorsal panel to provide the substantially contiguous border flange of 4-8 mm or 5-6 mm in width, the flange surrounding the waffle-pattern array of foam protective pads and subject to modifications in width in that Leary teaches the flange is formed during the molding process after a cutting step and providing Safford's dorsal panel with a border flange would provide a structure serving as a location for stitching to the palmar section.

Claims 7 and 8 are rejected under 35 U.S.C. 103 as being unpatentable over Safford '199 in view of Tirinen '359 and Contant '087 as applied to claim 1 above, and further in view of Fisher '305. Safford discloses the invention substantially as claimed and disclosed above. Safford's modified dorsal panel includes quadrilateral shapes (see Tirinen pads 6), but doesn't teach crescent shapes. Fisher teaches a dorsal pad panel with pads having crescent shapes as in the annotated drawing of 9/4/2020, including those panels forming lower corner portions of the panel. Applicant's disclosure doesn't provide criticality for or unexpected results arising from pads with particular shapes and a crescent shape is known in the art as evidenced by Fisher, as a suitable shape for a dorsal panel. Therefore, it would have been obvious to modify Safford to provide the dorsal panel with pads having crescent shapes in that Fisher teaches crescent pad shapes are suitable for protecting a back of a wearer's hand.

Claim 9 is rejected under 35 U.S.C. 103 as being unpatentable over Safford '199 in view of Tirinen '359 and Contant '087 as applied to claim 1 above, and further in view of Brown et al. (U.S.

Application/Control Number: 16/241,454                                                          Page 8
Art Unit: 3732

2014/0143926) and Shamis '738. Safford discloses the invention substantially as claimed but doesn't

teach the dorsal panel is fused to a layer of mesh scrim material. Brown teaches that conventional

gloves have foam pad segments affixed to one another and to a liner material (known as scrim) such as

woven material. Applicant's specification points to a woven material as an example of mesh material.

Brown also teaches a glove with pad 138 surrounded by a peripheral flange 144 that provides a frame

for stability and allows stitching therethrough, the pad 138 sewn to the underlying scrim layer as in

par.37. Brown doesn't teach the mesh scrim material is fused to the dorsal panel. Shamis teaches a

glove 20 with foam cushions 40 attached to a scrim layer 52 attached to the outer dorsal surface of the

dorsal panel 21. Paragraph 42 of the present application refers to ultrasonic/sonic welding which

appears to be equivalent to the claimed "fused' limitation. Shamis discloses manners of attaching scrim

layer 52 to the pads such as in paragraph 68 which discloses various members, layers and/or

components of glove 20 can be assembled together using any known attachment means such as

adhesive (hot melted adhesives), ultrasonic bonding, thermal bonds, etc. Based upon this teaching of

Shamis that glove layers may be assembled together using various means including ultrasonic bonding,

one of ordinary skill could have modified Safford's glove to fuse the dorsal panel to the mesh scrim

material via ultrasonic bonding as a process of securely assembling the layers. Fusing the mesh scrim

material to the dorsal panel is considered as an obvious assembling process that doesn't require piercing

the scrim or dorsal panel. Therefore, it would have been obvious to provide the dorsal panel fused to a

layer of mesh scrim material in that the mesh scrim material is known in the art as a suitable lining

material and fusing the mesh scrim material to the dorsal panel is considered as an obvious assembling

process for securing glove components.

Claim 13 is rejected under 35 U.S.C. 103 as being unpatentable over Safford '199 in view of

Tirinen '359 and Contant '087 as applied to claims 1, 11, and 12 above, and further in view of Gabby

Application/Control Number: 16/241,454                                                              Page 9
Art Unit: 3732

'681. Safford discloses the invention substantially as claimed but doesn't teach the lower wrist/forearm portion includes an attachment strap configured to secure the lower wrist/forearm portion around the user's forearm below the wrist. Gabby teaches a glove with a padded dorsal portion and an attachment strap 170,180 configured to secure the lower wrist/forearm portion around the user's forearm below the wrist in order to adjustably secure the lower wrist/forearm portions around the wearer's wrist. Therefore, it would have been obvious to modify Safford's glove to provide an attachment strap at the lower wrist/forearm portion in that Gibby teaches this structure will securely retain the lower wrist/forearm portion around the wearer's arm/wrist.

Claim 14 is rejected under 35 U.S.C. 103 as being unpatentable over Safford '199 in view of Tirinen '359 and Contant '087 as applied to claim 1 above, and further in view of Yamamoto '234. Safford discloses the invention substantially as claimed but doesn't teach the dorsal panel is comprised of EVA foam. Yamamoto teaches a glove with EVA foam pads 1 on a dorsal side. The EVA pads are disclosed as a semi-hard synthetic resin with moderate hardness and moderate softness to absorb impact (col.6, lines 1-7). One of ordinary skill would have looked to this teaching of Yamamoto to modify Safford's pad material to provide the expected results of impact absorption. Therefore, it would have been obvious to modify Safford's dorsal panel such that it is comprised of EVA foam in that Yamamoto teaches that it is known to form padding on a dorsal side of a glove from EVA foam for impact absorption.

Claim 15 is rejected under 35 U.S.C. 103 as being unpatentable over Safford '199 in view of Tirinen '359 and Contant '087 as applied to claim 1 above, and further in view of Brown '926. Safford discloses the invention substantially as claimed but doesn't teach two adjacent foam pads of the foam protective pads have trapezoidal side-cross sections. Contant discloses in par.59 that padding elements 140 may be cut and shaped to accommodate requirements of a specific glove and may have a variety of designs and sizes. Brown teaches a glove with two adjacent foam pads 150,150' having

Application/Control Number: 16/241,454                                          Page 10
Art Unit: 3732

trapezoidal shapes as in Figure 3, these shapes expected to have trapezoidal side-cross sections.

Therefore, it would have been obvious to one of ordinary skill to modify Safford's dorsal panel to form

to adjacent pads having trapezoidal side-cross sections as part of a dorsal pad profile, the pads with the

trapezoidal side- cross sections suitable for an outer region of the pad as taught by Brown.

Claims 17-20 are rejected under 35 U.S.C. 103 as being unpatentable over Safford '199 in view

of Tirinen '359 and Contant '087 and Leary '173. Safford discloses the invention substantially as claimed.

Safford teaches in a protective sports glove 10 having a palmar section 22 configured for covering a

wearer's palm, a unitary dorsal panel 20 including a pad 46, the dorsal panel stitched to the palmar

section (par.21). Safford teaches a padded dorsal panel. However, Safford doesn't teach the dorsal panel

consisting of an integrally-molded member formed with a main section having a zero-elevation surface

and a waffle-pattern array of foam protective pads defined as individual islands raised from the zero-

elevation surface, wherein two or more of the foam protective pads are separated from each other by

an interstitial channel, the dorsal panel further comprising five finger sections each protruding from the

main section and a substantially contiguous border flange surrounding the entire dorsal panel inclusive

of the main section and each of the five finger sections, and the border flange along adjacent finger

sections is configured to avoid interference. Tirinen teaches a unitary dorsal panel consisting of an

integrally molded member formed with a main section having a zero-elevation surface 2 and a waffle-

pattern array of cellular plastic or rubber protective pads 5-7 each defined as individual islands raised

from the zero-elevation surface, the protective pads separated from each other. The dorsal panel

further comprises five finger sections 4 each protruding from the main section. Tirinen's pads appear to

be spaced such that two or more of the protective pads are separated from each other by an interstitial

channel. However, Tirinen doesn't explicitly disclose the pads are formed of foam and the pads

separated from each other by an interstitial channel. Contant teaches foam protective pads 118,140

with two or more of the foam pads separated from each other by an interstitial channel as in par.57.

Application/Control Number: 16/241,454                                                                Page 11
Art Unit: 3732

Foam is a known pad material and is considered to provide the same protective function as the cellular plastic or rubber. Contant teaches the width of the channels or spaces between pads affect the degree of flexion of the dorsal portion of the glove. Leary teaches a glove 10 with molded panels formed with a border flange 38 (considered as substantially contiguous in that it is contiguous to the foam protective pads) surrounding the entire dorsal panel inclusive of a main section and each of the five finger sections as in Figure 11A. Leary teaches the flange is provided as a location for stitching to join the molded pads with other components 40 of the glove and the border flange along adjacent finger sections is considered as configured to avoid interference in that the border flange along adjacent finger sections doesn't interfere with the assembly of the glove. Locating the stitching at the flange rather than through the padded portion prevents structural deformation of the pads during the assembly process. Therefore, it would have been obvious to one of ordinary skill before the effective filing date of the invention to substitute Safford's dorsal panel with Tirinen's panel in that Tirinen teaches the integrally molded member may be efficiently fabricated in a single molding or casting step and can be readily fastened to a glove portion such that the dorsal side of a wearer's hand is protected. It also would have been obvious to form the pads of the main section and five finger sections from foam and provide interstitial channels in that Contant teaches foam is a known padding material for the main and finger sections, this material expected to provide a protective property to the pad, and the channels allow for desired flexion between respective pads of the dorsal panel. Modification of Safford's dorsal panel with Leary results in a dorsal panel with a border flange, this flange disclosed as a location for stitching to join the molded dorsal panel with other parts of the glove. Looking to Safford's teaching of stitching a dorsal panel to a palmar section as known in the glove art, and also looking to Leary's teaching of the flange as a stitching location, one of ordinary skill in the art would have been motivated to modify Safford such that the border flange is stitched to the palmar section, with the flange situated as a joining point for the dorsal

Application/Control Number: 16/241,454                                    Page 12
Art Unit: 3732

panel finger and main sections to the palmar section such that the pad structures are not compromised by the stitching during assembly of the glove.

Claims 21 and 22 are rejected under 35 U.S.C. 103 as being unpatentable over Safford '199 in view of Tirinen '359 and Contant '087 and Leary '173 and Berlese '269. Safford discloses the invention substantially as claimed and addressed previously. However, Safford doesn't teach the border flange along a portion of the five finger sections comprises one or more slits for added flexibility and a top surface of the border flange is sloped relative to the zero-elevation surface. Berlese teaches a dorsal pad 4 with a border along a portion of the five finger sections comprising one or more slits 26 for added flexibility (col.4, lines 5-8). The border includes a groove 30 formed around the periphery of the pad 4 such that a top surface of the border is sloped relative to the zero-elevation surface (upper surface of pad 4). Note that there is a slope as the zero-elevation surface transitions to groove 30. Therefore, it would have been obvious to one of ordinary skill before the effective filing date of the invention to modify Safford's dorsal panel to provide the border flange along of a portion of the five finger sections with one or more slits for added flexibility of the pad and it also would have been obvious to modify the top surface of the Safford's border flange to be sloped relative to the zero-elevation surface in that this sloped border flange serves as a transition at edges of the pad and this sloped portion can assist as a visual indicator for the stitching (Berlese, col.4, lines 14-16).

### Response to Arguments

Applicant's remarks have been considered.  The double patenting rejections have been obviated by applicant's properly filed terminal disclaimer of 8/18/2021.  The specification subject matter to the "waffle-pattern" array of foam protective pads is acceptable as describing the arrangement of pads; however, other specification disclosures are considered as new matter as addressed above. Regarding the prior art rejections, Applicant submits that it would not have been obvious to modify Safford's dorsal panel with Tirinen and Contant in that Contant teaches foam pads fully encapsulated

Application/Control Number: 16/241,454                                                                    Page 13
Art Unit: 3732

between lower and upper sheets 120,122 and it would not have been obvious to co-mold them and use the result as a standalone dorsal panel in that the act of co-molding them would completely alter the material properties of the channels and the degree of flexion there between. Applicant further submits that a POSA would not apply this teaching to a unitary molded dorsal panel because the interstitial spacing must be larger when the interstitial foam is not fused into the fabric as per Contant.  The examiner disagrees with applicant's reasoning and it's not clear why the process of making Contant's pads including that the interstitial spacing must be larger when the interstitial foam is not fused into the fabric as per Contant is relevant to the modification of Tirinen's channel width. It has been established in the rejection that Tirinen's array of pads are separated from each other by interstitial channels having a width (col.1, lines 66-68 and continuing to col.2, lines 1-2 disclose the "protrusions 3-7 form individual elevations jutting out of layer 2 and having a relatively thin and thus flexible material layer therebetween. Thus, the hand can be readily moved and bent in the glove."). As Tirinen is relied upon for the teaching of the array of pads separated by interstitial channels having a width, the examiner relies on Contant for a teaching of the interstitial channels' width within the specific claimed range of from 1-4 mm. and also for the foam pad material. The manner in which Contant's glove pads are formed is immaterial to the question as to whether a PHOSITA would look to Contant for a teaching of the interstitial channels' claimed width as approximately 2 mm (within the claimed 1-4 mm. range) in that Contant teaches dorsal protectors (pads) that are "slightly" spaced apart in order to provide flexibility to the dorsal portion of the glove and further teaches that the spaced configuration results in channels, each having a width that affects the amount of flexion and protection provided by padding elements (par.57 and 61).  Thus, Contant provides motivation for combining the references in that a width of the channels can be optimized based upon the amount of flexion and protection desired.  Regarding applicant's remarks to Official Notice taken by the examiner, there is no Official Notice relied upon by the examiner in the NF Office Action of 5/4/2021.

Application/Control Number: 16/241,454                                                      Page 14

Art Unit: 3732

Applicant also argues that Leary 14/602,915 is not proper prior art but doesn't provide a reasoning. The rejections as obvious over Leary are considered proper and stand. See the examiner's previous response to arguments in the NF Office Action of 5/4/2021.

For claims 7 and 8, applicant submits that Fisher shows a dorsal pad made with a fabric layer 14 over a foam layer 16 and refers to Fisher's Figure 6 which is a cross-sectional view of a finger-tip of the back of the hand impact pad of Fig.1. Applicant submits that a critical and novel aspect of the claimed protective sports glove is the lack of any fabric layer overlying the padding elements and submits that a PHOSITA would not be motivated to incorporate Fisher's pad shapes into a unitary-molded palmar section as the transition would completely change flexibility and feel and claims 7-8 are distinguished on these bases. The examiner disagrees and submits that Fisher is relied upon for the teaching of providing the waffle-pattern array of foam protective pads including crescent shapes and the structure of the pads as including a fabric layer is not relevant. Note that claims 7 and 8 do not provide a particular orientation or relative placement of quadrilateral shaped or crescent shaped pads and the shape of the pads doesn't appear to be critical or patentably significant. The examiner is not replying upon Fisher for the integrally-molded member with a waffle-pattern array of pads; rather, Fisher is relied upon as a teaching that it is known in the art to form dorsal pads with crescent shapes as suitable for protecting a back of a wearer's hand and the pads would perform the same function regardless of shape.

The arguments for claim 13 are the same as those for claim 1, as addressed above.

For claim 14, the examiner relies on Yamamoto for a teaching of EVA foam pads; however, applicant submits that Yamamoto's EVA foam pads are welded to a dorsal side and this results in channels that are relatively flexible and the flexion needed between respective pads of the dorsal panel is not something easily arrived at through routine experimentation based upon the degree of flexion desired. The process of forming Yamamoto's glove is not relevant to the rejection of claim 14 as reciting a specific material (EVA foam) for the dorsal pads. The rejection set forth by the examiner notes that

Application/Control Number: 16/241,454                                                                    Page 15
Art Unit: 3732

Yamamoto teaches that it's known in the art to provide a glove with dorsal pads formed from EVA material in that the material is a semi-hard synthetic resin with moderate hardness and moderate softness to absorb impact and therefore EVA foam pads would provide the expected result of absorbing an impact to the dorsal side of the glove.

For claim 15, applicant submits that claim 15 recites two adjacent foam pads of the foam protective pads have trapezoidal side-cross sections and the examiner has ignored this limitation by applying Brown as a teaching of adjacent foam pads having trapezoidal shapes. It's not clear how a "side-cross section" is different from a cross-section and a trapezoidal shaped pad is expected to have a trapezoidal side-cross section in that the walls of the pad are shaped as a trapezoid.

Claims 17-20 are mentioned by applicant with regard to Leary '173 and applicant notes that Leary isn't proper prior art. The examiner disagrees with this position in that the priority application discloses "a substantially contiguous border framing the dorsal panel 40,140 and the border is from 4-8 mm across, and most preferably a 5-6 mm margin. There is no disclosure of a "border flange".

For claims 21 and 22, the priority application doesn't provide disclosure of the border flange comprising one or more slits there between for added flexibility and a top surface of said border flange is sloped relative to said zero-elevation surface and these limitations receive the priority date of the present application (1/7/2019).

### *Conclusion*

Applicant's amendment necessitated the new ground(s) of rejection presented in this Office action. Accordingly, **THIS ACTION IS MADE FINAL**. See MPEP § 706.07(a). Applicant is reminded of the extension of time policy as set forth in 37 CFR 1.136(a).

A shortened statutory period for reply to this final action is set to expire THREE MONTHS from the mailing date of this action. In the event a first reply is filed within TWO MONTHS of the mailing date of this final action and the advisory action is not mailed until after the end of the THREE-MONTH

Application/Control Number: 16/241,454                                                    Page 16
Art Unit: 3732

shortened statutory period, then the shortened statutory period will expire on the date the advisory

action is mailed, and any extension fee pursuant to 37 CFR 1.136(a) will be calculated from the mailing

date of the advisory action.  In no event, however, will the statutory period for reply expire later than

SIX MONTHS from the date of this final action.

/KATHERINE M MORAN/
Primary Examiner, Art Unit 3732